National Oceanic and Atmospheric Administration
Host Agency serving:
Bureau of the Census
Economic Development Administration
International Trade Administration
Minority Business Development Agency
Office of the Inspector General

U.S. DEPARTMENT OF COMMERCE
Central Administrative Support Center
Federal Building, Room 1736
601 East 12th Street
Kansas City, Missouri 64106

# MEMORANDUM OF NEGOTIATION

4.1

Contractor: Fluor Technology, Inc.
Subcontractor: Gould Evans Architects, P.A.

## BACKGROUND

The Contractor is to perform a diversity of duties for the construction phase of the NEXRAD Program--project and construction management; construction inspection; geotechnical studies; and architect-engineer services to site adapt Weather Forecast Office Buildings conceptually designed by others. The NEXRAD project is a result of a multi-agreement between the Department of Commerce, National Weather Service; Department of Transportation, Federal Aviation Administration; and the Department of Defense. The work-site will be throughout CONUS, the Caribbean, and at various military installations in Europe and the Far East. It is anticipated the project will encompass a seven-year period, although this contract is for a maximum five-year period.

## OBJECTIVES

The proposal was reviewed and evaluated by a technical panel consisting of registered architects and professional engineers. The panel chairman also had prepared an estimated cost based upon a yearly level-of-effort productive man-hours for the five-year period.

Fluor rated substantially higher than the other five competitors--Austin Company; Burns and McDonnell; 3-D International; Kaiser Engineers; and Howard, Needles, Tanenbaum and Bergendoff. The higher rating can be attributed to the credentials, expertise and experience of the Fluor team, and to the proposed plan to manage and oversee the project. The latter is best reflected by the team leader who has extensive management experience, both in private industry and the Government in managing large complex projects; and of the subcontractor who has earned industry acclaim, i.e., they have merited 14 A.I.A. awards in the preceding eight years, a very high number for a small business concern.

The panel chairman provided written memorandum of the technical acceptability of both the prime contractor's and subcontractor's proposals (memo in file).

The Contract Specialist discussed pricing with the Cognizant Contract Administrative Officer (Jeffrey Hoyles, Oak Ridge Office of DOE), and then requested audits of both the prime and subcontractor's cost proposals through the Department of Commerce Inspector General's Audit Division. Mr. Hoyles stated in discussion that DOE had a contract in place with Fluor, and the only pricing questions were FY 86 provisional wage rates and the lease-back of the office space which Fluor had recently sold.



The Contract Specialist, while awaiting audit results, reviewed the Fluor small business subcontracting plan for adequacy. This plan was then forwarded to the Department's OSDBU for review and approval in accordance with P.L. 98-504. After various telephone discussions between the Contract Specialist and Fluor (Messrs. Tate and Toliver), and the OSDBU Director (Mr. Maruca) and OSDBU staff (Mr. Leak), an agrement on the proposed plan was reached. OSDBU approval was given in writing (OSDBU memo in file). As part of the plan, Fluor will first seek small business survey concerns, with special emphasis on minority and women-owned businesses, and will only subcontract with large businesses as a last resort.

The DCAA audit findings for the prime contractor were accomplished by the Santa Ana, California office; Gould Evans was audited by the Kansas City office. Audit findings for the life of the contract were then broken down by the Contract Specialist and the COTR to the following:

Prime Contractor: Fluor Technology, Inc.

| | | | |
|---|---|---|---|
| Direct Labor Hours | 95,680/MH x 1.15 | = | $110,032.00 |
| Overhead | 64.6% | = | 71,081.00 |
| Other Direct (reprographics) | 200,649/MH x 1.21 | = | 200,649.00 |
| | | | 381,762.00 |
| G and A | 9.8% | | 37,413.00 |
| | FLUOR TOTALS | = | $419,175.00 |

Subcontractor: Gould Evans

| | | | |
|---|---|---|---|
| Direct Labor | | | $79,460.00 |
| Fringe Benefits | | | 20,898.00 |
| Overhead | | | 58,319.00 |
| | GOULD EVANS TOTALS | = | $159,319.00 |

