# SUMMARY OF THE CONTRACTING OFFICER'S ANALYSIS OF INCURRED COSTS

## CONTRACT NUMBER 50WCNA606099
## FLUOR DANIEL, INCORPORATED

## OIG AUDIT NUMBER DEN-6927-5-0001

## AUGUST, 1995

U.S. DEPARTMENT OF COMMERCE
NATIONAL OCEANIC & ATMOSPHERIC ADMINISTRATION
CENTRAL ADMINISTRATIVE SUPPORT CENTER
PROCUREMENT DIVISION
KANSAS CITY, MISSOURI

-- PROCUREMENT SENSITIVE INFORMATION --

# SUMMARY OF THE CONTRACTING OFFICER'S ANALYSIS OF INCURRED COSTS AS IT COMPARES TO THE NOAA ANALYSIS AND OIG AUDIT REPORT CONTRACT NUMBER 50WCNA606099 AUGUST 4, 1986 THROUGH OCTOBER 31, 1992

## 1.0 INTRODUCTION

Contract number 50WCNA606099 was awarded to Fluor Daniel (FDI) on May 30, 1987 definitizing the letter contract awarded July 29, 1986. The purpose of the cost-plus-fixed-fee contract was to provide project and program management, architect-engineering (A/E) design and construction management and inspection services in support of the installation phase of the Next Generation Weather Radar (NEXRAD) and National Weather Service, Weather Forecast Office (WFO) design and construction program. The contract covered the period August 4, 1986 through October 31, 1992.

The information contained in the pages that follow summarizes the basis for the Contracting Officer's (CO) conclusions relative to the audit findings and a brief explanation for differences between the CO's findings and that of the OIG and NOAA.

## 2.0 BACKGROUND

The Office of Inspector General (OIG) conducted an interim audit of costs incurred on contract number 50WCNA606099 and published its findings in report number DEN-4613-3-0001, dated March, 1993. The interim report covered costs incurred from contract inception, August 4, 1986, through April 30, 1992. The OIG questioned $7,171,743. The questioned costs consisted of $184,524 for unallocable or duplicative direct labor charges; subcontract costs and indirect costs; and $6,987,218 for design fees billed in excess of the statutory limitation on architectural and engineering design fees.

In June, 1993, Fluor Daniel (FDI) provided an unsolicited response to the OIG interim audit report summarizing FDI's position on the audit findings. In that response, FDI asserted that it was overpaid only a small amount of the questioned labor charges and rejected the OIG's conclusions that the statutory limitation design fees had been exceeded.

Following issuance of the OIG audit report, NOAA formed a task team, under the direction of the National Weather Service Transition Program Office, to analyze the audit findings. The team performed an extensive study on the design costs incurred on the contract, and analyzed the OIG's questioned costs relative to design. The team was not tasked to analyze questioned costs other than those related to the 6% fee limitation. The NOAA team submitted its final report to the CO in December, 1993. NOAA identified "grey areas" which with further review could result in an upward adjustment in total design costs and fees. NOAA concluded that FDI exceeded the statutory limit by approximately $609,697 to $1,260,573.

In March, 1995, the OIG issued the final audit report number DEN-6927-5-0001, summarizing the audit of costs incurred on the contract from inception through contract completion, October 31, 1992. As a result, the OIG questions $4,826,860. The questioned costs consist of $245,062 for direct labor, subcontract costs, excessive travel costs, and indirect costs; and $4,581,798 for design fees billed in excess of the 6% statutory limitation.

In order to resolve the OIG audit findings, the CO conducted an analysis of costs incurred on the contract using information contained in the OIG audit report, data provided by NOAA personnel, FDI, and other sources. As a result, the Contracting Officer questions $3,961,998. The questioned costs consist of $152,468 for direct labor; excessive travel charges and indirect costs and $3,809,530 for total design fees billed in excess of the 6% statutory fee limitation.

