# FLUOR DANIEL

INTEROFFICE CORRESPONDENCE CONTINUATION

JESSE ARREDONDO April 8, 1987
NOAA, Kansas City 3

4. Your attorney questions the need for both FAR 52.243-2, Alternate 1 and FAR 52.251-1.

   It is our understanding that we included FAR 52.251-1, Government Supply Sources, for its possible use in the event you task us with "procurement", as set forth in the last sentence of PART I, Section C, paragraph 2.3.8.

   If it serves your purpose, we have no objection to the deletion of FAR 52.251-1 at this time. It could later be inserted by Modification, if and when we were tasked with procurement.

5. No comment. Internal CASC documentation.

6. Your attorney says to delete FAR 52.232-19, Availability of Funds for the Next Fiscal Year. That is located at PART I, Section H.8 and the draft, if left in the Contract, needs to be changed to read "September 30, 1987", as we discussed previously.

   It would seem to us that you should delete FAR 52.232-18, Availability of Funds, rather than 52.232-19. The former clause says you do not have funds for this Contract. That may have been the case during solicitation, but it obviously is not the case now, since your checks are not bouncing. If you leave 52.232-18 in the Contract, we will require your written confirmation that funds for the base period are available.

   Strongly suggest you delete 52.232-18. If I were the Buyer, I would not eliminate 52.232-19. As the Seller, we do not object to its deletion.

7. Your attorney states that an Architect-Engineer fee limitation of 6% is applicable here.

   We have been over this a number of times. We are not performing <u>only</u> Architect-Engineer services. We all agreed that we fit under the definition of 15.903(d)(iii), with a fee limitation of 10%.

   If we could have estimated the cost of construction for each of the WFO's, then we could have negotiated two fee structures--one for Architect-Engineer and one for Program, Project and Construction Management. Assuming each WFO cost $500,000; that would be about $30,000 fee times say 90 (60-120) WFO's or $2,700,000 fee for Architect-Engineer services, plus 10% fee on the balance.

   First, we could not estimate the cost back in July, 1986 and probably still cannot accurately. Therefore, we opted for a Level of Effort, <u>Professional Services Contract</u>. This is defined in PART I, Section C, Paragraph 1.2.

   Second, the probable total fee on a split fee structure basis would have far exceeded what we negotiated in September.



FORM G-1041 1/87
PRINTED IN U.S.A.

**FLUOR DANIEL**

INTEROFFICE CORRESPONDENCE CONTINUATION

JESSE ARREDONDO April 8, 1987
NOAA, Kansas City 4

In summary, we do not agree with the attorney's comment on fee limitation.

That concludes our review and comments on your FAX of 4/7/87. These are informal, but reflect our views and we can send you a formal letter if you require one.

Jesse, I am really a little taken back by the fact that the "final legal review," which we have all been awaiting for months has missed the mark on so many major aspects of our Contract. I hope that your procedures allow you to document your position (with the help of this memo) and proceed to award the Contract.

Best regards.

Jack Toliver

JMT/1007/023:nas



FORM G-1041 1/87
PRINTED IN U.S.A.