DRAFT

Statements of Work Not Clearly Defined

Two of the four contracts were cost reimbursable type awards which lacked clearly defined statements of work. Without a firm basis for determining what the contractor was expected to do, the JSPO staff and other technical officials had no basis for ensuring that the desired work was accomplished or that the government paid only the appropriate amount.

- o The radar site selection contract was modified to provide for changing the contractor's scope of work. Instead of focusing on the survey of potential radar sites, the contractor was to begin performing program management activities. However, no specific statements of work were prepared to describe the nature of the program management activities to be conducted. Notwithstanding the new type of work prescribed by the modification, the contractor basically continued to perform the site surveys and to bill JSPO for the costs incurred.

  According to the contractor, (1) JSPO's technical representatives directed and continuously revised the contractor's work through an electronic mail system, and (2) the company was not required to complete any specific task, but rather provided a specific level of effort. We attempted, but were unable to compare the amounts billed with specific tasks. Neither the JSPO technical representatives nor the contracting officer could provide sufficient documentation to show us the contractor's progress relative to the costs charged.

  The architectural and engineering contract was awarded as a task order contract. From award through fiscal year 1990, only one general task order per year was issued. This task order lacked specific assignments, costs, and delivery schedules. In addition, keeping track of the total obligations and work covered by the contract was difficult because the annual task orders were issued and administered by the projects office rather than the contracting office.

Under these circumstances, the contractors received full payment for expenses incurred while not being held accountable for completing any specific work products.

Unpriced Modifications Issued

Contracting officers issued unpriced modifications for two contracts that allowed program officials to add more work for unknown amounts of contract costs, and negotiate an equitable adjustment at a later date. Under these terms, JSPO could incur future financial liabilities without obligating sufficient funds to cover them. The use of such open-ended contracting methods can seriously impair an agency's financial controls. It can lead to obtaining contract services in one year and paying for them with the next year's funds. This incremental funding approach is prohibited by federal appropriations law.

DRAFT

Examples of several unpriced modifications follow.

- During fiscal year 1987, the contracting officer issued four unpriced modifications to the radar site selection contractor for additional survey work to reflect changing conditions. Again in fiscal year 1988, two more unpriced modifications were issued for the same reason. Obligations on these six unpriced obligations totaled $1.75 million, including $1 million in 1987 and $750,000 in 1988.

  However, the payment amounts ultimately negotiated were far greater than the amounts obligated when the unpriced modifications were awarded. Specifically, the negotiations resulted in agreements to pay the contractor $3.3 million for the six unpriced modifications, or $1.55 million more than originally had been obligated.

- In June and September 1988, the contracting officer issued unpriced modifications to Raytheon Co. The contractor was to conduct an inventory of the contractor's Government-furnished equipment and dismantle and ship the NEXRAD pre-production system and associated property. Obligations of $780,000 were recorded when the unpriced modifications were issued and, at a later date, a final equitable adjustment of the contract costs and fees were to be made.

Moreover, because the contractors usually received additional fees as costs increased, the contracts took on the characteristics of a cost-plus-percentage-of-cost contract. This type of contract is also prohibited by federal procurement laws and regulations.

Regulations Not Followed

Contracting officers did not consistently comply with the Federal Acquisition Regulation and Department requirements for three of the four contracts. For example, the contracting officer added millions of dollars in new tasks to the existing contract for architectural and engineering services. The tasks included real property procurement support for the forecast offices and the NEXRAD sites, and advisory and program management support to JSPO. These tasks were added without any attempt to obtain competition for the expanded scope of work.

Under the provisions of the Federal Acquisition Regulation (Part 6) competition should be obtained when acquiring goods and services outside the original scope and terms of the existing contract. Likewise, Department Administrative Order No. 208-15 emphasizes the importance of obtaining competition to obtain more favorable contract terms.

DRAFT

Further, no approval for adding large-scale advisory and program management services to the contract was requested or received from the Department's deputy secretary. The Department requires that the deputy secretary or his designee, assisted by an advisory and assistance panel, approve actions when the total cost of the services will exceed $25,000.

