

FIGURE 6.12.6 - FURNITURE/EQUIPMENT PLAN--FY91I-14/4/2
- POST DUAL OPS (OPTION A)



FIGURE 6.12.8 - FURNITURE/EQUIPMENT PLAN--FY911-18/4/2 - POST DUAL OPS (OPTION A)

Appendix II
Page 1 of 2





## SUMMARY OF NOAA RESPONSE AND OIG COMMENTS

The following is a summary of NOAA's response to the draft report's findings and recommendations, and our comments. Page references are to pages in the draft report; references to pages in the final report have been added where necessary.

NOAA's General Comments:

[redacted]

OIG Analysis:

We agree to this request. NOAA has made strides toward improving its management and administration of the Fluor Daniel contract.

The following discusses specific points raised by NOAA's response.

1. Page i, draft report, Executive Summary, first bullet, read:

**"Fluor Daniel's estimates are $94.2 million, $15.2 million higher than NOAA's estimates."**

[redacted]

OIG Analysis: We believe our method of computing the cost savings figure was sound. Our cost savings of $15.2 million was justified by the audit which identified significant problems with management of the FDI contract and TPO's assurance that it would stay within its budget. Our use of FDI's proposal is proper. It was a legitimate proposal submitted at CASC's request after FDI won a competitive procurement to obtain the follow-on contract. The fact that this proposal is no longer valid is a direct result of our audit work.

Nevertheless, we recognize that these figures are only estimates. NOAA's estimate for only the WFO program's portion of the savings is $10 million. We agree to accept this amount and have amended the report accordingly.

2. Page i, Executive Summary, third bullet, read:

> "circumvention of requirements for competitive procurement and departmental controls by adding unrelated services to an architectural and engineering contract."

NOAA Response: [redacted]

OIG Analysis: We disagree with NOAA; the contracting officer acted improperly by adding millions in such unrelated services as real property acquisition and NEXRAD major systems support to the contract. In addition, FAR Part 36 states that incidental services cannot be the dominant service on the A&E contract. In this instance, the incidental services added by the contracting officer exceeded A&E services by millions of dollars.

3. Page i, third paragraph, fourth bullet, read:

> **"Inappropriate inclusion of administrative functions in direct hours to allow Fluor Daniel to meet the contractual requirements to earn the fixed fee. (See page 7.)"**

NOAA Response: [redacted]

OIG Analysis: We agree and have revised the report accordingly.

4. Page 2, last paragraph, read:

> **"The scope of our performance audit spans the entire contract period from its planning stage in fiscal year 1985 through proposed contract completion in 1999. This includes the services provided under the existing Fluor Daniel contract and proposed new Fluor Daniel contracts for support services for the**

WFO and NEXRAD projects. We began our fieldwork in September 1991, and continued through July 1992...."

NOAA Response: [redacted]

OIG Analysis: We revised our audit report to more clearly define the scope of our audit.

5. Page 4, paragraph 2, read:

**"We also found other serious problems in NOAA contract management and administration and a lack of oversight of Fluor Daniel's activities. For example, no independent government estimate of the costs were prepared; advisory and assistance services and real estate acquisition services were improperly procured under an A&E contract; the contractor was allowed to establish its own priorities and requirements; work assigned to the contractor was not covered by a reasonably specific statement of work or controlled by an effective change request system; new or redirected work was not adequately negotiated with the contractor; funding and costs were inadequately monitored and coordinated; and the contractor improperly provided personal services and performed inherently governmental functions."**

NOAA Response: [redacted]

OIG response: NOAA's interpretation of inherent government functions is too limiting. OMB's new guidelines require officials to maintain accountability over their programs by exercising judgment and critically examining ideas, recommendations, and advice provided by contractors. Our audit clearly shows that NOAA officials did not maintain this level of accountability in its dealings with FDI.

6. Page 5, paragraph 4 (paragraph 5 in the final report), read:

**"We were still unable to obtain adequate documentation to fully justify or explain these vaguely phrased factors from weather service personnel who manage the WFO facilities program and who are accountable for the programs's expenditures. For instance they could not tell us what additional engineering work was done to justify an increase in design fees in direct proportion to the increase in office size. Neither could these officials tell us**

what services they received or expected to receive as a result of program delays, which Fluor Daniel estimated to cost $3.5 million.

