# FEDERAL PROPERTY AND ADMINISTRATIVE SERVICES ACT OF 1949

*For text of Act see p. 372*

Senate Report No. 338, May 9, 1949 [To accompany S. 1809]

Senate Report No. 475, June 8, 1949 [To accompany S. 2020]

House Report No. 670, May 24, 1949 [To accompany H. R. 4754]

Conference Report No. 935, June 28, 1949 [To accompany H. R. 4754]

The House Bill was passed in lieu of the Senate Bills and the House Report is more comprehensive than the Senate Reports.

The Conference Report also set out outlines changes to the bill accepted by the Conference.

*House Report No. 670*

THE Committee on Expenditures in the Executive Departments, to whom was referred the bill (H. R. 4754) to simplify the procurement, utilization, and disposal of Government property, to reorganize certain agencies of the Government, and for other purposes, having considered the same, report favorably thereon with amendment and recommend that the bill, as amended, do pass.

## DEVELOPMENT IN FIELD OF PROPERTY MANAGEMENT

The need for an improved and efficient property management program, dealing with the problems facing the Federal Government in this respect, is becoming ever more apparent. The House with the passage of a bill in 1943 (H. R. 2795) took the initial step toward the recognition and solution of this complex phase of government. However, the Congress deferred action on that legislation, owing to the pressing necessity of disposal of war-surplus goods without dislocating the national economy. Instead the Surplus Property Act of 1944 was passed. This act had for its major purpose the handling of our war-generated surplus, with a limited lifetime of 3 years following the date of cessation of hostilities. This act will terminate on December 31, 1949.

The President, by special message dated March 5, 1948, recommended to the Congress renewed consideration of legislation in the field of property management. With this in mind, the Federal Works Administrator was directed to draft for evaluation a bill to effect such purpose. This bill, termed "The Federal Property Act of 1948" (S. 2754, 80th Cong.) was unanimously reported out by the Senate Committee on Expenditures in the Executive Departments, and would have established a sound system for property management. This bill was never taken up by the Senate prior to adjournment because of the pressure of other matters.

is deemed advisable. The question as to whether a particular bidder is a responsible bidder requires sound business judgment and involves evaluation of the bidder's experience, facilities, technical organization, reputation, financial resources, and other factors and a broad discretion is accordingly reserved to the agency with respect to the making of such determination.

Section 304. Requirements of negotiated contracts

(a) The right to use the most suitable type of contract is a necessary and inseparable adjunct to the right to negotiate and this subsection therefore permits negotiated contracts to be of any type which in the opinion of the agency head will promote the best interests of the Government, except as provided in subsection (b). Authority to negotiate contracts in the first instance carries with it equal authority to negotiate subsequent changes in the terms of negotiated contracts, and such amendments may also be of such type as the agency head believes will promote the best interests of the Government. This subsection also provides that every negotiated contract shall contain a suitable warranty against contingent fees.

(b) This subsection prohibits the cost-plus-a-percentage-of-cost system of contracting and prescribes maximum fees in connection with cost-plus-a-fixed-fee contracts. Neither a cost nor a cost-plus-a-fixed-fee contract nor an incentive-type contract may be used unless it is determined that such method is likely to be less costly than other methods or that it is impracticable to secure supplies or services of the kind or quality without the use of such type of contract.

Section 305. Advance payments

(a) This permits the agency head to make advance payments under negotiated contracts upon adequate security if the agency head determines such payments to be in the public interest or in the interest of the national defense and necessary and appropriate in order to procure the required supplies or services. This authority is essential in periods of emergency and in peacetime it is often the only way in which it can be made possible for a small-business concern to handle Government contracts. Often institutions of learning, research laboratories, inventors, and similar contractors who perform most of the experimental, re-research, and developmental contracts need advance payments because they do not have sufficient funds to finance or are unwilling to finance such contracts completely out of their own resources. The power to make advance payments is permissive only, and under section 307 (b) of this title may not be delegated by the agency head. The committee expects the civilian agencies to be very sparing in the making of advance payments in normal times and to use the authority, even in times of national emergency, only when it is thoroughly justified.

(b) The additional form of security by way of lien which is provided for by this subsection is a permissive feature which may be very useful,