IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FLUOR ENTERPRISES, INC.<br>f/k/a FLUOR DANIEL, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 00-207C<br>(Judge Block) |

**AFFIDAVIT OF KENNETH W. FORSYTH IN SUPPORT OF MOTION OF FLUOR DANIEL, INC. FOR SUMMARY JUDGMENT**

I, Kenneth W. Forsyth, being first duly sworn, state as follows:

1. I have personal knowledge of the facts set forth herein having reviewed relevant portions of the contract file related to the contract between Fluor Daniel, Inc. ("FDI") and the National Oceanographic and Atmospheric Administration("NOAA") of the United States Department of Commerce ("DOC").

2. I have been registered as a professional engineer in the State of Alabama since 1976. During my 24 years with the U. S. Army Corps of Engineers (USACE), I was an electrical design engineer and then a project manager, prior to working for 18 years in architect-engineer (A&E) contracting. I negotiated contracts, supervised contract negotiators, served as member and chairperson of A&E Pre-selection and Selection Boards, and was an instructor for the USACE Headquarters sponsored course, Architect-Engineer Contracting. This training course is required for all individuals who work as A&E contract negotiators or as A&E Pre-selection or Selection Board Chairpersons in USACE. I also served as a Contracting Officer's Representative for A&E contracts in the Mobile District. Since my retirement from USACE in 1997, I have worked as a professional consultant for A&E firms in the areas of A&E contracts and design-build proposals.

3. FDI's contract does not resemble any contract for A&E services that I have seen. While NOAA used A&E selection

procedures to select a contractor, the agency advertised and subsequently negotiated and awarded a service contract primarily for Program and Project Management, Construction Management and Inspection Services for an entire program. NOAA's Negotiation Plan acknowledges that project and construction management aspects would be the major aspects of services, with A&E design to encompass only a minor portion. Similarly, the USACE does not consider design-build contracts, of which A&E services also constitute a minor portion, to be "contracts for A&E services" subject to the 6% statutory limitation.

4. In my 24-years of experience at USACE I never saw, or even heard of, a level of effort cost reimbursement contract for A&E services.

5. There are significant discrepancies between the selection process used by NOAA and that used for A&E contracting:

The CBD synopsis for the contract appeared in Section R, Professional, Administrative, and Management Support Services, whereas it is the policy of USACE to place advertisements for A&E design services in Section C, Architect and Engineering Services. USACE announcements for other types of services contracts, such as surveying and mapping, are placed in other sections, for example Sections R or T.

Neither the CBD synopsis nor the A&E Selection Board Memorandum requires use of registered architects and/or engineers, which is a key element distinguishing announcements for contracts for A&E services from announcements for other services contracts.

The Contracting Officer's determinations and findings developed to justify use of a cost-reimbursable contract provides that "It is unknown what type of architectural or engineering tasks will be required…" See Exh. 1. In the procurements in which I have been involved, knowledge of the type of services to be provided is fundamental to meaningful public announcement and selection of a contractor if the contract is for A&E services. NOAA did not carry-out the project programming steps necessary to enter into an A&E contract, most notably the creation of the required estimate of the cost to construct the project. In my experience, and at USACE, the government must develop an estimated cost of the project prior to entering into negotiations with an A&E contractor because it is otherwise

impossible for the government to predict whether the contractor's fee will fall within the six percent of the estimated costs of the project as required by statute.

6. The FDI contract does not include several important clauses that appear in USACE contracts intended as contracts for A&E services:

FAR 52.235-22 -- Design within Funding Limitations (requires that the contractor/A&E firm produce a design package that can be constructed within the construction funds available). While this clause is mandated only for fixed-price A&E contracts, the USACE would have used this clause in contracts such as this one.

FAR 52.236-25 -- Requirements for Registration of Designers (used to ensure performance by registered architects and engineers). While this clause is mandated only for fixed-price A&E contracts, the USACE would have used this clause in contracts such as this one.

FAR 52.244-4 -- Subcontractors and Outside Associates and Consultants (requires approval by the CO of change in subcontractors). While this clause is mandated only for fixed-price A&E contracts, the USACE would have used this clause in contracts such as this one.

7. The FDI contract also includes clauses that are not found in USACE contracts intended as contracts for A&E services, and are in some cases proscribed from use in such contracts:

FAR 52.244-5 -- Competition in Subcontracting . This clause encourages the use of price competition by the prime Contractor in awarding subcontracts, and its use in A&E contracts is expressly prohibited by instructions in the clause. While appropriate for a service contract, in my experience it would not be found in an A&E contract.

FAR 52.246-25 -- Limitation of Liability-Services. FAR 46.801(a) specifies that FAR 46.805, requiring insertion of FAR 52.246-25, does not apply to contracts for A&E services.

FAR 52.248-1 -- Value Engineering. Contracting Officers are prohibited from including, and the USACE does not include, this clause in contracts for A&E services. Rather, FAR 52.248-2 is required for use in contracts for A&E services.

8. Design costs, where design work is stopped and then restarted with the same contractor, or is transferred to a different contractor, are higher than design costs in traditional contracts for A&E services where there are no such breaks and, importantly, bear no fixed or predictable relationship to such costs.

I declare under penalty of perjury that the foregoing is true and correct.

_______________________________ Kenneth W. Forsyth

Sworn to (or affirmed) and subscribed before me this 8th day of January, 2004.

Notary Public ______________________

My commission expires NOTARY PUBLIC STATE OF ALABAMA AT LARGE MY COMMISSION EXPIRES: Apr 21, 2004 BONDED THRU NOTARY PUBLIC UNDERWRITERS

# Exhibit 1

**National Oceanic and Atmosph... Administration,**
Host Agency serving:
Bureau of the Census
Economic Development Administration
International Trade Administration
Minority Business Development Agency
National BankCard Center
Office of Export Enforcement
Office of the Inspector General
U.S. Travel and Tourism Administration

**U.S. DEPARTMENT OF COMMERCE**
**Central Administrative Support Center**
Federal Building, Room 1736
601 East 12th Street
Kansas City, Missouri 64106

## Determination and Findings

Solicitation No. 52WCNA806099

The Procurement Division proposes to acquire the services necessary to provide professional architect-engineer services, project management, and construction inspection for the NEXRAD Program. The estimated value of the proposed contract is $10,000,000.00.

Pursuant to the authority of 41 U.S.C. 254(b) Section 304(b) as implemented by paragraph 16.301-1 of the Federal Acquisition Regulations, cost type contracts may be utilized.

### Findings

An adequate estimate cannot be established because of the nature of the work. It is unknown what type of architectural or engineering tasks will be required or how many, depending on the number of sites. Because of the uncertainty of the volume of the work to be required, undertaking the work on fixed price basis is not advisable.

The firm recommended for award shall be reviewed to ensure an adequate accounting system to accurately track costs exists. Government surveillance will be provided by a member of the NOAA, SEPO office to ensure that efficient methods and effective cost controls are used by the Contractor. The anticipated cost to the Government will be less, since only actual costs will be reimbursed, instead of a fixed cost for an unknown quantity of work.

### Determination

Based on the preceding findings a fixed-price contract is impracticable and not in the best interest of the Government. Authority to utilize a cost type contract is granted.

Jesus Arredondo
Contracting Officer

12-10-87
Date