C

***1** TO THE ADMINISTRATOR, VETERANS ADMINISTRATION
JULY 21, 1967

****61** LEASES - REPAIRS AND IMPROVEMENTS - LIMITATIONS - RULE

THE CONSTRUCTION OF A VETERANS ADMINISTRATION (VA) HOSPITAL ADJACENT TO A UNIVERSITY MEDICAL SCHOOL ON LAND LEASED FROM THE UNIVERSITY ON A LONG-TERM BASIS AT A NOMINAL RENTAL MAY NOT BE APPROVED UNDER THE RULE THAT APPROPRIATED FUNDS MAY NOT BE USED FOR THE PERMANENT IMPROVEMENT OF PRIVATELY OWNED PROPERTY IN THE ABSENCE OF EXPRESS STATUTORY AUTHORITY, NEITHER 38 U.S.C. 5001 NOR 5012 (B) IN PROVIDING FOR THE ACQUISITION OF SITES AND SPACE TO IMPLEMENT THE PURPOSES OF THE SECTIONS AUTHORIZING THE CONSTRUCTION OF HOSPITALS OR ANY PERMANENT TYPE OF IMPROVEMENT ON LEASED PROPERTY, AND THE USE OF THE TERM 'OTHERWISE' IN SECTION 5001 RELATING TO SITES FOR THE CONSTRUCTION OF VA HOSPITALS IS INTERPRETED TO MEAN ACQUISITION OF NOT LESS THAN A FEE INTEREST IN LAND AND TO COVER SITUATIONS WHICH ****62** DO NOT PRECISELY COME WITHIN THE ENUMERATED MEANS OF ACQUIRING LAND THAT IS PRESCRIBED IN THE SECTION.

VETERANS ADMINISTRATION - PARKING FACILITIES - AT HOSPITALS

FUNDS APPROPRIATED TO THE VETERANS ADMINISTRATION (VA) FOR THE CONSTRUCTION OF A HOSPITAL ADJACENT TO THE MEDICAL SCHOOL OF A UNIVERSITY MAY NOT BE USED TO DEFRAY A PORTION OF THE COST OF CONSTRUCTING A PARKING STRUCTURE BY THE UNIVERSITY IN RETURN FOR A CONTRACTUAL RIGHT TO USE A STIPULATED NUMBER OF PARKING SPACES, NOR MAY VA LEASE LAND FROM THE UNIVERSITY TO CONSTRUCT A PARKING FACILITY, THE AMENDMENT OF 38 U.S.C. 5004 ALTHOUGH DESIGNED TO OVERCOME 45 COMP. GEN. 27, RESPECTING THE DISPOSITION OF PARKING FEES NOT AFFECTING THE CONCLUSION THAT VA FUNDS MAY NOT BE USED TO OBTAIN PARKING FACILITIES VALUED IN EXCESS OF $200,000, BY CONSTRUCTION OR LEASE WITHOUT THE SPECIFIC APPROVAL BY THE APPROPRIATE CONGRESSIONAL COMMITTEES.

CONTRACTS - ARCHITECT, ENGINEERING, ETC., SERVICES - FEES - LIMITATION - DESIGN, LOCATION, ETC., CHANGES

WHERE THE SITE AND NATURE OF A PROJECT ARE SO CHANGED AS TO RENDER VIRTUALLY USELESS ANY ARCHITECT-ENGINEER (A-E) WORK DONE PRIOR TO THE ADMINISTRATIVE DETERMINATION TO AFFECT A CHANGE, IT WOULD BE UNREASONABLE TO CARRY FORWARD AGAINST A NEW PROJECT ANY CHARGE MADE AGAINST THE FEE LIMITATION IMPOSED BY 41 U.S.C. 254 (B) THAT WAS INCURRED UNDER THE ORIGINAL PROJECT, FOR EVEN THOUGH THE PURPOSE OF THE PROJECT MAY REMAIN UNCHANGED, THE SUBSEQUENT ALTERATION OF THE CONCEPTUAL DESIGN OF A BUILDING AND ITS LOCATION AT SOME POINT GIVES RISE TO A NEW PROJECT FOR THE PURPOSE OF APPLYING THE STATUTORY FEE LIMITATION.

