IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FLUOR ENTERPRISES, INC. f/k/a FLUOR DANIEL, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 00-207C (Judge Block) |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant submits the following proposed findings of uncontroverted fact:

1. The National Weather Service ("Weather Service") is an agency of the National Oceanic and Atmospheric Administration ("NOAA"), which is a part of the United States Department of Commerce ("Commerce"). App. 1.[1/]

2. In the mid-1980s, NOAA undertook a program to restructure and modernize the National Weather Service, including the application of new technologies to observe atmospheric conditions and process weather information. App. 2.

3. The new technologies that the Weather Service planned to utilize included the next generation weather radar ("NEXRAD"), which required the construction of radar sites throughout the United States. Id.

4. The modernization program also included the Weather Service consolidating its existing 249 weather offices into approximately 116 weather forecast offices ("WFO"), which were to be located

[1/] "App.___" refers to defendant's appendix.

near the planned NEXRAD sites. Id.

5. In 1986, NOAA issued a request for proposals ("RFP") that included providing architectural and engineering ("A&E") services for the designs of the WFOs, as well as project and construction management services during the construction of the WFOs. Id.

6. After the period for submitting proposals ended, NOAA's Architect-Engineer Selection Board ranked the offerors, and, after price negotiations, plaintiff, Fluor Enterprises, Inc. ("Fluor") was determined to be the successful offeror. Id.

7. On or about July 29, 1986, the Government and Fluor entered into letter contract No. 50WCNA606099 ("the contract"). App. 2, 41-52.[2/] The initial term of the letter contract was later extended to May 30, 1987. App. 2.

8. On or about May 30, 1987, the letter contract was definitized, which resulted in:

a. The base period of performance being extended through September 30, 1987; and

b. The Government having the right to exercise options for four additional one-year periods of performance.

App. 2.

9. After the Government exercised its right for all four option periods, the contract was extended through October 1992. App. 2-3.

10. Pursuant to the contract's statement of work, Fluor was to

---

[2/] The entire contract is attached to plaintiff's complaint. Defendant's appendix contains only those portions of the contract that defendant believes is relevant to our opposition and cross-motion.

provide:

a. Program and project management and planning (Requirement 2.1);

b. General architectural and engineering services (Requirement 2.2);

c. Site-specific A&E services (Requirement 2.3); and

d. Construction management and inspection (Requirement 2.4).

App. 3, 48-51.

11. The Government paid Fluor a total of $42,531,626, of which $5,551,549 represented fees for performing A&E services related to the design of the WFOs. The $5,551,549 Fluor was paid was inclusive of its costs. App. 3, 12.

12. Fluor knew, or should have known, that the six percent statutory limitation imposed by 41 U.S.C. § 254(b) upon fees, inclusive of costs, for A&E services, was applicable to that portion of the contract that required Fluor to provide WFO site-specific designs. App. 53-56, 59-73.

13. The Government issued task orders that required Fluor to perform work pursuant to the contract. App. 3. Each task order identified

a. The WFO for which site-specific A&E design services were to be performed pursuant to contract Requirement 2.3; and

b. The other A&E tasks to be performed during the task period.

App. 3,62-64.

14. During Fluor's performance of the contract, the Government issued a total of eight task orders. App. 3.

15. During Fluor's performance of the contract performance, Fluor internally tracked:

a. Site-specific A&E services costs by WFO site; and

b. Whether the fees charged, inclusive of the costs incurred for those A&E services, were no more than six percent of the estimated cost of construction, exclusive of the fee, for those sites.

App. 53-56, 59-73.

16. During the discussions that the Government and Fluor conducted concerning the work to be performed during the fourth option period (fiscal year 1991), the Government and Fluor specifically discussed the application of the six percent fee limitation imposed by 41 U.S.C. § 254(b) upon the A&E services for the site specific designs. App. 4, 57, 59-63, 71-72.

17. On June 12, 1990, the Government and Fluor had a meeting during which the parties discussed the application of the six percent limitation upon A&E fees imposed by 41 U.S.C. § 254(b). App. 4, 59-63.

