IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FLUOR ENTERPRISES, INC.<br>f/k/a FLUOR DANIEL, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 00-207C<br>(Judge Block) |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION AND RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM**

FRANK M. RAPOPORT
STEPHEN E. RUSCUS
DAVID M. GLYNN
McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500

Attorneys for Plaintiff,
Fluor Enterprises, Inc.

May 10, 2004

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 4

I. THE PLAIN LANGUAGE OF THE STATUTE CLEARLY LIMITS ITS APPLICATION TO CONTRACTS FOR ARCHITECTURAL AND ENGINEERING SERVICES WHICH THE CONTRACT AT ISSUE IS NOT .......... 4

II. THE STATUTE DOES NOT APPLY TO CONTRACTS WHERE THE SECRETARY DOES NOT CREATE THE ESTIMATED COST OF THE PROJECT AT THE TIME THE PARTIES ENTER THE CONTRACT .......... 7

A. The Agency Head Did Not Perform the Required Estimate. .......... 7

B. No Statutory Estimate Was Prepared at the Time of Entering the Contract .......... 9

III. THE PARTIES DID NOT COMMIT TO THE SIX PERCENT LIMITATION CONTRACTUALLY .......... 10

IV. SINCE IT IS UNDISPUTED THAT THE CONTRACTING OFFICER INCLUDED LESS THAN 100 WFOS IN THE ESTIMATED COST OF THE PROJECT WHEN CALCULATING THE SIX PERCENT LIMITATION, SUMMARY JUDGMENT FOR PLAINTIFF IS APPROPRIATE .......... 13

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Appeal of O'Neal Engineering, Inc.*, ASBCA No. 32013, 86-3 BCA ¶ 19,114 .......................... 5, 6

*Big Chief Drilling Co. v. United States*, 15 Cl. Ct. 295 (1988) ...................................................... 8

*Clary v. United States*, 333 F.3d 1345 (Fed. Cir. 2003) .............................................................. 7

*Goodman Manufacturing, L.P. v. United States*, 69 F.3d 505 (Fed. Cir. 1995) ........................... 15

*Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) .............. 5

*Labat-Anderson, Inc. v. United States*, 50 Fed. Cl. 99 (2001) ...................................................... 10

*Mansell v. Mansell*, 490 U.S. 581 (1989) ........................................................................................ 5

*Mudge v. United States*, 308 F.3d 1220 (Fed. Cir. 2002) ............................................................. 5

*Pacific National Cellular v. United States*, 41 Fed. Cl. 20 (1998) ................................................. 9

*Phoenix Air Group v. United States*, 46 Fed. Cl. 90 (2000) ......................................................... 10

## STATUTES, REGULATIONS & LEGISLATIVE DOCUMENTS

48 C.F.R. § 236.606 ........................................................................................................ 6

48 C.F.R. § 15.404-4(c)(4)(i) ............................................................................................ 9

48 C.F.R. § 836.606-73 ..................................................................................................... 6

FAR § 37.101 ................................................................................................................... 6

31 U.S.C. § 1341 .............................................................................................................. 8

31 U.S.C. § 6303 .............................................................................................................. 6

41 U.S.C. § 254(b) ..................................................................................................... 4, 11

H.R. Rep. No. 81-670 (1949), *reprinted in* 1949 U.S.C.C.A.N. 1475 .......................................... 9

## APPENDED DOCUMENTS

**Page**

Pl. App. 30 (5/24/90 e-mail from Ron Anielak, COTR, to Jack Tolliver, FDI) ............................11

Pl. App. 31 (Declaration of James Wagner) ..................................................................12, 13

Pl. App. 32 (10/3/90 letter from R.B. Campbell, FDI, to Max Entriken, SEPO) ..........................12