FLUOR AND GOULD EVANS TOTALS FOR 5-YEAR PERIOD = $579,494.00

Breakdown Applied to Base Period (Year 1)

Fluor

| | | | |
|---|---|---|---|
| Direct Labor Hours | 11,040/MH x 1.15 | = | $12,696.00 |
| Overhead | 64.6% | = | 8,201.00 |
| Other Direct (reprographics) | 20,985/MH x 1.21 | = | 25,392.00 |
| | | | 46,289.00 |
| G and A | 9.8% | | 4,536.00 |
| TOTAL | | | $50,825.00 |

Subcontractor: Gould Evans

| | |
|---|---|
| Direct Labor | $17,591.00 |
| Fringe Benefits | 4,627.00 |
| Overhead | 13,053.00 |
| | $35,271.00 |

TOTALS (QUESTIONED COSTS YEAR 1) = $86,096.00

The Government's objective is to obtain as much of the questioned costs plus any additional amounts.

NEGOTIATION

On December 5, 1986, the Contract Specialist contacted Fluor to open negotiations. The Fluor representatives were Tom Tate and Jack Toliver. Both individuals are Fluor's Senior Contractor Administrators and have been delegated authority to negotiate for Fluor; however, the final contract signatory will be Mr. Sacker, Vice President.

The Contract Specialist asked for concessions on the cost for the first contract year, and advised Fluor that all option year renewals were to be subjected to yearly audit prior to finalizing yearly renewals. The discussion included questions for the proposed labor costs/manhours for both the prime contractor and subcontractor, and costs for reprographics. I advised Fluor that we questioned the proposed cost for their 11,040 direct man-hours in Year One.

The Fluor contention was that there had been several changes to the Kansas City staffing plan, and that these changes equaled 33% of the staff and exceeded proposal costs for these positions.

Proposed $23.69/HR Changed to $30.89 = + $7.20/HR
Proposed $24.75/HR Changed to $29.19 = + $4.44/HR

Home Office Specialists used are on an as-needed basis for the project, with labor rates generally exceeding hourly rates in the proposal by $4.00 to $6.00 per hour; i.e., during a period covered by letter contract (December 8, 1986 to December 21, 1986), typical personnel working on project were:

| | |
|---|---|
| Relocation Specialist | + 6.91/HR |
| Procurement Specialist | + .75/HR |
| Administrative Coordinator | + 4.04/HR |
| Supervising Engineer | + 5.47/HR |
| Supervising Engineer | + 4.75/HR |
| Property Administrator | + 8.36/HR |
| Manager | + 6.91/HR |

Fluor strongly indicated that these variances are demonstrative that actual versus proposed costs will vary, and that the Government will pay actual costs. Mr. Toliver and Mr. Tate, during this discussion and at other times, strongly objected to the audit findings and each stated Fluor could make concessions in the Direct Labor costs.

The Contract Specialist, during the above discussion and on January 27, 1987, continued to raise the issue of proposed reprographics costs. Fluor states the proposed reprographics costs were based upon the Direct Productive Manhours planned for direct hire in both Irvine and Kansas City; that if they had had actual number of units of reproduction (each square foot, rolls, negatives, plates, etc.) the proposal costs would have been built-up on that basis using the Fluor in-house service center charge schedule, times a factor to convert the charges to cost--however, without those figures the proposed costs were derived from historical data that included total home office hours and total reprographic costs. The historical data included 219 projects of which 85% were commercial versus Government. Of the above number, there were 53 without discrete reproduction costs identified; of the other 156 projects, 30 had identifiable discrete reproduction costs which exceeded $2.00/MH, with a high of $10.00/MH. Mr. Toliver offered that 24 of the 30 projects were either Government or Government-related projects. Moreover, they contended and presented evidence that all of the 219 projects were on one site versus +120 sites for NOAA; and that most projects required five copies of deliverables while requiring 20-100 design documents, and that with the inclusion of the Joint Services Project Office, the required progress reports had more than doubled.