## 3.0 QUESTIONED AND UNALLOWABLE COSTS

The OIG questioned $245,062 of claimed costs in addition to its finding of excessive design cost. These question costs consist of $18,416 for administrative labor costs related to non-NOAA activities at FDI's Kansas City office; $4,969 for duplicative time-sheet data entry; $69,208 for human resources activities duplicated in the overhead cost pool; $145,747 in subcontract costs; $837 for excessive travel costs; $263 for unsupported travel costs; and a net amount of $5,622 for FDI indirect charges.

The Contracting Officer questions $152,468 of claimed costs not related to the 6% fee limitation. The question costs consist of $18,416 for administrative salaries for the performance of non-NOAA activities; $4,969 for duplicative time-sheet data entry; $145,747 for subcontract costs; $837 for travel costs; and a net credit of $17,501 for FDI indirect charges.

Based on information provided by FDI and the DCAA, the Contracting Officer has no basis to question $69,208 unburdened direct labor costs for human resources activities that the IG believes may be duplicated in the overhead cost pool. In addition, the Contracting Officer found documentation to support $263 for travel costs questioned by the OIG.

The indirect costs rates recommended by the OIG were used to compute FDI indirect costs. Applying these rates to the costs accepted by the Contracting Officer resulted in underclaimed indirect charges.

APPENDIX I provides a detailed summary of the CO's questioned and unallowable costs.

## 4.0 6% STATUTORY FEE LIMITATION

The Federal Property and Administrative Service Act of 1949 (41 USC 254(b)) established a 6% statutory limit on the fee for A/E services for public works or utility projects. It reads in part as follows:

> "...a fee inclusive of the contractor's costs and not in excess of 6 per centum of the estimated costs, exclusive of fees, as determined by the agency head at the time of entering into the contract, of the project to which such fee is applicable is authorized in contracts for architectural and engineering services relating to any public works or utility project...."

The Federal Acquisition Regulations (FAR) 15.903(d)(1)(ii) further defines this limitation as:

> "For architect-engineering services for public works or utilities, the contract price or the estimated cost and fee for production and delivery of designs, plans, drawings, and specification shall not exceed 6% of the estimated costs of construction of the public work or utility, excluding fees."

Contract number 50WCNA606099 did not contain any reference to the statutory limitation or FAR guidance on the fee limitation. The lack of reference to the statutory limitation in the contract does not preclude enforcement of the statute. The Contracting Officer does not have the authority to waive statutory limitations. Both NOAA and the Contracting Officer agree that since the terms and conditions of the contract did not explain or otherwise address the statutory limitation, a definition for the statute and it's implication on this contract must be determined in retrospect based upon logical interpretation.

Under normal circumstances, the 6% fee limitation is derived from a pre-defined numerator and denominator agreed to by the Contracting Officer and the potential Contractor prior to contract award. That is, the design work germane to the statute (the numerator) and the Government's estimated cost of construction of the project (the denominator). The quotient represents the maximum amount the Government can pay for the production and delivery of designs and specifications for a project.

In a meeting in June, 1990, the Government and Contractor discussed the 6% fee limitation. Following the meeting, FDI prepared a chart that briefly summarized the discussion and illustrates a common understanding for the FAR regulation that limits design fees to 6% of the estimated cost of construction. The chart, titled "Profit and Fee Limitation," lists, in general terms, activities that constitute the pre-design, design, and post design functions.

However, the chart does not provide a comprehensive definition for each of the activities. Further, no record has been found that documents the discussions that took place at the meeting or a mutual understanding of what specific "design phase" costs are considered subject to the 6% fee limitation. For this reason, the Contracting Officer does not consider the chart a comprehensive, governing document. The Contracting Officer and NOAA used the chart as a guide along with the guidelines published by the Corp of Engineers to calculate design costs.

## 5.0 <u>NUMERATOR</u>

Information contained in file documentation confirms that actual design did not begin until April, 1987, midway through task order 2. Consequently costs incurred prior to that time were not considered in the analysis of design costs.