The contracting officers also did not comply with all of the Federal Acquisition Regulation and Brooks Act requirements for architectural and engineering procurements. The result was excessive architectural and engineering fees because (1) the contract did not include a budgeted amount for the construction costs, which would have required the firm to redesign offices at no additional fee if construction costs exceeded the government's budget, and (2) the mandatory six percent fee limitation for design work was not considered during negotiations. Subsequently, JSPO may have overpaid for architectural and engineering services.

Contract Terms Not Adequately Enforced

Our audit also disclosed that for three of the contracts reviewed, the contracting officers did not adequately enforce contract terms to ensure that contractors submitted invoices, financial data, progress reports, or other information to allow proper monitoring of the contract work and cost. In one case, the contracting officer approved a $6 million payment based on documentation that was totally inadequate to substantiate the claim. The documentation did not describe the work completed and the contracting officer could not specifically describe to us the work performed by the contractor during the period the costs were incurred.

In another case, the contracting officer did not require the radar site-selection contractor to comply with the financial terms of the contract. The contract was awarded based on an estimated cost per site and a cost for preparing environmental assessments. Neither the financial reports nor the invoices showed the individual costs for each requirement. The contractor could perform several surveys and issue more than one assessment report during the billing period. However, because the contractor reported only total costs incurred, JSPO had no method for monitoring costs or determining whether the contractor remained within or exceeded the estimates.

Oversight, Guidance, and Assistance Inadequate

The contracting officers responsible for awarding and administering the contracts received little, if any supervisory oversight. As a result some contracting officers acquiesced to program officials requests for procurement actions that were not in accordance with the procurement regulations nor in the best interests of the government. These kinds of procurement actions have contributed to the significant escalation of contract costs. For instance:





DRAFT

DRAFT

- o The JSPO should have been required to prepare adequate statements of work and perform technical oversight of the radar site selection contractor's progress, instead of allowing the contractor to be funded incrementally by a cost reimbursable, level-of-effort contract.

- o The Special Engineering Project Office should have been required to procure architectural and engineering services needed to design weather forecast offices on a fixed price basis instead of allowing the award of a cost reimbursable level-of-effort contract. A fixed price contract would have limited design changes and ensured that the six percent mandatory fee limitation was not exceeded.

We discussed our concerns about the lack of proper supervision with the Department's Deputy Director for Procurement. He acknowledged that JSPO's contracting function needed tighter controls. He said that:

- o Neither he nor his staff had reviewed recent contracts or modifications awarded with tri-agency funds.

- o He was unaware of the scope and amounts of the procurements.

In February 1990 the Deputy Director established a NEXRAD procurement support staff to better control JSPO's procurement activities. This staff will review and ensure that all procurements adhere to federal acquisition regulations, and that all contracts are properly administered.

The absence of needed oversight resulted in inadequate cost controls over major program acquisitions. As a result, JSPO has incurred significant contract cost overruns without any assurance that the costs were necessary and correct.

Recommendations

We recommend that the Under Secretary for Oceans and Atmosphere coordinate with the Department's Office of Procurement to strengthen the contracting practices relating to the NEXRAD program. At a minimum, procurement and program officials should be directed to do the following:

-- Prepare well-defined statements of work designed to help Joint System Program Office officials hold the contractors accountable for delivery of acceptable goods and services.

-- Refrain from using unpriced modifications that allow program officials to procure services for an unknown amount of additional costs on the basis of an equitable adjustment to be negotiated at a later date.



FD 007623

DRAFT

DRAFT

-- Comply with the Federal Acquisition Regulation and other requirements restricting sole source procurements, awards for advisory and assistance services, and fees for architectural and engineering work.

-- Monitor and strictly enforce all contract terms relative to the work performed and payments requested.

-- Discontinue the use of cost reimbursable, level-of-effort type contracts that provide insufficient controls to ensure adequate control and management of contractor costs and services.