NOAA Response: [redacted]

OIG analysis: NOAA misunderstood our finding; the finding did not address a lack of a paper trail. Prior to our audit, NOAA provided us with figures to support the contract cost increases. When we requested NOAA's support for and an explanation of these figures, NOAA responded that they were unable to comply because the figures had been prepared by Fluor Daniel. Subsequently, we obtained the contractor's financial records, reviewed change orders, and examined progress reports. However, we maintain that since NOAA's contracting officials provided us with the cost figures, it was also their responsibility to know how these figures were derived. In fact, NOAA's inability to justify the contract cost increases played a major role in our decision to perform a detailed audit of the contract. Nevertheless, we revised the final report to clarify our position and include a reference to NOAA's change order procedures.

7. Page 5, last paragraph (page 6, first full paragraph in the final report), fifth sentence, read:

> **"Considering the simplicity of weather office design, the projected costs of Fluor Daniel's services appears unwarranted."**

NOAA Response: [redacted]

OIG Analysis: NOAA's response does not address the audit finding. We are concerned with the extraordinarily high percentage of administrative-type costs incurred by NWS to build 4,500-5,800 square foot, single-level facilities. The costs for the support services provided by Fluor Daniel have grown from an estimated $9 million to $79 million, of which $64 million is for WFO construction support. The program management and unanticipated costs referred to in NOAA's response contributed heavily to this cost increase. We find it incomprehensible that NOAA could allow the costs of the Fluor Daniel contract to grow to such an extent or justify spending this amount of money to manage and administer a program where land and construction costs of facilities are approximately $125 million.

Furthermore, their response shows a lack of understanding concerning GAO accounting standards which require full cost accounting and would preclude excluding program management and similar types of costs. We also note that the Office of Inspector General does not consider the design fee issue resolved or closed.

8. Page 6, third paragraph (fourth paragraph in the final report), read:

> **"The contracting officer circumvented legal and FAR requirements for competitive procurement by improperly adding unrelated services to an A&E contract. As a result, the contracting officer failed to ensure that the unrelated services were procured from the most qualified firm at a fair and reasonable price."**

NOAA Response: [redacted]

OIG Analysis: We found no evidence of any actions the contracting officer took to ensure that maximum competition and fair and reasonable prices were obtained. Moreover, we are unable to understand how a contracting officer could let a contract grow from $9 million to $35 million with another $58 million proposed for the follow-on contract and still maintain that he maximized competition and obtained fair and reasonable prices.

9. Page 6, sixth paragraph (page 7, second paragraph in the final report), read:

> **"However, the procedures used for procuring A&E services, which are set forth in Part 36 of the FAR, do not promote or provide for full and open competition with respect to price. Instead, the government determines a fair and reasonable price for the needed services by establishing an independent government estimate and limiting fees paid to 6 percent of the estimated construction costs."**

NOAA Response: [redacted] to [redacted]

OIG Analysis: We commend NOAA on taking action to limit design fees to the statutory limit. However, this finding concerns the millions of dollars of other services added to the contract. While NOAA may not have acted willfully or purposely to avoid

competition, the effect of its actions are the same, circumvention of competition requirements.

10. Page 8, "Potential Conflicts of Interest Not Mitigated"

NOAA Response: [redacted].

OIG Analysis: Based on the subsequent documentation sent to us by the contracting officer we agree to delete the appropriate portion of this finding.

11. Page 11, next to last paragraph (last paragraph in the final report), third sentence, read:

> **"We reviewed most of the change orders and found that Fluor Daniel identified the work requirements, prepared the change orders, developed the work statement, and established the costs."**

NOAA Response: [redacted]

OIG Analysis: Simply because FDI performed these activities at the request of SEPO does not make these activities proper. These are inherently governmental functions which should not be assigned to a contractor. Moreover, by assigning them to FDI, the contractor who in turn will be performing the work, NOAA has placed itself in an improper organizational conflict of interest situation.

12. Page 12, second paragraph (third paragraph in the final report), read:

> **"Part 15.8 of the FAR requires that contracting officers purchase services from responsible sources at fair and reasonable prices. Price negotiation is intended to permit the contracting officer and the contractor to agree on a fair and reasonable price. The price negotiation should be based on the contracting officer's analysis of the contractor's proposed costs and, at a minimum, a technical assessment of the labor mix and the number and kinds of labor hours proposed."**

NOAA Response: [redacted]

OIG Analysis: We agree that the contracting officer may have performed some analysis to justify contract modifications. However, the contracting officer did not perform any cost analysis or negotiate millions of dollars in work added to the contract under the change order system.