BY LETTER OF JUNE 14, 1967, YOU REQUESTED OUR OPINION WITH RESPECT TO SEVERAL QUESTIONS RELATED TO A CONTEMPLATED CHANGE IN SITE FOR A HOSPITAL TO BE CONSTRUCTED IN SOUTHSIDE CHICAGO, UNDER THE FOLLOWING CIRCUMSTANCES:

THE VETERANS ADMINISTRATION HAS COMPLETED DESIGN OF A 760-BED HOSPITAL FOR CONSTRUCTION ON A SITE LOCATED IN SOUTHSIDE CHICAGO ACROSS THE MIDWAY FROM THE MEDICAL SCHOOL OF THE UNIVERSITY OF CHICAGO. THE SITE WAS TO BE ACQUIRED IN PART FROM THE URBAN RENEWAL AUTHORITY OF CHICAGO AND IN PART FROM THE UNIVERSITY. SITE ACQUISITION AND DESIGN FUNDS WERE INCLUDED IN THE INDEPENDENT OFFICES APPROPRIATION ACT, 1965, 78 STAT. 640, 660, UNDER THE HEADING 'CONSTRUCTION OF HOSPITAL AND DOMICILIARY FACILITIES.' FUNDS FOR CONSTRUCTION OF THE HOSPITAL WERE INCLUDED UNDER THE SAME HEADING IN THE ACT MAKING APPROPRIATIONS FOR FISCAL YEAR 1966, 79 STAT. 537.

***2** THE UNIVERSITY AND THE VETERANS ADMINISTRATION NOW CONSIDER THAT A 500-BED HOSPITAL ON

A DIFFERENT SITE, IMMEDIATELY NEXT TO THE MEDICAL SCHOOL, WOULD BE MORE DESIRABLE FROM THE STANDPOINT OF MAXIMIZING MUTUAL ASSISTANCE THROUGH JOINT UTILIZATION OF FACILITIES AND AVOIDANCE OF DUPLICATION.

THE NEW SITE IS OWNED ENTIRELY BY THE UNIVERSITY WHICH DOES NOT DESIRE TO SELL IT TO THE GOVERNMENT. THE UNIVERSITY PROPOSES, RATHER, TO LEASE THE NEW SITE TO THE GOVERNMENT ON A LONG-TERM BASIS AT THE ****63** NOMINAL RENTAL OF $1 A YEAR. SINCE THE WHOLE CONCEPT OF ESTABLISHING VETERANS ADMINISTRATION HOSPITALS ADJACENT TO MEDICAL SCHOOLS IS BASED UPON MUTUAL ASSISTANCE AND COOPERATION, THE VA DOES NOT BELIEVE RESORT TO CONDEMNATION PROCEDURES FOR ACQUISITION OF THE DESIRED NEW SITE WOULD BE APPROPRIATE.

IT IS ANTICIPATED THAT THE COST TO THE GOVERNMENT OF BUILDING THE PROPOSED SMALLER HOSPITAL ON LEASED LAND WILL BE SOMEWHAT LESS THAN THE $24,565,000 BUDGETED FOR THE 760-BED HOSPITAL, INCLUDING SITE AND PARKING FACILITIES.

IT HAS ALSO BEEN SUGGESTED THAT THE UNIVERSITY WILL BUILD PARKING FACILITIES ON ITS LAND FOR ITS USE JOINTLY WITH THE VETERANS ADMINISTRATION AND THAT THE VA PAY A PORTION OF THE CONSTRUCTION COST IN EXCHANGE FOR THE RIGHT TO USE SPACE THEREIN. AS AN ALTERNATIVE TO THIS PLAN, THERE IS THE POSSIBILITY THAT THE UNIVERSITY WOULD BUILD A PARKING STRUCTURE FOR ITS USE UP TO ITS PROPERTY LINE AND THAT THE VA WOULD BUILD A COMPARABLE TYPE STRUCTURE, TO MEET ITS NEEDS (ABOUT 400 SPACES), ON LEASED LAND IMMEDIATELY ADJACENT TO THAT PROPOSED BY THE UNIVERSITY, WITH PARKING FLOORS AT THE SAME LEVELS, AND POSSIBLY, WITH COMMON ACCESS RAMPS. NO ESTIMATE HAS BEEN MADE OF THE COST TO THE GOVERNMENT OF PARTICIPATION IN EITHER OF THE ABOVE PLANS FOR PROVIDING PARKING FACILITIES.