18. At the June 12, 1990 meeting, Fluor's project manager distributed a document entitled "Price & Profit Limitations," that included:

a. Fluor's understanding of the applicability of the six percent fee limitation imposed by 41 U.S.C. § 254(b); and

b. The A&E services that Fluor believed were subject to the six percent limitation upon fees for A&E services.

App. 4, 59-63, 67.

19. At the June 12, 1990 meeting, Fluor and the Government agreed that the six percent limitation upon fees for A&E services

imposed by 41 U.S.C. § 254(b) was applicable to the contract. App. 4, 53-56, 59-73.

20. Fluor and the Government did not execute a contract modification detailing the specific A&E services that were subject to six percent limitation upon A&E fees imposed by 41 U.S.C. § 254(b). App. 4.

21. On or about August 15, 1991, Fluor's project manager acknowledged that six percent fee limitation was applicable to the requirement that Fluor provide A&E services "required to produce the detailed site specific design [of the Weather Forecast Offices] within a budget of 6% of facility construction cost." App. 65.

22. Throughout the course of contract performance, Fluor submitted invoices that the Government accepted and paid. App. 4.

23. The WFO modernization program was a long-term project and was not completed during the contract's period of performance. App. 4-5. To allow Fluor to continue with the construction program, Fluor was awarded an interim, "bridge" contract for the period November 1992 through December 31, 1993. App. 5.

24. Effective January 1, 1994, Fluor was awarded a third contract for the completion of the construction program. App. 5.

25. As the contract was nearing conclusion, Commerce's Inspector General (IG) commenced an audit of costs that Fluor submitted to the Government for payment. Id.

26. In March 1993, the IG issued an interim audit report

covering the period through April 30, 1992, i.e., through the completion of Task Order 7, in which the IG questioned a total $7,171,743 that the Government paid Fluor upon the grounds that:

a. The Government had overpaid Fluor $6,987,219 for A&E design services that were subject to the six percent limitation imposed upon such fees by 41 U.S.C. § 254(b); and

b. The Government had paid Fluor a total of $184,524 in miscellaneous unallowable costs.

App. 5.

27. Fluor was provided a copy of the interim audit report shortly after it was issued. Id.

28. In June 1993, Fluor responded to the IG's interim audit report, with a document entitled "Position Paper," in which Fluor acknowledged that the six percent limitation upon A&E design fees applied to the Contract. App. 66-73

29. On March 21, 1995, the IG issued a final audit report that covered the entire period of performance, including Task Order 8, in which the IG:

a. Again questioned the payment of A&E fees, inclusive of costs, that exceeded the six percent statutory fee limitation imposed by 41 U.S.C. § 254(b); and

b. Also determined that Fluor had been overpaid for costs relating to salaries, subcontract costs, travel costs, and indirect costs.

App. 6.

30. After issuance of the final IG audit, the contracting officer reviewed documentation provided by Fluor concerning its labor costs incurred for A&E services. Id.

31. Subsequently, there was a lengthy series of communications

between Fluor and the contracting officer concerning issues raised in the IG audit. Id.

32. On April 13, 1999, the contracting officer issued her final decision demanding that Fluor repay the Government a total of $2,774,072, as follows:

a. The $2,560,413 in fees that the Government paid Fluor in excess of the six percent limitation imposed by 41 U.S.C. § 254; and

b. The $213,695 in unallowable costs that the Government paid Fluor for:
(1) duplicative labor charges,
(2) excess subcontractor costs,
(3) unallowable overhead, and
(4) unallowable indirect costs.

App. 6-7, 8-40.

33. Fluor filed its complaint with the Court on April 11, 2000, almost one year after the final decision was issued.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Steven J. Abelson
STEVEN J. ABELSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 514-4325

Attorneys for Defendant

OF COUNSEL:

FRED KOPATICH
Attorney
Office of the General Counsel
Department of Commerce
14th & Constitution Ave, N.W.
Room 5893
Washington, D.C. 20230

April 12, 2004

CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2004, the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Steven J. Abelson