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff hereby renews its motion for summary judgment and submits this opposition to Defendant's Cross-Motion. Plaintiff also submits its reply to Defendant's opposition to Plaintiff's Motion for Summary Judgment. Defendant's argument relies entirely on its reading of the plain language of the statute but fails to give meaning to all of the statute's material provisions. Defendant's motion also argues that, even if the Court determines that the statute is inapplicable, the parties interpreted the contract as prohibiting Defendant from paying Plaintiff for services Defendant itself required Plaintiff to provide. This position is at odds with Defendant's explicit admissions in this litigation and in the Contracting Officer's Final Decision that the six percent limitation was not addressed in any way, shape, or form by the contract. Finally, Defendant fails to address Plaintiff's argument that even if the statute were applicable and could be applied, the resulting calculation (using numbers calculated and adopted by Defendant), would establish that Defendant's payments for the services it required Plaintiff to provide were entirely proper.

## INTRODUCTION

The result that Defendant seeks to wreak in this case is unjust, improper and illegal. In 1986, Defendant was struggling to commence a widely publicized, massive and sprawling modernization program of its weather tracking and reporting system that Defendant had neither the staff nor expertise to implement. To obtain the comprehensive management services and expertise necessary to implement this program, Defendant went outside the government and entered into a level-of-effort professional services contract with Plaintiff, the scope of which was intentionally broad to permit Defendant to secure whatever advisory and management services it deemed necessary as the program unfolded.

As noted repeatedly by the original Contracting Officer at the time of award (prior to Defendant's adopting a litigation posture in this case), total A&E services under the contract (including those relating to production of designs, drawings and specifications as well as all other A&E services) constituted only a "minor" portion of the work under the contract. The contract was not a "contract for architectural or engineering services" as that term is used in the statute. Rather, like design-build contracts commonly used by federal agencies with the most experience in government construction, it was a contract that related to construction of public works that contained some element of A&E services, but was not subject to the six percent limitation set forth in the statute. See Pl.'s App. 21, Aff. of Kenneth W. Forsyth ¶ 3; Pl.'s App. 25, EP 715-1-7, p. 4-7.[1] Because this contract was a level of effort contract, Plaintiff was entitled to stop applying effort to A&E work under the contract at any point Defendant would not or could not pay for services rendered.

The undisputed facts show that at the time the parties entered the contract, Defendant and Plaintiff agreed that the six percent limitation (applicable to contracts for architecture and engineering services) did not apply to the level of effort professional services contract. See Pl.'s App. 12, 4/8/87 Letter from Jack Tolliver, FDI, to Jesse Arredondo, NOAA. Neither the head of the agency (relative to the required estimate of project costs at time of award) nor the Contracting Officer (relative to negotiation of the contract) took any of the steps they would have been required to take had the statute applied. As a result, Defendant did not provide Plaintiff with the monetary "cut-off" that would have allowed Plaintiff simply to stop incurring A&E costs under the contract once the cut-off threshold had been reached. It is these facts which

[1] For simplicity, Plaintiff has continued the numbering of its appendices from its moving brief, such that the appendices to this brief begin with No. 30.

demonstrate the "contemporaneous construction" of the parties regarding applicability of the statute, see Def.'s Br. at 17, and not the parties' dialogue (discussed below) resulting from the OIG's criticism of Defendant's contract management. This dialogue only prompted the parties to discuss a methodology for tracking costs relative to the statutory limitation to quiet the OIG in the event that it was later determined that the statute applied.

Beginning in 1989 and thereafter, Defendant was subject to repeated and harsh criticism from its OIG for having mismanaged the program. In part, the OIG criticized Defendant for failing to apply the statute when, in the OIG's opinion, it was proper to do so. See Pl.'s App. 13, Draft Report No. STD-0199-1-000X "Joint System Program Office--Contracts Poorly Managed and Funds Improperly Spent," at FD007622. To ensure that Defendant's payments to Plaintiff for the services procured under the contract were proper in the event the statute applied, Defendant, in June 1990, met with Plaintiff. At that meeting, the parties agreed that Defendant's payments to Plaintiff would be within the six percent limitation were the statute applied and agreed on the costs that would be included in the numerator of the statutory calculation if the statute were applicable to future costs. Plaintiff stayed within the "safe" threshold agreed to with Defendant and, in reliance on this agreement, continued to apply effort to A&E work it would not have been required to do had Defendant's current litigation position been known.