Fluor additionally contended that the more selective review by DCAA is not indicative of the NEXRAD project's unique requirements. They further contended that the actual reproduction rate based on total business volume in 1986 was less than previous years, and that their Provisional and Forward Pricing rate for converting that center to cost was estimated at 80%, as indicated in Fluor's proposal as well as in their internal memorandum (copy in file) which had been approved by Mr. Hoyles, ACO/DOE. They also insisted that the actual rate for the provisional rate of 80%, and that it should be, as an example 65%, Fluor would credit the difference.

On January 27th and again on February 11th, we discussed the questioned costs for Gould Evans where the audit revealed a difference between proposed and actual labor costs of $35,271.00 in the first year. I advised Fluor that this was double-dipping and must insist that the proposal be reduced by at least the above cited figure.

On February 13, 1987, Fluor faxed a modification to their subcontract reducing the first year from $305,332.00 to $267,304.00, or a total reduction of $38,638.00. The modification also reflected future year changes as follows--

| | | | | | |
|---|---|---|---|---|---|
| Option Year 1 | 292,306.00 | to | 233,668.00 | = | -38,638.00 |
| Option Year 2 | 301,546.00 | to | 262,598.00 | = | -38,948.00 |
| Option Year 3 | 302,866.00 | to | 263,899.00 | = | -38,967.00 |
| Option Year 4 | 223,871.00 | to | 193,981.00 | = | -29,890.00 |

or a total reduction of $185,081.00.

FEE

The Contract Specialist, in discussion with Tate/Toliver, raised the issue that the Fee was too high based upon a Weighted Guidelines Index developed for this contract. Initially, Fluor sought a Fee of $174,941.00. Subsequent negotiations reduced the Fee to $158,000.00. Again, the Contract Specialist continued to press for further reductions of the Fee.

Continued discussions between the parties reduced the Fee to $145,000.00 (8.3%) for the first year.

SUMMARY

The negotiations really addressed only the 14-month base period because it is proposed to request yearly audits for each option year renewal. The Cost Accounting System in place is acceptable and in accordance with CAR-CAS standards, so there is sufficient and clear evidence that the yearly audits will reflect costs and expenditures.

CONCLUSION

Upon completion of negotiations with Fluor Technology, the following determination was made.

The Fluor offer was found to be technically acceptable in all respects. Negotiations were conducted to arrive at a fair and reasonable price for the DPMH and Fee.

Based upon the foregoing, it has been determined that the prices are the best that can be obtained and it is in the interest of the Government to award a contract to Fluor Technology, Inc.

Jesus Arredondo, Contracting Officer

2-13-87
Date

CONTRACT No. 50WCNA606099 -- MODIFICATION No. 2

MEMORANDUM OF NEGOTIATIONS

AUGUST 13, 1987

PURPOSE

This Memorandum documents the substance and detail of negotiations between J. Arredondo, NOAA, and J. M. Toliver, Fluor Technology, Inc., relative to an increase in the Fixed Fee of the Contract Base Period to accommodate the Government's Task Order No. 02, Revision B, as authorized effective July 21, 1987.

BACKGROUND

The above-referenced tasking increased the Level of Effort as set forth in Clause B.2(2)(a) beyond that limit set forth in Clause B.2(c)(2), and increased the estimated cost of the Contract beyond that contemplated for the Base Period. The result of this increase in the estimated cost will necessitate an increase in the Limitation of Funds set forth in Clause B.6 to $2,200,000.00. This increase is acknowledged in SEPO letter CC44, dated July 21, 1987.

AGREEMENTS IN PRINCIPLE

1. Fluor and the Government agreed that the added work was similar to that included in Task Order No. 02 through Revision-A and that the fee basis developed and agreed upon for the definitive Contract is appropriate for this revision in the Level of Effort. That fee basis was documented in the Memorandum of Understanding dated September 22, 1986 and forwarded to the Contracting Officer by Fluor's letter FI/NK/0015 of that same date.