NOAA's numerator for the 6% fraction is comprised of the following costs: (i) direct design labor, (ii) overhead and capital cost of money rates allocated to labor costs, (iii) subcontract costs related to design services, (iv) allocations of Kansas City office rental, (v) general and administrative expense and capital cost of money rates allocated to total cost input, (vi) and allocations of earned fixed fees.

In addition to these costs, the OIG and the CO included a portion of administrative labor support costs.

The following paragraphs summarize the major differences between the OIG, CO and NOAA's computation of design costs and fees. EXHIBIT I provides summary of the design cost tabulations.

## 5.1 Accounting for Design Costs

The FDI charge system contained a series of two-digit alphanumeric codes "loosely" tied to the requirements in the statement of work. NOAA, the CO and the OIG agree that costs charged to FDI area code charge account number(s) 13, Site Specific Design (Task Orders 1 through 4); 31 Site Specific Design (Task Orders 5 through 8); and 33, Design Package Review are subject to the 6% fee limitation.

FDI agreed that it erred in charging some design costs to a pre-design account during task orders 7 and 8. Consequently, in addition to the above, NOAA's maximum calculation, the OIG's and the CO's calculations include consideration of costs charged to area code 3A, conceptual design (Task Orders 7 and 8).

NOAA excluded labor costs for the preparation of cost estimates from its computation of the 6% fee limitation since it was not listed as an activity on the chart that resulted from the June, 1990 meeting.

The Corp of Engineers, Engineer Federal Acquisition Supplement, dated July 30, 1989, provides a list of examples of services that are not considered "an integral part of the production and delivery of designs, plans and specifications and may be excluded" from the A-E fee when determining compliance with the statute. The preparation of costs estimates is not listed as an exclusion.

In the contract, FDI was initially required to deliver a cost estimate at the 15%, 35%, 90% and 100% milestone. The Contracting Officer considers the preparation of cost estimates "an integral part" of the preparation of designs and specifications. The estimates provide a mechanism to monitor costs and ensure that the design approach is within the budget. Further, in a meeting with the OIG and the Contracting Officer, on January 8, 1993, FDI agreed to consider including, as a design cost, the cost associated with the preparation of one cost estimate for each site.

Based on the foregoing, the cost for preparing one construction cost estimate, for each site design completed prior to the expiration of the contract, is included in the CO's calculation of design costs.

During task order three (10/1/87 through 9/30/88), FDI assigned a two digit alpha code (CLIN code) to each site to assist in identifying site specific effort. The CLIN code was intended to be used in conjunction with the area code charge account number. The CLIN code was not used consistently during task orders three through five. Numerous hours were charged to the design area code account numbers and CLIN OO, a "non-site specific CLIN code."

NOAA's minimum calculation of design costs and fee excludes all design labor costs charged to CLIN 00 on the basis that the 6% limitation does not apply to costs that are not charged to specific WFO project codes. However, NOAA recommended that the Contracting Officer question FDI charges to CLIN 00 in 6% related work area codes.

The OIG questions why FDI charged direct labor costs for non-site specific design effort to site specific design accounting codes. The OIG included all CLIN 00 charges to site specific design area codes.

The CO analyzed charges to CLIN 00 and discovered discrepancies in the accounting for site specific design effort. The analysis revealed instances where file documentation substantiated the performance of 6% related design activities for a particular WFO. However, labor reports did not reflect design costs to the specific site CLIN codes or included minimal costs for the effort performed. Further, the review of some timesheets confirmed that some site specific design costs had been charged to CLIN 00.

Based on the foregoing, the CO's computations of direct labor costs include those charges to CLIN 00 unless documentation otherwise substantiates an exclusion.

## 5.2 Methodology for Tabulating Design Costs and Fee

(a) Design Labor

NOAA introduced the design window concept to identify and tabulate design labor costs. By establishing a design start date and design ending date, actual design costs charged to specific site codes could be segregated for each site and charges for pre-design and post design activities, restarts and other non-design activities eliminated. Both the OIG and the CO accepted NOAA's design window concept.