DRAFT

$24.1 MILLION SPENT ON NON-JSPO PROGRAM REQUIREMENTS

The Joint System Program Office improperly used $24.1 million in NEXRAD tri-agency funds to modernize the National Weather Service's forecast offices. JSPO accepted these office modernization costs as unique-agency NEXRAD requirements, thereby attempting to make them an appropriate use of the tri-agency funds. However, the NEXRAD Joint Development Plan, which defines the NEXRAD system, does not include the construction and renovation of these offices in its definition.

This improper use of NEXRAD funds left the JSPO with a shortfall in the Department of Commerce funds. To compensate, JSPO used about $11 million of Department of Defense and Department of Transportation tri-agency funds to pay a portion of the Department of Commerce costs.

If Commerce is not able to obtain the funding needed to repay the $24.1 million as well as to meet future requirements of system funding, JSPO may need to seek additional funds from the other two agencies. Thus, JSPO's failure to properly manage the NEXRAD program funds has compromised the integrity of the Department of Commerce in the eyes of the other two agencies. This could impede Commerce's ability to participate as the lead agency in other joint ventures.

NEXRAD Joint Development Plan Not Followed

From fiscal year 1980 through 1989, the JSPO reported costs of approximately $253.2 million. Included in that amount is the $24.1 million of tri-agency system funds improperly spent on costs for constructing and renovating the NWS forecast offices. These costs include the following:

- $12.5 million paid to Fluor Daniel, Inc., an architectural and engineering firm for design services, real estate services, and program management and assistance.

- $8 million paid to construction firms for building new forecast offices or extensively renovating existing ones.

- $2.4 million paid for the acquisition of land for office sites.

- $1 million paid to SRI, Inc. for site selection services, environmental assessments, and impact statements.

- $0.2 million paid to NOAA's Special Engineering Project Office for managing the NWS modernization program.



FD 007625

DRAFT

Through its improper use of Commerce's share of tri-agency funds to modernize NWS forecast offices, JSPO failed to comply with the NEXRAD Joint Development Plan. This plan, approved by the three sponsoring agencies, defines the scope of the joint office's authority and provides the criteria for determining what is to be included in the NEXRAD system.

According to the plan, JSPO has technical, program, and financial management responsibility for developing, acquiring, and deploying a NEXRAD system that meets all sponsoring agencies' common meteorological needs. The system includes the radar equipment, software, processing sites, and communications necessary for operating the NEXRAD radar. The system also includes the logistics, training, and maintenance required to keep it operating. It does not, however, include constructing NWS forecast offices or the facilities at local, regional, or national operations offices and centers. Thus, the offices that are being constructed with Commerce's share of tri-agency funds are not under JSPO's purview and should not be paid for with the office's NEXRAD funds.

A memorandum of agreement signed by the three sponsoring agencies provides the basis for allocating the various NEXRAD system costs to each agency. Since the beginning of the project, several revisions have been made to the agreement. The present agreement allocates salaries and unique-agency requirements to each agency. With few exceptions, all other costs are prorated to the agencies based on their share of the system equipment.

Our review disclosed that NWS never established a separate account for the weather forecast field office facility funds. Instead, the facility funds were included in NWS's contribution to the tri-agency fund. NWS also showed the facility construction costs as part of the NEXRAD system in its congressional budget submission, and defined them as NEXRAD user sites.

NWS did not encounter any problems with financing the construction of the forecast offices with funds from the JSPO account until fiscal year 1988. In December 1987 Congress reduced NWS's budget request from $56 million to $38.9 million. This action was taken based on information provided Congress by the Department's Office of Budget. Budget officials told us that they had reviewed JSPO's financial and budgetary information and concluded that the major system contract's up-front costs had been reduced by $15 million. The budget officials were unable to provide information or explain how they reached their conclusion.

In May 1988, NOAA's Office of Budget directed NWS to reallocate another $15.2 million (later reduced to $13.6 million) as unneeded because of system slippage and up-front savings. Congress approved the reprogramming in June 1988 again based on



FD 007626

DRAFT

information provided by the Department's Office of Budget. This programming resulted in a total fiscal year appropriation of $25.3 million which was insufficient to cover both NWS's contribution to the tri-agency NEXRAD systems and construction of the forecast offices. Departmental budget officials stated that they passed on NOAA's reprogramming request but they had no supporting documents to show that funds were available for reprogramming.