13. Page 12, fourth paragraph (last paragraph in the final report), first sentence, read:

> **"The COTR and assistant COTRs allowed Fluor Daniel to review its own technical products and identify its own mistakes."**

NOAA Response: [redacted]

OIG Analysis: FAR Part 46.105 refers to a firm's internal quality control requirements and does not alleviate the necessity for the Government to perform its own quality assurance required by FAR 46.102. In addition, while NOAA may have the necessary evaluation tools, we found no evidence that they used them to approve or monitor FDI's work efforts.

14. Page 13, last paragraph (page 14, second paragraph in the final report), first sentence, read:

> **"Nevertheless, SEPO assigned work to Fluor Daniel that required direct government supervision of Fluor Daniel employees and resulted in a contractor making program decisions that should have been made by federal employees."**

NOAA Response: [redacted]

OIG Analysis: We believe that more than the appearance of direct supervision existed. In one instance, an FDI employee temporarily took the place of a federal employee and performed the work normally assigned that employee. In the other instance an FDI employee was a key member of a government team of negotiators.

15. Page 14, first full sentence (fifth sentence in the final report), read:

> "He coordinated the presentation of financial information used by the government's negotiators and weather service officials in developing the government's negotiation position and policy decisions."

NOAA Response: [redacted]

OIG Analysis: NOAA's description of the FDI employee's responsibilities does not coincide with on-site auditors who observed that the individual was one of the key members of the government's negotiation team. In addition, NOAA's use of the FAR's A&E provision to justify using this individual is inappropriate since his assignment involved renegotiating a major system contract and had nothing to do with A&E or related services.

16. Page 15, (page 20 in the final report), second paragraph, read:

> **"The Department and NOAA awarded the new NEXRAD support services contract to Fluor Daniel with the commitment that the contract will be reviewed and revised in accordance with the conditions of the new WFO support contract. At our urging, NOAA deferred award of the WFO support contract until the contract could be better defined and administered in accordance with our recommendations. An interim letter contract was awarded to bridge the gap between the expiration of the prior contract and the award date of the new support contract."**

NOAA Response: [redacted]

[redacted]

OIG Analysis: We discussed this issue with the Director of the Transition Program Office who agreed we should leave the paragraph as it was originally written. We made one revision deleting the reference to the Department.

17. Page 16 "RECOMMENDATIONS," read:

> **"We recommend that the Deputy Secretary for Oceans and Atmosphere instruct the contracting officer and program officials... to take the following action:"**

NOAA Response: [redacted]

OIG Analysis: We revised the report to indicate that the recommendations are directed to NOAA's Transition Program Office and the Office of Administration since NOAA has already taken action to implement the recommendations.

18. Page 18, final two paragraphs on page (page 19 of the final report), read:

> **"Throughout the period of the audited contract, NOAA's cost estimates for Fluor Daniel's services continually understated actual costs because the estimates did not consider the ever-increasing level of effort provided by Fluor Daniel. Instead, Fluor Daniel's proposals for support services eventually served as the basis for determining contract costs. As of the completion of our audit work, Fluor Daniel's cost estimates for its services ($94.2 million) were $15.2 higher than the budget estimates prepared by NOAA ($79 million).**
>
> **If the recommendations in this report are implemented, Fluor Daniel's level of effort should be more narrowly defined in advance of their undertaking the work. Moreover, the management improvements we recommend should help the NWS program office to provide improved project and contract management over Fluor Daniel personnel. By limiting Fluor Daniel's services to those defined in the new contracts, total costs should be within the NOAA budget estimates, and NOAA should save as much as $15.2 million. We will determine the amount of savings when the new contract for WFO support services is awarded."**

NOAA Response: [redacted]

OIG Analysis: We amended the final report to refer to SEPO and PGAS as well as the National Weather Service since NWS's Transition Program Office manages the program that FDI supports. We have addressed our comments concerning the cost savings under item 1. Our office and NOAA agreed to amend this section based on a new estimate of cost savings.

19. NOAA Response: [redacted]ort [redacted]t [redacted]y [redacted]te."

OIG Analysis: We commend NOAA on taking action to resolve the contract management and administration problems identified in this report and look forward to maintaining this working relationship during future audits.