AS A BASIS FOR FURTHER DISCUSSION OF THE ABOVE PROPOSALS WITH UNIVERSITY OFFICIALS, YOU REQUEST OUR ADVICE WITH RESPECT TO THE FOLLOWING SPECIFIC QUESTIONS:

'/1) COULD THE VETERANS ADMINISTRATION USE ANY FUNDS, NOW OR HEREAFTER APPROPRIATED FOR CONSTRUCTION OF A NEW HOSPITAL AND RELATED FACILITIES IN CHICAGO, TO CONSTRUCT THE CURRENTLY PROPOSED HOSPITAL STRUCTURE OR STRUCTURES ON LEASED LANDS ACQUIRED AT NOMINAL OR SMALL COST TO THE GOVERNMENT? IF SO, UNDER WHAT LIMITATIONS OR RESTRICTIONS WOULD WE BE REQUIRED TO NEGOTIATE THE TERMS OF SUCH A LEASE? OF COURSE, WE WOULD CLEAR THE QUESTION OF SUFFICIENCY OF THE TITLE WITH THE DEPARTMENT OF JUSTICE, IN VIEW OF THE ATTORNEY GENERAL'S OPINION THAT CONSTRUCTION ON LEASED LAND IS SUBJECT TO THE RESTRICTIONS IMPOSED BY 40 USC 255 (28 OP. AG 463, 464).

'/2) DO YOU BELIEVE IT WOULD BE LEGALLY APPROPRIATE FOR THE VETERANS ADMINISTRATION TO USE FUNDS, NOW OR HEREAFTER APPROPRIATED FOR CONSTRUCTION OF A NEW HOSPITAL AND RELATED FACILITIES IN CHICAGO, TO DEFRAY A PORTION OF THE COSTS, TO THE UNIVERSITY OF CHICAGO, OF CONSTRUCTING A PARKING STRUCTURE, IN RETURN FOR WHICH THE VETERANS ADMINISTRATION WOULD RECEIVE A CONTRACTUAL RIGHT TO USE, AS IT CHOOSES, A STIPULATED NUMBER OF PARKING SPACES? A SOMEWHAT RELATED QUESTION CONCERNING PARKING FACILITIES FOR THIS HOSPITAL WAS THE SUBJECT OF YOUR OPINION B-156496, DATED JULY 9, 1965, SUBSEQUENT TO WHICH SECTION 5004, TITLE 38 U.S.C. WAS AMENDED BY SECTION 201 (A), PL 89-785, NOVEMBER 7, 1966.

***3** '/3) IF THE ANSWER TO THE FOREGOING QUESTION IS NEGATIVE, AND PROVIDED CONTRACTUAL PROTECTION COULD BE OBTAINED WHEREBY THE INTERESTS OF THE GOVERNMENT WOULD BE PROTECTED FOR THE LIFE OF THE STRUCTURE, DO YOU SEE ANY REASON TO OBJECT TO THE VETERANS ADMINISTRATION'S CONSTRUCTING A PARKING FACILITY FOR ITS USE, ON LEASED LAND CONTIGUOUS TO AND JOINED WITH A SIMILAR FACILITY PROPOSED TO BE CONSTRUCTED BY THE UNIVERSITY OF CHICAGO FOR ITS USE? WE REALIZE THAT THIS IS VIRTUALLY THE SAME QUESTION AS THAT PRESENTED IN (1) ABOVE, BUT BELIEVE THE AMENDMENT OF SECTION 5004, NOTED SUPRA, MAY HAVE SOME PERTINENCE, AS WELL AS SECTIONS 5001 AND 5012 (B), 38 USC.

****64** '/4) IN YOUR OPINION, WOULD IT BE IN CONTRAVENTION OF 41 USC 254 (B) (STATUTORY LIMITATION OF ARCHITECTURAL FEES) IF WE ENTERED INTO A NEW ARCHITECT-ENGINEER CONTRACT FOR DESIGN OF THE PROPOSED NEW HOSPITAL ON A SITE DIFFERENT FROM THAT ORIGINALLY CONTEMPLATED, IF THE NEW FEE SPECIFIED ADDED TO THAT ALREADY EXPENDED, WOULD EXCEED 6 PERCENT OF THE

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

ESTIMATED COSTS OF CONSTRUCTION? IN THIS CONNECTION, THE USE OF THE NEW AND SMALLER SITE WILL REQUIRE REDESIGN OF THE HOSPITAL AND ITS REDUCTION IN SIZE AS INDICATED ABOVE, AND THE CURRENTLY PROPOSED BUILDING WOULD BEAR LITTLE SIMILARITY TO THE ONE PREVIOUSLY DESIGNED IN EITHER SCHEME OF ARRANGEMENT OR STRUCTURAL SHAPE AND SIZE. IN FACT, WE BELIEVE IT IS SUBSTANTIALLY CORRECT TO SAY THAT FROM AN ARCHITECTURAL STANDPOINT IT IS A DIFFERENT PROJECT FROM THAT HERETOFORE DESIGNED.'