Now, having received the benefit of Plaintiff's performance under the contract, Defendant takes the position that the statute applies, and seeks a retroactive application to Plaintiff's detriment. The plain language of the statute, however, establishes both that the statute is not applicable and cannot be applied, and that, even if applicable, Defendant's payments to Plaintiff were lawful as the parties agreed prior to this litigation. Accordingly, Plaintiff

respectfully requests that this Court grant its motion for summary judgment and deny Defendant's motion.

## ARGUMENT

### I. THE PLAIN LANGUAGE OF THE STATUTE CLEARLY LIMITS ITS APPLICATION TO CONTRACTS FOR ARCHITECTURAL AND ENGINEERING SERVICES WHICH THE CONTRACT AT ISSUE IS NOT

The plain language of 41 U.S.C. § 254(b) states explicitly that the statute applies only to "contracts for architectural or engineering services." Defendant nowhere contends that the contract at issue is a contract for A&E services. Nor does it dispute that the contract is a level of effort, incrementally funded, cost type, professional services contract to provide integrated, complex, and comprehensive management services for Defendant's National Weather Service modernization program. See Def.'s Br. at 7-8; see also Pl.'s App. 2, CO's Memorandum for the Record, G004708 (characterizing A&E work under the contract as "minor"); Pl.'s App. 1, CO's Price and Cost Analysis, G004709 (same); Pl.'s App. 18, OIG Audit Report No. NOA-4436-3-001 at 11, 14 (1993) ("range of Fluor Daniel's activities extended to virtually every aspect of the WFO construction program. Fluor Daniel reviewed policies and developed strategies that affected the program's priorities and budget . . . Fluor Daniel personnel also developed WFO budget figures, including estimated costs for its own professional services, and made budget presentations to the Department's budget officials").

Rather, Defendant ignores the plain language of the statute and asserts, instead, that the statute applies to any contract, regardless of type, if any architectural and engineering services are included. In support of this assertion, Defendant attempts to use the legislative history to show that, despite the plain language of the statute, Congress intended the statute to apply to "a

range of differing contracts."[2] Def.'s Br. at 11. This effort fails for several reasons. First, use of legislative history to infer a meaning contrary to the statute's plain text requires an "extraordinary showing" that Congress meant something other than what it said. Mudge v. United States, 308 F.3d 1220, 1230 (Fed. Cir. 2002). The legislative history cited by Defendant does not support its proposed interpretation, much less demonstrate clear intent. Second, Defendant's argument, at bottom, is that the statute applies to "differing" contracts other than contracts for A&E services because Congress did not specifically exclude such contracts. As stated by the Supreme Court "[t]his theory--that the expression of one thing indicates the inclusion of others unless exclusion is made explicit--is contrary to common sense, and common usage." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 8 (2000).[3]

Defendant cites only one case in support of its position, and it is off point. This case, Appeal of O'Neal Engineering, Inc., ASBCA No. 32013, 86-3 BCA ¶ 19,114, is a constructive

---

[2] Defendant also contends that the statute applies to level-of-effort, incrementally funded contracts. However, Defendant acknowledges that the statute cannot be interpreted to produce an absurd result which, as explained in Plaintiff's moving brief, would occur were Defendant's position sustained. Level-of-effort contracts do not require completion of any specified task. If the statute were applicable to such contracts, the contractor would be entitled to stop work upon reaching the six percent limitation, leaving the government with no ability to obtain a finished product. Furthermore, both level-of-effort and incrementally funded contracts have significant potential for funding gaps with corresponding ramp-up/learning curve costs that render the ultimate cost of design highly variable, render the contractor's ability to perform within a six percent limitation impossible for the contractor and government to assess at the time of award, and destroy any possibility for a traditional six percent relationship between design and construction.