2. Fluor's Cost Estimate for this work dated July 24, 1987, was based upon its approved Provisional Indirect Rates for FY1987. Subsequently, Fluor's third quarter outlook has indicated that these rates would reduce to:

| | |
|---|---|
| Home Office Overhead ----------------- | 102.0% |
| Field Office Overhead ---------------- | 76.9% |
| General and Administration ----------- | 9.8% |
| FCCM - Direct Labor Base ------------- | .07% |
| FCCM - Value Added Base -------------- | .15% |

The site visit to Wichita on August 4, 1987 revealed that as-built drawings of the site were sufficient as to negate the need for a topographic survey as contemplated in the Work Plan for this Revision. The 100 DPMH estimated for this work has been re-allocated to Irvine Direct Labor for other tasks in this Revision.

MEMORANDUM OF NEGOTIATIONS -- AUGUST 13, 1987 (cont'd)

The above results in the following cost breakdown for this Revision:

| | July 24, 1987 | Revised August 13, 1987 |
|---|---|---|
| Labor | $ 55,200 | $ 57,360 |
| Subcontracts | 29,600 | 25,400 |
| ODC/OH/G&A | 100,300 | 97,240 |
| | $ 185,100 | $ 180,000 |

NEGOTIATED FEE

Utilizing the agreed-upon weights and the revised Level of Effort cost estimate above, the fixed fee for this Revision was computed as follows:

| Factor | Weight | LOE $ | Fee $ | |
|---|---|---|---|---|
| Labor Skill Level | 13 | 57,360 | 7,457 | |
| Subcontracts | 3 | 25,400 | 762 | |
| ODC/OH/G&A | 5 | 97,240 | 4,862 | 13,081 |
| Cost Risk | 1 | 180,000 | 1,800 | |
| Developed System Use | 3 | 13,081 | 392 | |
| | | | $15,273 | |

The agreed-upon Fixed Fee for this Revision to the Level of Effort is $ 15000 [initials]

This Negotiation was witnessed by J. A. Wagner, Fluor Technology, Inc.

[signature]
J. Arredondo
Contracting Officer

[signature]
J. M. Toliver
FLUOR TECHNOLOGY, INC.

[signature]
J. A. Wagner
FLUOR TECHNOLOGY, INC.

National Oceanic and Atmospheric A. inistration,
Host Agency serving:
Bureau of the Census
Economic Development Administration
International Trade Administration
Minority Business Development Agency
Office of the Inspector General

U. DEPARTMENT OF COMMERCE
Central Administrative Support Center
Federal Building, Room 1736
601 East 12th Street
Kansas City, Missouri 64106

MEMORANDUM FOR: The Record

FROM: Jesus Arredondo, Contracting Officer

SUBJECT: Price and Cost Analysis -- Solicitation No. NWWR0700006000

The proposal is to provide a small portion of architect-engineer design service to site adapt a conceptually designed Weather Service office building, by another contractor, and to furnish engineering/project management services including construction management and inspection, equipment studies, and geotechnical surveys for some 52 new offices, 17 offices needing major retrofit, 17 offices needing minor modifications, and 27 offices needing expansion to accommodate the new NEXRAD system. Additionally, inspection services will be required at 113 radar data acquisition sites. The construction will be throughout CONUS and at DOD sites in Europe and the Pacific. Funding for the NEXRAD program comes from a tri-party agreement between Commerce (NWS), Transportation (FAA), and DOD.

Total design effort in FY 87 will be approximately $70,000.00; and total estimated cost for all services in FY 87 should be approximately $1.8 million, excluding fee. The estimated cost is based upon a level of effort consisting of 27,500 direct productive man-hours.