NOAA used file documentation and a "Master Schedule" prepared by Fluor Daniel to establish a design window for each site. According to NOAA, the design start date was generally defined as the date 15% detailed design began and the design completion date was the date the 100% site drawings and specifications were submitted to the Government. NOAA tabulated design labor costs charged to design area codes from labor reports included in the FDI invoices. NOAA excluded all design costs outside of the design window.

The CO relied on information contained in Monthly Progress Reports, Task Order Reports, Technical Review Meeting Notes, and the dates on drawings and specifications to establish the design window and substantiate the design dates published in the Master Schedule. The CO accepts NOAA's definition for the design start date. However, the CO does not accept the date the 100%

drawing and specification was submitted to the Government as the design completion date. Information contained in contract files and monthly progress reports confirms that changes to drawings and specifications were initiated after the 100% submission. Some of the changes were initiated by the Government and some changes were necessary to correct errors and omissions made by FDI. For some sites the changes were made prior to the issuance of a solicitation. For others, amendments to solicitations were issued to incorporate changes. For this reason the design window period used by the CO deviates from that set by NOAA. For example, for some sites the design completion date used by the CO may be the date a solicitation was issued; the latest date on a drawing or specification; the date of an amendment; or the solicitation closing date. Consequently, this expanded the design window established by NOAA resulting in an increase in design labor costs subject to the 6% fee limitation.

Labor costs associated with the preparation of designs and specifications for this contract were incurred at FDI offices located in Irvine, California, Kansas City, Missouri, and during task order 8, in San Juan, Puerto Rico. NOAA, the OIG and the CO used the weekly labor reports included in the FDI invoices to analyze and tabulate the design costs incurred.

NOAA excluded all design costs associated with leased sites except for Boston, Minneapolis, Great Falls and Little Rock. According to NOAA, these sites were originally planned as new builds but were later converted to leased sites. In some instances the design was completed but not used.

The Contracting Officer accepted NOAA's rationale for excluding leased sites from the 6% computation but takes exception to including Minneapolis and Little Rock in the computation. The design costs recorded for these sites are minimal and do not provide an accurate representation of the costs associated with the preparation of a site design. Including an unreasonable design cost for these sites in the numerator of the 6% fraction and the full value estimated cost for construction in the denominator, distorts the 6% fee limitation computation.

(b) Administrative Support Cost Labor

Administrative support costs include but are not limited to the costs for preparation of NOAA invoices, payroll accounting services for the staff supporting the NOAA contract, and costs for processing payments to subcontractors on the NOAA contract.

NOAA's calculation of design costs did not include consideration for costs associated with administrative type support services. NOAA believed that the costs for administrative types of services "do not directly or indirectly contribute toward the preparation of plans and specifications." Also, NOAA presumes that the cost should not be allocated because it was not included in the "Price and Fee Limitation" chart that resulted from the June, 1990 meeting.

On July 28, 1994, the OIG requested an opinion from the General Accounting Office (GAO) regarding "the allocation of a portion of administrative costs to direct design costs for the purpose of determining compliance with the statutory 6% fee limitation." On May 8, 1995, the Comptroller General issued Decision B-258058. The GAO is in agreement with the OIG, "that the administrative costs at issue are associated with the delivery of design services, and, as such, covered by the 6-percent limitation."

Based on the foregoing, the CO has included a portion of administrative support costs in the computation of design costs subject to the 6% fee limitation. As suggested by the OIG, the CO used proposed costs rather than actual costs to compute the allocation. FDI proposed program management and administrative support costs separately. However, actual costs for both of these tasks were charged to the same work area code, making it difficult to separate actual costs incurred for the two tasks. Accordingly, the CO used the method the OIG used to calculate the administrative costs apportioned to design. Inclusion of an administrative cost allocation increased the CO's total design costs by approximately $1,141,084.

(c) Overhead

Since FDI's fiscal years do not correspond directly with the performance period on each task order, NOAA and the OIG recommended use of weighted average indirect cost rates. The CO accepted the recommendation. The weighted average overhead rates used in the OIG and CO calculations are based on the most recent claimed and approved rates.