In fiscal year 1990, the Department's Office of Budget again notified Congress that $4.6 million of NEXRAD appropriations would not be needed for the major system contracts, and that these funds could be reprogrammed. JSPO officials informed us that they had planned to use these funds to begin paying back the other agencies' funds ahead of schedule. Departmental budget officials stated that the JSPO had not requested approval to use these funds to repay the other agencies earlier than planned and therefore allowed the reprogramming.

Based on our audit, we concluded that at the end of fiscal year 1989, the National Weather Service needed to reimburse the tri-agency fund $24.1 million. This included $11 million of other agency funds, and $13.1 million of Department of Commerce funds needed to meet its share of total system costs. We also concluded that the Departmental and NOAA budget offices need to coordinate their budget formulation to ensure that JSPO is provided the level of funding needed to repay the other agency funds.

Established Funding Controls Ignored

JSPO has authority over the use of NEXRAD funds and is responsible for spending and allocating the funds properly. However, the office ignored its established procedures for controlling expenditures in order to fund the NWS's modernization program. Under the established procedures, all requests for funds were to be authorized by the joint system program manager and approved by all three agencies. However, the program office did not follow these procedures in spending the $24.1 million:

- The joint system program manager and the two other sponsoring agencies did not review and approve the funding requests for forecast offices as they did for other NEXRAD funding requests. NOAA's Special Engineering Project Office prepared and authorized its own requisitions in these cases.

- Contracting officers were collocated with the Special Engineering Project Office at the Central Administrative Support Center in Kansas City, Missouri, rather than being assigned to the joint system office.

- JSPO did not maintain control over the use of tri-agency funds. The Special Engineering Project Office and NWS officials made the decisions concerning how and where the construction funds should be spent.



DRAFT

FD 007627

DRAFT

Misclassification of Non-JSPO Construction Costs

JSPO officials abused the memorandum of agreement terms that allowed each agency to fund "agency-unique" NEXRAD requirements. The agreement allows the JSPO to use other agency funds if, in any one year, it could not fully cover that year's cost allocation. These terms were included in the agreement to allow the three agencies to (1) purchase extra NEXRAD components and (2) prevent the mission from being delayed if any one agency had its NEXRAD appropriation funds reduced during the budget process. These provisions were not included to allow the NWS to use NEXRAD funds to build new or completely renovate forecast offices.

We found that the JSPO allowed the NWS to reclassify its forecast offices as "NEXRAD user facilities." The office construction then became a unique agency requirement which, under the agreement, allowed JSPO to use Commerce's tri-agency funds to cover these costs.

We have concluded that JSPO's lack of financial control over the tri-agency funds has compromised the integrity of the Department of Commerce and could limit its ability to participate as the lead agency in other joint ventures. The sponsoring agencies advanced funds to the program office and expected the office to spend these funds on their agency's valid NEXRAD program expenses At least one sponsoring agency has complained to the Congress concerning alleged spending improprieties. The controls over the tri-agency funds must be strengthened.

Recommendations

We recommend that the Under Secretary for Oceans and Atmosphere require the Director, NEXRAD Joint System Program Office to:

(1) Adhere to established procedures for controlling expenditures of tri-agency funds.

(2) Develop and implement a control plan whereby

-- agency-unique requirements to be funded by tri-agency funds are reviewed and approved by all agency sponsors prior to obligation, and

-- tri-agency requirements are funded before agency-unique requirements are approved and funded.

We further recommend that the Under Secretary develop a plan for reimbursing the tri-agency fund for all amounts spent on the National Weather Service's forecast office modernization program that are not joint system requirements.

In addition, we recommend that the Assistant Secretary for Administration provide budget guidance and oversight to NOAA in planning for the repayment of $24.1 million to the JSPO.