THE LONG-STANDING RULE FOLLOWED BY THE ACCOUNTING OFFICERS OF THE GOVERNMENT IS THAT APPROPRIATED FUNDS MAY NOT BE USED FOR THE PERMANENT IMPROVEMENT OF PRIVATELY OWNED PROPERTY IN THE ABSENCE OF EXPRESS STATUTORY AUTHORITY. 6 COMP. DEC. 295, 19 COMP. GEN. 679. THE RULE HAS BEEN SPECIFICALLY APPLIED IN THE CASE OF PREMISES LEASED TO THE GOVERNMENT. 35 COMP. GEN. 715, 716. WHILE APPROVAL HAS BEEN GIVEN BY THIS OFFICE IN SPECIAL CIRCUMSTANCES TO THE IMPROVEMENT AT PUBLIC EXPENSE OF PRIVATE PROPERTY, IN EACH SUCH INSTANCE THERE WAS GENERALLY INVOLVED A RELATIVELY MINOR REMOVABLE IMPROVEMENT OF TEMPORARY CHARACTER THE INSTALLATION OF WHICH WAS NECESSARY TO ACCOMPLISHMENT OF THE PROGRAM OBJECTIVE FOR WHICH THE FUNDS INVOLVED WERE APPROPRIATED. SEE 6 COMP. DEC. 877, 7 ID. 712, 15 COMP. GEN. 761, 20 ID. 927, 35 ID. 715, 42 ID. 480, 43 ID. 738. CF. 18 COMP. GEN. 463, INVOLVING THE NECESSITY FOR ACQUIRING RIGHTS IN PERPETUITY FOR CONSTRUCTION AND MAINTENANCE WITH RESPECT TO CONSTRUCTION ON PRIVATE PROPERTY OF AN IMPROVEMENT NOT SUBJECT TO READY REMOVAL. CF. ALSO 39 COMP. GEN. 304 INVOLVING EXEMPTION OF THE POST OFFICE DEPARTMENT FROM THE PROVISIONS OF SECTION 278 (A), TITLE 40, UNITED STATES CODE, WHICH AUTHORIZES THE IMPROVEMENT OF LEASED PREMISES BUT LIMITS THE EXPENDITURES FOR SUCH PURPOSE WHICH MAY BE MADE.

IN A DECISION REPORTED AT 43 COMP. GEN. 705 WE DID AUTHORIZE THE CONSTRUCTION OF CURB, GUTTER, AND SIDEWALK IMPROVEMENTS ON PROPERTY LEASED TO THE GOVERNMENT FOR 99 YEARS. AND IN REACHING THE HOLDING IN THAT CASE, WE ADVERTED TO SUCH LEASED PROPERTY AS BEING IN THE 'OWNERSHIP' OF THE UNITED STATES FOR THE PURPOSE OF INTERPRETING A STATUTE WHICH SPECIFICALLY AUTHORIZED CONSTRUCTION OF SUCH ITEMS 'ALONG THE BOUNDARY OF GOVERNMENT-OWNED RESIDENTIAL OR OTHERWISE IMPROVED LOTS.' BUT THE RATIONALE APPLIED THERE CAN HAVE NO APPLICATION IN THE INSTANT SITUATION.

***4** THE CONSTRUCTION OF CURBS, GUTTERS, AND SIDEWALKS IS BUT AN INCIDENTAL ASPECT OF THE GOVERNMENT'S USE AND ENJOYMENT OF THE TOTAL LEASED PREMISES. AND SPECIFIC STATUTORY AUTHORITY HAD BEEN GRANTED TO OVERCOME THE FEDERAL SOVEREIGN IMMUNITY TO LOCAL ASSESSMENT FOR SUCH IMPROVEMENTS. IT WAS IN LIGHT OF THESE FACTORS TOGETHER WITH THE LENGTH OF THE LEASE TERM THAT WE DID NOT RAISE OBJECTION TO THE EXPENDITURES ****65** INVOLVED. CF. 29 COMP. GEN. 279 DENYING AUTHORITY TO CONSTRUCT WALKWAYS. IN THE INSTANT SITUATION, HOWEVER, THE IMPROVEMENT GOES TO THE VERY ESSENCE OF THE PURPOSE FOR WHICH THE UNIMPROVED PROPERTY WILL BE LEASED TO THE GOVERNMENT. THE IMPROVEMENT CONTEMPLATED IS A $25 MILLION BUILDING, NOT SOME MINOR ITEM INCIDENTAL TO A LARGER PURPOSE.