[3] Defendant's assertion that Plaintiff itself improperly relies on legislative history is without merit. To the contrary, as noted in Plaintiff's moving brief, Plaintiff's position is that the plain language of the statute "unambiguously states that it applies to *contracts for architectural and engineering services*" and that the legislative history indicates no contrary intent. Pl.'s Br. at 16 (emphasis in original); see Mansell v. Mansell, 490 U.S. 581, 588 (1989) (holding statute's plain and unambiguous meaning prevails in the absence of clearly expressed legislative intent to the contrary).

change case in which the plaintiff argued that its design costs were increased as a result of the government's defective estimate. Unlike the instant case, the contract at issue O'Neal Engineering was a contract for A&E services the principal purpose of which was to provide two types of A&E services -- those subject to the statutory limitation ("direct design services" including plans, specification and cost estimates) and those not subject to the statutory limitation ("engineering services such as field work and special studies"). Application of the six percent limitation was not at issue. Rather, the Board, in its findings of fact, simply made reference the statutory limitation and reiterated the well-established proposition that, in such contracts, the statute does not apply to all A&E services but applies, instead, to a limited subset.[4]

Plaintiff's position, on the other hand, is consistent with current legislative and regulatory positions regarding determination of contract type. Title 31 U.S.C. § 6303, for example, defines a "procurement contract" as one in which the "principal purpose of the instrument is to acquire (by purchase, lease, or barter) property or services." 31 U.S.C. § 6303. Similarly, FAR § 37.101 defines a "service contract" as one that "directly engages the time and effort of a contractor whose primary purpose is to perform an identifiable task rather than to furnish an end item of supply." FAR § 37.101. Moreover, Plaintiff's position also is consistent with the implementation of the statute by agencies with experience in construction-related programs and contracts. The U.S. Army Corps of Engineers ("USACE"), for example, does not consider

[4] The fact that Defendant in this case applies the statute to only a portion of the contract, see Def.'s Br. at 8, does not somehow transform it into a "contract for architectural or engineering services" to which the rule in O'Neal Engineering applies. Similarly, 48 C.F.R. § 836.606-73 and 48 C.F.R. § 236.606, cited by Defendant, see Def.'s Br. at 21-22, stand only for the well-established proposition that, in contracts for A&E services, not all A&E services are subject to the statutory limitation. Id.; see also 48 C.F.R. § 236.606 (same). Finally, even if the statute were and could be applied, Plaintiff disagrees that Defendant's identification of A&E services

design-build contracts, of which A&E services also constitute a minor portion, to be contracts for A&E services subject to the six percent statutory limitation. See Pl.'s App. 21, Aff. of Kenneth W. Forsyth ¶ 3; Pl.'s App. 25, EP 715-1-7, July 31, 2002, p. 4-7.

Accordingly, this Court should reject Defendant's interpretation as contrary to the plain language of that statute. See Clary v. United States, 333 F.3d 1345, 1348 (Fed. Cir. 2003) (statutory interpretation must begin and end with the plain meaning of the text where the meaning of the text is clear and unambiguous).

## II. THE STATUTE DOES NOT APPLY TO CONTRACTS WHERE THE SECRETARY DOES NOT CREATE THE ESTIMATED COST OF THE PROJECT AT THE TIME THE PARTIES ENTER THE CONTRACT

Even if the statute generally were applicable to contracts of the type at issue here, the statute does not limit payments to contractors except in relation to "the estimated cost, exclusive of fees, as determined by the agency head at the time of entering into the contract, of the project to which such fee is applicable." Defendant does not allege that the agency head performed the required estimate. Defendant also does not allege that the required estimate was performed at the time of entering into the contract. Indeed, the undisputed facts are otherwise.