## I. PROFESSIONAL SERVICES CONTRACT

Base Period -- August 1, 1986 through September 30, 1987

Approximately 27,500 Direct Productive Man-Hours (DPMH)

1. Work for latter part of FY 86 to be done by Fluor Technology, Inc., in Irvine, California, except for Gould-Evans in Kansas City, Missouri. Expect two trips to Irvine for Bob Gould.

2. Requires two trips to Irvine for Max Entrikin.

   Award + 15
   Award + 30

   Provides funds for one trip to Kansas City in two months period for up to three Fluor planners.

3. Includes space and furnishings at Fluor Technology, Inc., in Irvine, California, in overhead markup.

4. Provides for development of:

   * Work Breakdown Structure

   * Program Schedule

   * Initial Review (H+30)

   * Planning Workshop (A+15)

   * Cost Allocation Report Methodology

   * Program Cost Estimate

   * Progress Report

5. Commence work on:

   * Construction Materials Study

   * Life Cycle Cost Study

   * Design Manual

   * Project Procedure Manual (See Below)

   * Site Manuals

     --Data Acquisition Checklist
     --Inspection and Reporting

   * Annual Work Plan (Particular Focus on Kansas City vs. Irvine Location)

   * Engineering/Architect Procedures

     --Drawing Preparation, Size, Format, Quality, Drafting Standards, Numbering System, Squad Checks, Reviews

     --Specifications - Same

     --CAD - Computer - Hardware

     --Software - Control - Interfaces Data Link

     --Repro Planning

     --Document Control

* Engineering Procedures Manual

  --Engineering Design Criteria Manual

  --Develop Material Management Plan - Long Lead Items - GFM

  --Modularization

  --Construction Systems

  --Contracts Manual - Procedures

  --Procurement Manual

  --Office Procedures - Interfaces, NOAA, NEXRAD-JSPO, Correspondence, Files, Property, Travel Control, Pay/Timekeeping

  --Develop Format and Control Level Schedules

  --Develop Cost Code of Accounts

  --Briefing/Aids for Government Presentation

  --Estimates in Connection with Studies

  --Format for Construction Scheduling

  --Project Controls Procedures

  --Annual Work Plan Refinement

  --Annual Budget Plan

  --Develop Cost Trend System

  --Turn-over Schedule Planning

6. During FY 87, the estimated level of effort will be 13 man-years and will include a Project Director, Engineering (3), Construction (2), Contracts (2), Controls (3), and Architecture (2).

7. In FY 87, work locations will be:

| | |
|---|---|
| Kansas City | 10 |
| Irvine | 3 |

In Kansas City, Fluor will use leased space in Bob Gould's present office. Fluor understands that they will get all furniture for the cost of shipment to Kansas City from Irvine.

8. Fluor expects to complete all planning work started in FY 86, in FY 87 (see paragraph 5, previous summary). Additional planning will be done on safety, security, and information packaging.

9. In Irvine and Kansas City, Fluor/Gould-Evans will complete detailed design for two WFO's and one mod., site acquisition permitting. In the third and fourth quarter, detailed design of the following year portion of the program (12 sites) will be started (site acquisition permitting).

10. Fluor will collect data on as many sites as acquisition processing will permit. Their work will cover Davis-Bacon rates, zoning, telephone and engineering.

11. Three subcontracts per site for engineering data acquisition; these would be Fluor subcontracts, passing down all Department of Commerce requirements, and will be the basis for an effective small and disadvantaged business program on engineering aspects of the program.

12. The contract specifications packages developed by Fluor/Gould-Evans and reviewed in Kansas City will include drawings, specifications, calculations, cost estimates, and a schedule for use in evaluating bids, and the inquiry package.

13. The final quarter of FY 87: Fluor would expect to develop bidders lists for the first three solicitations.

A productive year for 13 people should cause little risk to the Government regarding successful performance of these tasks. Some delays in obtaining legal descriptions, maps, drawings, or appraisals should not seriously impact what should be accomplished this first year.