(d) Subcontract Costs

Costs for design effort performed by subcontractors, specifically Gould Evans Architects (GEA) and A.C. Kirkwood, are included in the total design costs computation.

NOAA prorated GEA design costs for task order 2; used GEA timesheets to tabulate design costs for tasks orders 3 through 6; and estimated design costs for task orders 7 and 8 because timesheets were not readily available.

The OIG accepted, for the most part, NOAA's tabulation of GEA design hours. To compute the GEA design costs, the OIG applied the ratio of total design hours to total hours to the total GEA adjusted costs billed.

The CO prorated GEA design costs for task order 2 and tabulated design costs for all other task orders from the GEA timesheets. The CO and GEA discussed the methods used to account for design costs. Based on information provided by GEA, the CO identified a broader range of design costs subject to the 6% fee limitation. In addition, the CO included the costs for Computer Aided Design (CAD) effort. Consequently, the total design hours included in the CO's tabulation of GEA design costs is significantly higher than that tabulated by NOAA and the OIG. The CO used the OIG's method of computing GEA design costs.

A.C. Kirkwood provided design support services during task order(s) 7 and 8. NOAA tabulated costs from invoices included in the FDI billings submitted during task order 7. The OIG accepted NOAA's tabulation.

In addition to those costs billed in task order 7, the CO's tabulation includes costs from A.C. Kirkwood billings submitted in task order 8.

(e) Rent

Design costs include a portion of Kansas City Office rent. NOAA, the OIG and the CO used the same method to compute rental costs. The differences in the calculations of rent is the result of the differences in the total design labor costs tabulated by the OIG, the CO and NOAA.

(f) General & Administrative (G&A) Expense, and Cost of Capital Charges

NOAA, the OIG and the CO used weighted average indirect cost rates to compute the G&A expense and cost of capital charges. (Reference Section 5.2(c)

(g) Fixed Fee

The 6% fee limitation applies to total design cost and fee. Thus a portion of the fixed fee (profit) paid is included in the total design costs computation.

The fixed fee is allocated in the same ratios as FDI's fixed fee to total costs billed for each task order. NOAA, the CO and the OIG used the same method to compute the fixed fee.

5.3 **Recapitulation - Numerator**

The methods used by NOAA, the OIG and the CO to compute design costs are relatively consistent. The difference between the total design costs calculated by NOAA, the OIG and the CO is primarily the result of the disparities in the tabulation of FDI and GEA labor costs.

The following table exemplifies the differences in total design costs.

| | OIG | CO | NOAA |
|---|---|---|---|
| TOTAL DESIGN COSTS | $7,204,941 | $6,787,844 | $3,585,740 |

6.0 **DENOMINATOR**

The denominator is the sum of the estimated cost of construction (ECC) for each site included in the numerator. The ECC is the sum of the estimated cost of the construction contract and estimated cost of the Government furnished equipment (GFE) associated with the facility. For most of the projects, GFE includes the diesel driven generators, the uninterruptable power supplies, the packaged air conditioning units and NOAA signage. GFE does not include any systems or free-standing furniture. Land acquisition costs are not included in the denominator.

NOAA, the OIG and the CO agree that only those sites incurring design costs included in the numerator of the 6% fraction are included in the denominator of the fraction. The ECC used by NOAA, the CO and the OIG for site designs completed during task orders 2 through 7 is based on the March 1992 WFO Facilities Budget.

For those site designs partially complete as of April 30, 1992, NOAA used a prorated construction cost based on the number of design days prior to May 1, 1992 to the total number of full design days. As a result, NOAA's denominator is $49,601,000.

The OIG computed a weighted estimated construction cost based on the ratio of actual design labor hours charged during the contract period ending October 31, 1992 to the total design hours charged. The value of the denominator used by the OIG is $43,719,055.

The CO used information provided by PGAS as a basis for computing the denominator for these sites. PGAS used a weighted facility cost to identify the extent of site design effort to be complete under the follow-on letter contract. The ratio of the weighted facility cost to the total facility cost less furniture provided PGAS the percentage of total design scheduled to be completed under the letter contract. For the purpose of this analysis, the CO presumed that the balance of the design effort not scheduled on the PGAS contract was completed on contract number 50WCNA606099. The denominator used by the CO is $49,638,562.