YOU SUGGEST THAT SUFFICIENT AUTHORITY TO OVERCOME THE RULE AGAINST THE EXPENDITURE OF APPROPRIATED FUNDS FOR THE IMPROVEMENT OF PRIVATE PROPERTY MAY BE CONTAINED IN THE PROVISIONS OF SECTIONS 5001 AND 5012 (B) OF TITLE 38, UNITED STATES CODE.

SECTION 5001 AUTHORIZES CONSTRUCTION OF VA HOSPITALS AND OTHER FACILITIES '* * * ON SITES ALREADY OWNED BY THE UNITED STATES OR OTHER SITES ACQUIRED BY PURCHASE, CONDEMNATION, GIFT, OR OTHERWISE.'

SECTION 5012 (B) AUTHORIZES PROCUREMENT OF NECESSARY SPACE '* * * FOR ADMINISTRATIVE, CLINICAL, MEDICAL, AND OUTPATIENT TREATMENT PURPOSES BY LEASE, PURCHASE, OR CONSTRUCTION OF BUILDINGS * * '

THE PERTINENT LANGUAGE OF SECTION 5001 DERIVES FROM SECTION 1 OF THE PUBLIC NO. 587, APPROVED MARCH 3, 1925, 43 STAT. 1212, AND SECTION 5012 (B) DERIVES FROM PUBLIC LAW 85-56,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

APPROVED JUNE 17, 1957, 71 STAT. 83, 143. SEE ALSO SECTION 10 OF THE WORLD WAR VETERANS' ACT, 1924, 43 STAT. 607, 610, REQUIRING THAT NEW PROPERTY OR STRUCTURES ACQUIRED BECOME PERMANENT PROPERTY OF THE GOVERNMENT.

WE FIND NOTHING IN THE LEGISLATIVE HISTORIES OF THESE SECTIONS TO SUGGEST THAT CONGRESS INTENDED TO AUTHORIZE THE CONSTRUCTION OF HOSPITALS OR ANY PERMANENT TYPE IMPROVEMENTS ON LEASED PROPERTY. SECTION 5001 SPEAKS IN TERMS OF SITES ALREADY OWNED OR ACQUIRED BY PURCHASE, CONDEMNATION OR GIFT. WE DO NOT BELIEVE THAT USE OF THE TERM 'OTHERWISE' IN THE SECTION CAN REASONABLY BE INTERPRETED TO MEAN ACQUISITION OF LESS THAN A FEE INTEREST IN LAND BUT, RATHER, THAT IT IS INTENDED TO COVER SITUATIONS, SUCH AS PERHAPS EXCHANGES OF LAND, WHICH WOULD NOT COME PRECISELY WITHIN THE SPECIFIED MEANS OF ACQUIRING LAND ENUMERATED. SEE 38 COMP. GEN. 143, 146, WHERE AUTHORITY 'TO ACQUIRE LAND' FOR CERTAIN PURPOSES WAS NOT CONSIDERED SUFFICIENT AUTHORITY TO IMPROVE LEASED PROPERTY EVEN THOUGH EXPENDITURES FOR RENT WERE AUTHORIZED.

THE FIRST QUESTION IS ANSWERED IN THE NEGATIVE.

IN OUR DECISION OF JULY 9, 1965, B-156496, WE HELD THAT VETERANS ADMINISTRATION FUNDS COULD NOT BE USED UNDER A LEASE CONSTRUCTION ARRANGEMENT FOR IMPROVEMENTS VALUED IN EXCESS OF $200,000 WITHOUT SPECIFIC APPROVAL BY APPROPRIATE COMMITTEES OF THE CONGRESS IN LIGHT OF CERTAIN APPROPRIATION RESTRICTIONS. SEE 80 STAT. 675.