### A. The Agency Head Did Not Perform the Required Estimate.

Defendant does not allege that the agency head performed the required estimate. See Def.'s Br. at 19; see also Def.'s Resp. to Pl.'s Proposed Finding No. 5 (admitting that "[t]he agency head did not perform an estimate of costs of the project by the agency head prior to award of the contract"). Indeed, in addressing the plain language of the statute, Defendant states only that because the contract required Plaintiff to perform certain cost estimates "there could be

subject to the statute and calculation of project cost would be in accordance with the requirements of the statute.

no estimated costs of construction until Fluor calculated those costs. Consequently, the calculation of the estimated costs of construction was delegated to Fluor." Def.'s Br. at 19 (emphasis added). This assertion is fatally flawed in three principal respects.

First, Defendant's assertion that the head of the agency delegated to Plaintiff the creation of the statutory cost estimates required for purposes of the fee limitation is entirely unsupported. Nowhere in the record is there support for this proposition. Nor did Defendant provide documentation of this delegation in discovery in this case. It is well-established that the advocacy of Defendant's attorneys in the pleadings, without more, can create no dispute as to material fact. See RCFC 56; Big Chief Drilling Co. v United States, 15 Cl. Ct. 295, 299 (1988).

Second, delegation of the statutory estimate to Plaintiff is a legal and logical impossibility. In contracts to which the statute applies, creation of construction cost estimates by the A&E is in itself an A&E service limited by the statute. See Pl.'s App. 25, EP 715-1-7, p. 4-7 (preparation of construction cost estimates not excluded from limitation). Thus, Defendant is in effect arguing that Congress intended to permit the head of the agency to delegate to the contractor, so that the contracting officer can order, and the A&E incurs costs for, the very type of work limited by the statute without either party knowing whether the contracting officer will be permitted by law to pay for these services. Such a result would place every contracting officer party to such a contract in potential violation of the Anti Deficiency Act, see 31 U.S.C. § 1341, and every contractor at risk for every dollar expended.

Third, even if the agency head tried to delegate the statutory estimate to Plaintiff, such a delegation, by definition, would have been deficient pursuant to the plain language of the statute,

which requires that the statutory estimate be prepared "at the time of entering the contract."[5] Even if Plaintiff had agreed in the contract to perform the statutory cost estimate, such estimate obviously could not have been accomplished by the time parties entered the contract as required by the statute.[6] See Pac. Nat'l Cellular v. United States, 41 Fed. Cl. 20, 26-27 (1998) (court must give effect to every word and clause of a statute).

Finally, the notion that Congress intended to permit delegation of the statutory estimate to the contractor is far fetched. If the statute were applicable, such a delegation would permit the contractor to create the very estimate of project costs that would determine how much of its costs it could recover under the contract. Nothing in the statute or legislative history suggests that Congress intended such a result. See H.R. Rep. No. 81-670 (1949), *reprinted in* 1949 U.S.C.C.A.N. 1475, 1499.

**B. No Statutory Estimate Was Prepared at the Time of Entering the Contract**

Defendant does not allege that the statutory estimate was prepared at the time of entering the contract. To the contrary, Defendant's motion explicitly states that "there could be no estimated costs of construction until Fluor calculated those costs." Def.'s Br. at 19; see also Def.'s Resp. to Pl.'s Proposed Finding No. 5 (admitting that "[t]he agency head did not perform an estimate of costs of the project by the agency head prior to award of the contract").

---

[5] Were task orders separate contracts (which they are not), this result would not change. A task order purportedly requiring Plaintiff to prepare the statutory cost estimate during performance of that task order would produce no such estimate at the time of entering into the task order.

[6] Such a delegation also would undermine the regulatory framework for fee negotiation, which prohibits the contracting officer from negotiating a fee for design work in excess of six percent of the estimated cost of the project. See 48 C.F.R. § 15.404-4(c)(4)(i). Were the statute to apply, under Defendant's interpretation, the contracting officer could not negotiate the fee prior to issuance of the task order because he would not yet have the estimated project costs on which the fee was based.