## II. COST ESTIMATE

| FISCAL YEAR | DIRECT PRODUCTIVE MANHOURS | ESTIMATED COST | ESTIMATED COST | TOTAL |
|---|---|---|---|---|
| 1986-87 | 27,500 | $1,750,000 | $145,000 | $1,875,000 |

## III. A & E FEE -- FY 87

(a) Four percent (4%) of $1,750,000.00 or $70,000.00.

(b) Fee estimates projected throughout span of contract, based on DPMH.

| | |
|---|---|
| FY 87 | 70,000 |
| 88 | 60,000 |
| 89 | 303,000 |
| 90 | 640,000 |
| 91 | 529,000 |
| | 1,602,000 |

(c) Project Management estimate projected throughout span of contract.

| | |
|---|---|
| FY 87 | 0 |
| 88 | 115,000 |
| 89 | 295,000 |
| 90 | 750,000 |
| 91 | 1,000,000 |
| | 2,160,000 |

(d) Radar Data Acquisition Management = radar, wind profiler, etc.

| | |
|---|---|
| FY 87 | 0 |
| 88 | 15,000 |
| 89 | 160,000 |
| 90 | 530,000 |
| 91 | 720,000 |
| | 1,425,000 |

Labor Rates proposed by Fluor, and verified by audit, compare favorably with previous A-E contracts awarded by CASC and NCASC:

CLASSIFICATIONS -- HOURLY RATES:

| | Fluor | Burns and McDonnell | AEPA |
|---|---|---|---|
| Principal | 35.00 | 35.00 | 26.00 |
| Project Manager | 25.00 | 25.00 | 18.00 |
| Construction Inspector | 21.50 | 25.00 | 18.00 |
| Senior Architect | 22.00 | 21.50 | 18.00 |
| Architect | 17.00 | 22.00 | 20.00 |
| Landscape Architect | 18.00 | 17.00 | 16.00 |
| Senior Mechanical Engineer | 23.00 | 18.00 | 16.00 |
| Mechanical Engineer | 17.00 | 23.00 | 22.00 |
| Senior Electrical Engineer | 23.00 | 17.00 | 17.08 |
| Electrical Engineer | 17.00 | 23.00 | 22.00 |
| Senior Structural Engineer | 23.00 | 17.00 | 15.86 |
| Structural Engineer | 16.00 | 23.00 | 22.00 |
| Senior Civil Engineer | 22.00 | 16.00 | 16.00 |
| Civil Engineer | 16.00 | 22.00 | 22.00 |
| Space Planner | 12.50 | 16.00 | 16.00 |
| Cost Estimator | 19.00 | 12.50 | 16.00 |
| Designer | 15.00 | 19.00 | 25.00 |
| Interior Designer | 13.50 | 15.00 | 12.00 |
| Draftsperson | 10.00 | 13.50 | 12.00 |
| Word Processor | 8.00 | 10.00 | 10.00 |
| Senior Environmental Engineer | 23.00 | 23.00 | -0- |
| Environmental Engineer | 16.00 | 16.00 | -0- |
| Specifications Writer | 19.00 | 19.00 | -0- |
| Typist | 6.50 | 6.50 | -0- |

Overhead, and General and Administrative Rates verified by audit are also comparable to rates in other contracts:

| | | |
|---|---|---|
| Overhead Rate: | 29.13% | (Payroll) |
| General and Administrative Rate: | 100.37% | |
| Total: | 129.50% | |

INDIRECT COSTS

(a) For expenses incurred by the A/E, such as authorized travel and subsistence (including airfare, food, lodging, automobile rental, commercial services, and incidental expenses)--the cost to A/E plus five percent (5%).

(b) For reproduction, printing, long distance telephone calls, vehicles, testing apparatus, computer and computer-aided design and drafting (CADD) services--amounts as determined from A/E's schedule of rates in effect at the time service is provided.