6.1 Recapitulation - Denominator

The different methods used by NOAA, the OIG and the CO to compute the denominator and the specific sites each included it's computation of a denominator varies.

The following table illustrates the differences in the maximum allowable design costs payable based on the different denominators estimated by the OIG, the CO and NOAA.

| | OIG | CO | NOAA |
|---|---|---|---|
| ESTIMATED COST OF CONSTRUCTION | $43,719,055 | $49,638,600 | $49,601,000 |
| LIMITATION FACTOR | x 0.06 | x 0.06 | x 0.06 |
| MAXIMUM ALLOWABLE DESIGN COST | $ 2,623,143 | $ 2,978,314 | $ 2,976,060 |

## 7.0 SUMMARY OF FINDINGS - 6% FEE LIMITATION

According to Federal statute 41 U.S.C. 254(b), the design costs and fees paid by the Government for the production and delivery of designs, plans, drawings, and specifications cannot exceed 6% of the estimated cost of the project.

Although NOAA, the OIG and the CO agree that this limitation has been exceeded on contract 50WCNA606099, the magnitude of the costs paid in excess of the limitation varies.

The following table illustrates the differences between results of the analysis conducted by NOAA, the OIG and the CO.

| | OIG | CO | NOAA |
|---|---|---|---|
| TOTAL DESIGN AND FEE | $7,204,941 | $6,787,844 | $3,585,740 |
| MAX ALLOWABLE DESIGN COST | (2,623,143) | (2,978,314) | (2,976,054) |
| QUESTION DESIGN COSTS & FEE | $ 4,581,798 | $3,809,530 | $ 609,686* |

* NOAA's report questions $609,687. The difference is due to rounding.

APPENDIX II provides a detailed summary of the CO's questioned design costs and fee.

8.0 CONCLUSION

The Contracting Officer will question a total cost of $3,961,998. This cost consists of $152,468 for questioned and unallowable costs and $3,809,530 for charges for design services in excess of the 6% statutory fee limitation.

The questioned costs will be submitted to FDI in a letter that outlines the CO's findings and computations. FDI will be afforded an opportunity to submit a settlement proposal and negotiate a resolution. If negotiations are unsuccessful or if FDI declines the opportunity to negotiate in an expeditious manner, the CO will then issue a final decision accompanied by a formal demand for payment.

According to the OGC, if the CO's final decision is not appealed in accordance with the Contract Disputes Act, then the decision "shall be final and conclusive and not subject to review by any forum, tribunal or Government agency."

If FDI does appeal the decision, then it may choose to file the appeal with either the General Service Board of Contract Appeals (GSBCA) or the Court of Federal Claims (CFC). An appeal to GSBCA must be submitted within 90 days after a final decision is rendered. A contractor has one year from the date of the final decision to appeal to the CFC.

EXHIBIT

SUMMARY OF DESIGN COSTS
CONTRACTING OFFICER - OFFICE OF INSPECTOR GENERAL - NOAA

| | OIG TOTALS | CONTRACTING OFFICER'S TOTALS | NOAA TOTALS MIN |
|---|---|---|---|
| Direct Design Labor | $2,057,618 | $1,854,798 | $1,172,421 |
| Allocated Admin Labor | 582,902 | 504,046 | 0 |
| Subtotal - Labor | $2,640,520 | $2,358,844 | $1,172,421 |
| Overhead | | | |
| Kansas City | 1,594,282 | 1,485,701 | 711,028 |
| Irvine | 622,161 | 426,601 | 218,530 |
| San Juan | 7,775 | 35,484 | 0 |
| Gould Evans Design Cost | 862,247 | 1,061,001 | 749,641 |
| Other Subcontracts | 60,400 | 99,687 | 60,400 |
| K.C. Office Rent | 195,676 | 176,041 | 79,541 |
| San Juan ODC | | | 6629 |
| Subtotal | $5,983,061 | $5,643,359 | $2,998,190 |
| General & Administrative | 623,604 | 579,911 | 298,440 |
| Cost of Capital (OH) | 29,903 | 25,451 | 11,499 |
| Cost of Capital (G&A) | 5,179 | 4,097 | 1,919 |
| Subtotal | $6,641,747 | $6,252,817 | $3,310,048 |
| Fixed Fee | 563,194 | 535,027 | 275,692 |
| TOTAL DESIGN COSTS | $7,204,941 | $6,787,844 | $3,585,740 |