***5** WE ALSO HELD IN THAT DECISION THAT FEES CHARGED EMPLOYEES AND VISITORS FOR THE USE OF VETERANS ADMINISTRATION PARKING FACILITIES WERE ****66** REQUIRED TO BE COVERED INTO THE TREASURY AS MISCELLANEOUS RECEIPTS AND COULD NOT BE USED TO DEFRAY OPERATING EXPENSES. THIS HOLDING WAS BASED IN PART OF THE PROVISIONS OF SECTION 5004, TITLE 38, UNITED STATES CODE.

SUBSEQUENT TO OUR DECISION, SECTION 5004 WAS AMENDED BY SECTION 201 OF THE VETERANS HOSPITALIZATION AND MEDICAL SERVICES MODERNIZATION AMENDMENTS OF 1966, 80 STAT. 1368. BUT WHILE THE AMENDMENTS EFFECTED BY SECTION 201 EXTENDED PROVISIONS OF LAW AUTHORIZING THE VETERANS ADMINISTRATION TO CONSTRUCT AND MAINTAIN GARAGES ON ITS HOSPITAL AND DOMICILIARY RESERVATIONS, THEY RELATED, IN TERMS OF NEW AUTHORITIES PROVIDED, MORE TO THE OPERATION OF SUCH FACILITIES THAN TO THEIR CONSTRUCTION. THESE AMENDMENTS OVERRIDE OUR DECISION OF JULY 9, 1965, SO FAR AS CONCERNS THE DISPOSITION OF PARKING FEES COLLECTED, BUT WE FIND NOTHING IN THEM THAT WOULD AFFECT OUR CONCLUSION CONCERNING THE LEASE CONSTRUCTION ASPECTS CONSIDERED.

THE ONLY CHANGE WHICH MIGHT POSSIBLY BE CONSTRUED AS AFFECTING OUR PRIOR CONCLUSION REGARDING LEASE CONSTRUCTION IS CONTAINED IN THE PROVISION THAT:

'THE ADMINISTRATOR MAY CONTRACT, BY LEASE OR OTHERWISE, WITH RESPONSIBLE PERSONS, FIRMS OR CORPORATIONS, FOR THE OPERATION OF SUCH PARKING FACILITIES, UNDER SUCH TERMS AND CONDITIONS AS HE MAY PRESCRIBE, AND WITHOUT REGARD TO THE LAWS CONCERNING ADVERTISING FOR COMPETITIVE BIDS.'

IN EXPLAINING THIS PROVISION, THE SENATE COMMITTEE ON LABOR AND PUBLIC WELFARE STATED IN ITS REPORT NO. 1727, DATED OCTOBER 13, 1966, AT PAGE 9, THAT:

'PARAGRAPH (3) AUTHORIZES THE ADMINISTRATOR TO LEASE OR OTHERWISE CONTRACT WITH RESPONSIBLE PERSONS, FIRMS, OR CORPORATIONS FOR THE OPERATION OF SUCH PARKING FACILITIES. THIS PROVISION WOULD PERMIT SUFFICIENT FLEXIBILITY IN THE OPERATION OF THE FACILITIES SO THAT THE ADMINISTRATOR MAY ENTER INTO CONTRACTS, EITHER IN THE NATURE OF A CONCESSION AGREEMENT OR A SERVICE CONTRACT, WHICHEVER IS DEEMED APPROPRIATE UNDER THE SPECIFIC CIRCUMSTANCES. IT IS CONTEMPLATED THAT IN SOME SITUATIONS, WHERE THE USE OF THE PARKING FACILITY IS OF SUCH VOLUME AS TO PERMIT A COMMERCIALLY PROFITABLE VENTURE, A CONCESSION AGREEMENT COULD BE REACHED WHICH WOULD RESULT IN PAYMENT BY THE CONCESSIONAIRE FOR THE PRIVILEGE OF OPERATING THE FACILITY. ON THE OTHER HAND, THERE MAY BE SITUATIONS WHERE IT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

WILL BE NECESSARY TO PAY FOR THE OPERATION OF THE PARKING FACILITY BY MEANS OF A SERVICE CONTRACT.'