Defendant's argument appears to be that, if Defendant could not develop the statutory estimate required by Congress to be performed at the time of entering into the contract as a condition prerequisite to application of the statute, then that condition did not have to be fulfilled. Such an interpretation is contrary to the plain language of the statute. Had Congress wished to qualify the requirement for the statutory estimate it could have done so, but did not. Moreover, even if the statutory language were ambiguous in this regard (and it is not), nothing in the legislative history supports Defendant's interpretation.[7]

## III. THE PARTIES DID NOT COMMIT TO THE SIX PERCENT LIMITATION CONTRACTUALLY

Applicability of the statute not withstanding, Defendant apparently now alleges that Plaintiff interpreted the contract as limiting the extent to which Plaintiff could recover the costs of A&E work performed at Defendant's direction. See Def.'s Br. at 14-15. This is plainly false. Defendant admits that nowhere did the contract address the six percent limitation. Def.'s Resp. to Pl.'s Proposed Finding No. 4. Defendant also admits that there was no estimate of project costs by the agency head prior to award of the contract that Plaintiff could have used to apply the statutory limitation, contractually or otherwise, Def.'s Resp. to Pl.'s Proposed Finding No. 5, and that the contract contained no estimate of project costs. Def.'s Resp. to Pl.'s Proposed Finding No. 6.

The Contracting Officer's Final Decision, itself, undermines Defendant's assertion:

---

[7] Defendant's motion asserts that "with each task order, the Government was, in essence, contracting with Fluor to perform work." Def.'s Br. at 19. A task order, however, is merely a means of ordering work under a pre-existing contract and is not, itself, a contract. See Labat-Anderson, Inc. v. United States, 50 Fed. Cl. 99, 104-5 (2001) (acknowledging task order merely an order under a pre-existing contract); Phoenix Air Group v. United States, 46 Fed. Cl. 90, 105 (2000) (distinguishing between challenge to award of task order and to modification of underlying contract). Defendant neither argues that a task order is a contract within the meaning of the statute, nor provides any support for such a conclusion.

> Prior to entering the 1986 contract, the parties did not negotiate a separate fee for architectural and engineering design and did not address in the contract documents the statutory limitation on such fees set out at 41 U.S.C. § 254(b). . . .Throughout the term of the contract, design services were ordered through task orders without reference to the statutory limitation on the fees payable for the services.

Compl. App. 1, at 1-2 (emphasis added); see also Pl.'s App. 13, OIG Report at FD007622 (finding that the six percent fee limitation was not considered during negotiations).

Moreover, the Contracting Officer's Final Decision establishes without qualification that the parties never modified the contract to reference the statutory limitation:

> It appears that neither NOAA nor [Fluor] fully understood how the statute would apply . . . Any [1990] discussions between the parties concerning how the statute would apply were never incorporated into a contract modification.

Compl. App. 1, at 4.

As noted in Plaintiff's moving brief, the parties initiated discussions regarding applicability of the statute in 1990, at Defendant's insistence, under pressure from the OIG. See Pl.'s App. 30, 5/24/90 e-mail from Ron Anielak, COTR, to Jack Tolliver, FDI (stating that six percent limitation "will apply"); Pl.'s App. 14, 6/11/90 e-mail from E. Mische, SEPO, CASC, to J. Tolliver, FDI (scheduling meeting to discuss a "6% fixed fee limitation for specific design and contract incorporation") (emphasis added); Def.'s App. at 59, 6/15/90 meeting minutes of 6/12/90 meeting (indicating discussion of applicability of fee limitation arose "in response to RFA E-mail of May 24, 1990"). Cf. Pl.'s App. 12, 4/8/97 memo from J. Tolliver, FDI, to J. Arredondo, Contracting Officer (statute does not apply).[8]