(c) For services rendered by others, such as subcontractor(s) to A/E, surveying, real property descriptions, soil borings, subsurface investigations, laboratory testing, field quality control tests, progress photos, or other activities required or requested by COTR--the cost to A/E plus ten percent (10%).

Based upon the above information and the DCAA audit, and on comparison with the DOE contract administered by Mr. Jeff Hoyles, DOE-Oak Ridge Operations, the prices for the level of effort/direct productive man-hours and other rates appear to be fair and reasonable.

A Certificate of Current Cost and Pricing Data has been received from Fluor Technology for this procurement.

In conclusion, I have determined that the proposal for 27.141 Direct Productive Manhours total $1,750,746.00, is fair and reasonable price and other factors considered.

National Oceanic and Atmospheric A[...]istration,
Host Agency serving:
Bureau of the Census
Economic Development Administration
International Trade Administration
Minority Business Development Agency
Office of the Inspector General

DEPARTMENT OF COMMERCE
Central Administrative Support Center
Federal Building, Room 1736
601 East 12th Street
Kansas City, Missouri 64106

TO: Memorandum for the Record

SUBJECT: Weighted Guideline Factors and Other Items Discussed September 17-22, 1987 between Arredondo and Tate/Toliver of Fluor Technology, Inc.

I. Initial Fluor Offer Based Upon --

| | | |
|---|---|---|
| 1. | Project Labor Skill Level | 18% |
| 2. | Subcontracts | 5% |
| 3. | Other Direct Costs | 8% |
| 4. | OH & GA | 7% |
| 5. | Cost Risks | 5% |
| 6. | Other Factors: (Fluor developed systems) | 8% |

Excessive percentage risks--developed systems either too high or recovery should be spread thru all contracts.

II. Second Fluor Proposal Based Upon --

| | | |
|---|---|---|
| 1. | Project Labor Skill Level | 15% |
| 2. | Subcontracts | 3% |
| 3. | Other Direct Costs | 5% |
| 4. | OH & GA | 1% |
| 5. | Cost Risks | 5% |
| 6. | Other Factors: (Fluor developed systems) | 5% |

III. I suggested joining other direct costs, O/H, and G&A into one factor. CPFF risks to Fluor are low; labor skills high. Therefore, overall percent too high. I proposed, after several discussions, the following:

| | | |
|---|---|---|
| 1. | Project Labor Skill Level | 13% |
| 2. | Subcontracts | 3% |
| 3. | Other Direct Costs, OH, and G&A | 5% |
| 4. | Cost Risks | 1% |
| 6. | Other Factors (as above) | 3% |

Fluor finds percent reasonable--fee based on above:

1. 174,951.00
2. 161,246.00
3. 158,606.00
4. 144,958.00 = $145,000.00

Based on level of effort estimated at 27,141 DPMH then:

| | |
|---|---|
| F.F. - Original Proposal | $174,951.00 |
| F.F. - Revised | 145,000.00 |
| Deduct from FTI Cost Proposal | 29,941.00 |

NOTE: Recommended DOC percentile, per factor in Acquisition Letter:

| | |
|---|---|
| Labor | 1 to 18 |
| Subcontracts | 1 to 5 |
| Other Direct, G&A | 3 to 9 |
| Cost Risks | 0 to 6 |
| Other Factors | -3 to +3 |

IV. Proposed subcontractor, Gould-Evans, is acceptable to NOAA. Same standards and provisions as the prime contractor.

V. OSDBU is favorable towards small-disadvantaged business subcontracting plan. Will let FTI know as soon as possible when we hear.

Tate wanted to know a date for definitization. I stated the audit was not complete and did not have a target date. Tate: Provisional rates, etc. were accepted by DCAA/DOE. The only question was office building sold in FY 85 and leased back in FY 86.

VI. Solicitation, interviews, and selection based on A-E criteria/standards, with most of the work in project and construction management. The A-E portion is minor: to site adapt a conceptual design developed by Burns and McDonnell.

[signature]

Jesus Arredondo, Contracting Officer