-- PROCUREMENT SENSITIVE INFORMATION --

# SUMMARY OF COSTS AND FEES CLAIMED
# CONTRACTING OFFICER'S CONCLUSIONS
# CONTRACT NUMBER 50WCNA606099

## AUGUST 4, 1986 THROUGH OCTOBER 31, 1992

| | Costs and Fee Claimed | Costs Questioned/ Unallowable | Costs Accepted | Notes |
|---|---|---|---|---|
| Direct Labor | $13,764,060 | $ 23,385 | $ 13,740,675 | (a) |
| Other Direct Costs | 10,679,702 | 146,584 | 10,533,118 | (b) |
| Overhead | 10,901,811 | (10,154) | 10,911,965 | (c) |
| Subtotal | $35,345,573 | $ 159,815 | $35,185,758 | |
| G&A | 3,633,415 | (6,686) | 3,640,101 | (c) |
| Cost of Money (O/H) | 149,874 | (314) | 150,188 | (c) |
| Cost of Money (G&A) | 25,226 | (347) | 25,573 | (c) |
| Total Costs | $39,154,088 | $ 152,468 | $39,001,620 | |
| Fixed Fee | 3,418,100 | | 3,418,100 | (d) |
| Total Invoices | $42,572,188 | $ 152,468 | $42,419,720 | |
| Compliance Adjustment | | 3,809,530 | (3,809,530) | APPENDIX II |
| Total | $42,572,188 | $3,961,998 | $38,610,190 | |

-- PROCUREMENT SENSITIVE INFORMATION --

## NOTES TO SUMMARY OF CONTRACTING OFFICER'S CONCLUSIONS

### (a) DIRECT LABOR COSTS

Direct labor costs in the amount of $23,385 for the performance of administrative services for non-NOAA activities ($18,416) and duplicative data entry charges ($4,969) have been disallowed under this contract.

**Unallocable Administrative Labor Costs for Non-NOAA Activities**

Administrative labor costs in the amount of $18,416 relating to non-NOAA activities performed at the Kansas City project office are unallocable.

FDI agreed with the audit findings as evidenced by an electronic mail message dated September 17, 1992 from Jim Wagner to Dwayne Wilson, Jack Toliver and other FDI personnel. The agreement between the OIG and FDI was confirmed in a letter dated September 18, 1994 from the OIG to Dwayne Wilson. FDI identified 1568.7 direct labor hours and $18,416 billed to the NOAA contract in error and agreed to credit the NOAA contract for these charges. To date, a credit has not been issued.

The following table summarizes the computation of unallocable administrative labor costs.

| | Non-NOAA Labor Percentage | Unallocable Labor Cost |
|---|---|---|
| Task Order 4 | 4.592% | $ 2,494 |
| Task Order 5 | 6.650% | 5,036 |
| Task Order 6 | 5.381% | 6,526 |
| Task Order 7 | 4.318% | 4,360 |
| Total Unallocable Labor | | $18,416 |

**Unallowable Duplicative Costs for Time-sheet Data Entry**

Direct labor costs, in the amount of $4,969, for time-sheet data entry functions that duplicate functions in the overhead cost pool are unallowable.

In its response to the OIG audit, FDI acknowledged "duplicative time-sheet data entry costs" and agreed to credit NOAA "with the questioned direct labor cost, plus appropriate burdens, G&A, and cost of capital." To date a credit has not been issued.