THE AMENDMENTS TO SECTION 5004 WERE SPECIFICALLY DESIGNED TO OVERCOME OUR DECISION OF JULY 9, 1965, AS IT RELATED TO THE DISPOSITION OF PARKING FEES COLLECTED. THE PORTIONS OF THAT DECISION WHICH RELATE TO LEASE CONSTRUCTION AUTHORITIES WERE NOT ADVERTED TO BY THE COMMITTEE IN EXPLAINING THE PURPOSES OF THE AMENDMENTS. UNDER THE CIRCUMSTANCES, IN LIGHT OF THE LANGUAGE OF THE AMENDMENTS TOGETHER WITH THE EXPLANATION THEREOF, DEALING AS THEY DO WITH THE OPERATION OF PARKING FACILITIES AND THEIR CONSTRUCTION OR LEASING BY THE VETERANS ADMINISTRATION, WE CANNOT CONSTRUE THE AMENDMENT OF SECTION 5004 AS AFFECTING IN ANY WAY OUR PRIOR CONCLUSIONS IN THE MATTER OF AUTHORITY TO OBTAIN PARKING FACILITIES, VALUED IN EXCESS OF $200,000, BY LEASE CONSTRUCTION.

***6** THE SECOND QUESTION PRESENTED IS ANSWERED IN THE NEGATIVE.

****67** IN LIGHT OF OUR CONCLUSIONS CONCERNING QUESTIONS NUMBERED 1 AND 2, THE THIRD QUESTION IS ALSO ANSWERED IN THE NEGATIVE.

WHILE, IN VIEW OF THE ANSWERS TO THE FIRST THREE QUESTIONS, ANSWER TO THE FOURTH QUESTION DOES NOT APPEAR TO BE REQUIRED, IT MAY BE STATED GENERALLY THAT THE ARCHITECT-ENGINEER FEE LIMITATION IN SECTION 254 (B) OF TITLE 41, UNITED STATES CODE, RELATES TO COMPENSATION AUTHORIZED TO BE PAID TO ARCHITECT- ENGINEERS FOR THE SERVICES THEY RENDER IN CONJUNCTION WITH THE DESIGN OF CONSTRUCTION PROJECTS. THE STATUTORY LIMITATION IS FOR THE PURPOSE OF ASSURING THAT EXCESSIVE PRICES WILL NOT BE PAID FOR SUCH SERVICES IN CONNECTION WITH ANY CONSTRUCTION PROJECT.

THE PROJECT TO WHICH AN ARCHITECT-ENGINEER FEE IS APPLICABLE IS THE PROJECT FOR WHICH THE ARCHITECT-ENGINEER UNDERTAKES IN HIS CONTRACT TO PREPARE PLANS, ETC. SEE 40 COMP. GEN. 188. WHERE THE SITE AND NATURE OF A PROJECT ARE SO CHANGED AS TO RENDER VIRTUALLY USELESS ANY ARCHITECT-ENGINEER WORK DONE PRIOR TO ADMINISTRATIVE DETERMINATION TO EFFECT SUCH CHANGE, IT WOULD BE UNREASONABLE, IN LIGHT OF THE STATUTORY PURPOSE, TO CARRY FORWARD AGAINST THE NEW PROJECT ANY CHARGES AGAINST THE FEE LIMITATION INCURRED UNDER THE ORIGINAL PROJECT. ALTHOUGH THE PURPOSE TO BE SERVED BY A BUILDING PROJECT MAY REMAIN UNCHANGED, THAT IS NOT TO SAY THAT THE CONCEPTUAL DESIGN OF THE BUILDING AND ITS LOCATION MAY BE SUBSTANTIALLY ALTERED WITHOUT AT SOME POINT GIVING RISE TO A NEW PROJECT FOR THE PURPOSE OF APPLYING THE FEE LIMITATIONS IN QUESTION.

ASSUMING CORRECTNESS OF THE STATEMENT CONTAINED IN THE QUESTION RAISED, THAT FROM AN ARCHITECTUAL STANDPOINT THE NEW PROJECT IS A DIFFERENT ONE FROM THE OLD ONE HERETOFORE DESIGNED--AND FROM THE BRIEF DESCRIPTION FURNISHED, THE STATEMENT APPEARS REASONABLE--IT IS OUR VIEW THAT THE ARCHITECT-ENGINEER FEES EXPENDED IN DESIGN OF THE FIRST PROJECT ARE NOT FOR CONSIDERATION IN CONNECTION WITH DESIGN OF THE NEW PROJECT SO FAR AS CONCERNS APPLICATION OF THE STATUTORY FEE LIMITATION.

47 Comp. Gen. 61, 1967 WL 1686 (Comp.Gen.), B- 156,496, 1967 CPD P 31

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works