---

[8] The Contracting Officer's April 7, 2004 Declaration, prepared for this litigation, acknowledges the parties' participation in the June 12, 1990 meeting but does not reference the agreements reached by the parties described in her April 13, 1999 Final Decision. It is important to note that the Contracting Officer's Declaration carefully and explicitly limits her knowledge to the facts

It is clear from the context in which the 1990 meeting was initiated that Defendant entered into discussions regarding applicability of the statute only in response to harsh OIG criticism of its mishandling of the WFO program, which resulted in a report from the OIG that same year.[9] See Pl.'s App. 13; Pl.'s App. 31, Decl. of James Wagner ¶ 4; Pl.'s App. 15, 6/25/90 facsimile from FDI illustrating agreement from 6/12/90 meeting between FDI and NOAA.

Moreover, even as of October, 1990, it is clear that applicability of the statute remained an open issue. See Pl.'s App. 32, 10/3/90 letter from R.B. Campbell, FDI, to Max Entriken, SEPO ("[s]ince the requirement for 6% design (A/E) is a continuing question associated with the NWS modernization, we've prepared the attached calculation which demonstrates the budgeted A/E effort associated with Task Order No. 6"); see also Pl.'s App. 31, Decl. of James Wagner.

Accordingly, Defendant's contention that Plaintiff interpreted the contract as limiting Plaintiff's ability to recover the costs of A&E work performed at Defendant's direction is unsupported, and Defendant's attempt to misconstrue this issue of statutory interpretation as one of contract interpretation must fail.[10]

---

set forth in the Declaration to those events occurring after she became Contracting Officer in 1990.

[9] The result of these discussions was the parties' subsequent agreement that Plaintiff's fee would fall within the limitation were the statute applicable. This would be a major issue were this case ultimately to proceed to fact finding and trial. Under the level-of-effort contract, Plaintiff was not required to perform work required by Defendant for which no funds were available. Based on the parties' 1990 agreement that Plaintiff's costs and fee would be within the six percent limitation, even were the statutory limitation applied, Plaintiff continued to incur costs on Defendant's behalf. Defendant therefore will be estopped from denying the agreement reached on whether Plaintiff's fee was within the limitation should this case proceed to trial.

[10] Defendant mischaracterizes Plaintiff's June 21, 1993 response to the OIG Draft Audit Report and related documents as indicative of agreement by Plaintiff that the statute applies. This response, however, attempts to resolve the issues raised by the OIG by addressing the method by which the OIG determined whether Plaintiff's fees exceeded six percent of the estimated cost of the project, and not whether the statute applied to the contract. (As noted herein, this case can be

## IV. SINCE IT IS UNDISPUTED THAT THE CONTRACTING OFFICER INCLUDED LESS THAN 100 WFOS IN THE ESTIMATED COST OF THE PROJECT WHEN CALCULATING THE SIX PERCENT LIMITATION, SUMMARY JUDGMENT FOR PLAINTIFF IS APPROPRIATE

Defendant argues that the Court should not grant Plaintiff summary judgment on the issue of whether the Contracting Officer properly included fewer than 100 WFOs in the estimated cost of the project when calculating the six percent limitation because Defendant contends there is a disputed issue of material fact. Defendant is incorrect; there is no disputed issue of material fact. Therefore, because this is purely a question of law on which Plaintiff must prevail, the Court should grant Plaintiff's Motion for Summary Judgment.

Plaintiff's moving brief contends that "even if the statute were applicable and could be applied without an estimate by the agency head at the time the parties entered the contract, Plaintiff would still be entitled to summary judgment on grounds that the costs alleged by the contracting officer to be A&E costs subject to the six percent limitation are within that limitation calculated using the full estimate of project costs set forth in the 1992 Facilities Budget." See Pl.'s Br. at 33. Specifically, the Contracting Officer's Final Decision identifies $5,551,549 as A&E costs allegedly subject to the statutory limitation. Def.'s App. at 12. The 1992 Facilities Budget cited in the Contracting Officer's Final Decision identifies the total estimated cost for approximately 100 WFOs as $114,000,000. Pl.'s App. 29 at G000032. Even assuming *arguendo* that the Contracting Officer correctly calculated the amount of the A&E fees (which she did not), the Contracting Officer's $5,551,549 divided by the total estimated cost of all

---

resolved on summary judgment without agreement regarding applicability of the statute because, even if the statute were applicable and could be applied without the requisite statutory estimate, the "proper" calculation using numbers agreed to by both parties would demonstrate that Plaintiff's fees were within the six percent limitation). Plaintiff clearly does not, and has never, agreed that the statute applied to the contract. See Pl.'s App. 31, Decl. of James Wagner.

WFOs included in the 1992 Facilities Budget results in a percentage of 4.87 percent -- well below the six percent limitation.

Defendant does not contend that the Contracting Officer included the estimated costs of all 100 plus WFOs in her calculation of the six percent limitation. Indeed, the Contracting Officer's Final Decision explicitly states that the "denominator" in her calculation of the fee limitation includes a full estimate of construction costs for only 42 WFOs, and a partial estimate of construction costs for an additional 12 WFOs. See Compl. App. 1, at App. II, pp. 17-18; Pl.'s App. 10, Summary of Contracting Officer's Analysis of Incurred Costs at FDCO 1810-11. Rather, Defendant asserts only that "the contracting officer's final decision addressed the costs of all Weather Forecast Offices for which plaintiff, pursuant to the contract, performed A&E services that were subject to the six percent limitation . . ." Def.'s Br. at 23. There is no factual dispute that, in the Contracting Officer's view, less than 100 plus WFOs (54 WFOs to be precise) fit this description. The only dispute is whether, if the statute were to apply, it would be proper as a matter of law for the Contracting Officer to include fewer than the 100 plus WFOs in applying the statutory limitation.[11] See Def.'s Resp. to Pl.'s Proposed Finding No. 10 (admitting that that the project at the time of entering into the contract included construction of over 100 WFOs).

---

[11] To the extent that Defendant's motion characterizes this issue as one of contractual interpretation, it is not. See Def.'s Br. at 23 (citing cases regarding contractual interpretation). The issue of whether the statute required the Contracting Officer to include in the estimated cost of the project all WFOs contemplated by the parties when the contract was entered is purely an issue of statutory interpretation. Defendant does not, and cannot, allege that the project contemplated included anything less than the construction of over 100 WFOs. See Def.'s Resp. to Pl.'s Proposed Finding No. 10. Therefore, as explained above, Defendant's argument that it has provided sufficient evidence of disagreement to establish a disputed issue of material fact is erroneous.

When there is no dispute as to the material facts, and the parties request that the court interpret a statute and apply it to the undisputed facts, then the issue is one of law and is particularly appropriate for resolution through summary judgment. See Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995). Because the question before the Court is solely one of statutory interpretation, this issue is appropriate for summary judgment. For all the reasons set forth in Plaintiff's Motion for Summary Judgment, the Court should grant Plaintiff summary judgment.[12]

**CONCLUSION**

Based on the undisputed material facts, Plaintiff respectfully requests that the Court grant it summary judgment on Count I of Plaintiff's Complaint and deny Defendant's motion.

Respectfully submitted,

s/*Frank M. Rapoport*

FRANK M. RAPOPORT
STEPHEN E. RUSCUS
DAVID M. GLYNN
McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500

Attorneys for Plaintiff,
Fluor Enterprises, Inc.

Date: May 10, 2004

---

[12] The Court need not reach a decision regarding applicability of the statute if the Court upholds Plaintiff's position regarding inclusion of the 100 plus WFOs in the cost of the project. This is so because, even were the statute to apply, if all WFOs are included, it is undisputed that Plaintiff's costs would fall within the six percent limitation.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2004, the foregoing "PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S SUMMARY JUDGMENT MOTION AND RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/*Frank M. Rapoport*