IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FLUOR ENTERPRISES, INC<br>f/k/a FLUOR DANIEL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 00-207C<br>(Judge Block) |

PLAINTIFF'S RESPONSE TO DEFENDANT'S

PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff submits the following responses to Defendant's Proposed Findings of Uncontroverted Fact. Plaintiff's responses should neither be construed as agreeing with Defendant's characterizations of the documents cited by Defendant in support of its proposed findings, nor should they be construed as agreeing to all of the statements set forth in those documents.

1. The National Weather Service ("Weather Service") is an agency of the National Oceanic and Atmospheric Administration ("NOAA"), which is a part of the United Commerce ("Commerce"). App. 1.

Plaintiff's Response:

NOAA and, by extension NWS, are Congressionally created entities. As a matter of law, NOAA is an agency within the Department of Commerce. See Reorganization Plan No. 4 of 1970, 35 Fed. Reg. 15627 (1970). Plaintiff does not otherwise dispute this proposed finding for purposes of this motion.

2. In the mid-1980s, NOAA undertook a program to restructure and modernize the National Weather Service, including the application of new technologies to observe atmospheric conditions and process weather information. App. 2.

Plaintiff's Response:

Undisputed for purposes of this motion.

3. The new technologies that the Weather Service planned to utilize included the next generation weather radar ("NEXRAD"), which required the construction of radar sites throughout the United States. Id.

Plaintiff's Response:

Undisputed for purposes of this motion.

4. The modernization program also included the Weather Service consolidating its existing 249 weather offices into approximately 116 weather forecast offices ("WFO"), which were to be located near the planned NEXRAD sites. Id.

Plaintiff's Response:

Undisputed for purposes of this motion.

5. In 1986, NOAA issued a request for proposals ("RFP") that included providing architectural and engineering ("A&E") services for the designs of the WFOs, as well as project and construction management services during the construction of the WFOs. Id.

Plaintiff's Response:

Undisputed to the extent that the RFP referred to the provision of "architectural and engineering" services. However, disputed to the extent that the proposed finding suggests that the contract was a contract "for architect and engineering services" as contemplated by the statute. The contract was a highly complex level-of-effort contract pursuant to which Plaintiff was responsible for planning and management of virtually every aspect of the design and construction phase of the WFO program. See Pl.'s App. 18, OIG Audit Report No. NOA-4436-3-001 at 11, 14 (1993). As the original Contracting Officer stated early on in the contracting process, long before the initiation of this litigation, the contract was "to provide a small portion of architect-engineer design service [sic.]," Pl.'s App. 1 at G004709, with "most of the work in project and construction management," Pl.'s App. 2 at G004708; See also Pl.'s App. 31, Decl. of James Wagner, ¶3 ("A&E services were a minor part of the contract"); Pl.'s App. 21, Aff. of Kenneth W. Forsyth, ¶ 3. The fact is that the SOW required Plaintiff to expend hours towards numerous other tasks that far outweighed the A&E portion of the contract. For example, even in Section 2.3 of the SOW entitled "Site Specific Architecture and Engineering," only one of the ten subsections, Section 2.3.1, actually required the preparation of plans, designs, drawings or specification of individual WFO facilities. The remainder of the provisions in Section 2.3 required other tasks related to overall management of the WFO program. These services included conducting design reviews and preparing construction procurement documents (2.3.3), conducting site surveys (2.3.4), coordinating between the requirements of various government

agencies throughout the design and construction phase (2.3.5), provide real estate services (2.3.6), obtaining clearances from the FAA (2.3.7), assisting Defendant in procurement of construction services (2.3.8), construction management and inspection (2.3.9), and preparing applications for ordering telecommunications and utilities services for Defendant (2.3.10). The remainder of the SOW, Sections 2.1, 2.2, and 2.4, contained numerous other project management-related requirements.

6. After the period for submitting proposals ended, NOAA's Architect-Engineer Selection Board ranked the offerors, and, after price negotiations, plaintiff, Fluor Enterprises, Inc. ("Fluor") was determined to be the successful offeror. Id.

Plaintiff's Response:

Undisputed for purposes of this motion.

7. On or about July 29, 1986, the Government and Fluor entered into letter contract No. 5OWCNA606099 ("the contract"). App. 2, 41-52. The initial term of the letter contract was later extended to May 30, 1987. App. 2.

Plaintiff's Response:

Undisputed for purposes of this motion.

8. On or about May 30, 1987, the letter contract was definitized, which resulted in:

   a. The base period of performance being extended through September 30, 1987; and

   b. The Government having the right to exercise options for four additional one-year periods of performance.

App. 2.

Plaintiff's Response:

Undisputed for purposes of this motion.

9. After the Government exercised its right for all four option periods, the contract was extended through October 1992. App. 2-3.

Plaintiff's Response:

Undisputed for purposes of this motion.

10. Pursuant to the contract's statement of work, Fluor was to provide:

a. Program and project management and planning (Requirement 2.1);

b. General architectural and engineering services (Requirement 2.2);

c. Site-specific A&E services (Requirement 2.3); and

d. Construction management and inspection (Requirement 2.4).

App. 3, 48-51.

Plaintiff's Response:

Undisputed to the extent that Defendant has accurately reproduced some of the headings set forth in the SOW. However, disputed to the extent that the proposed finding implies that the contract was a contract "for architectural or engineering services" as contemplated by the statute. As set forth in Plaintiff's Response to No. 5, the contract awarded was not principally for A&E services and, rather, required Plaintiff to perform work related to the planning and management of virtually every aspect of the design and construction phase of the WFO program. See Pl.'s App. 18, OIG Audit Report No. NOA-4436-3-001 at 11, 14 (1993). The facts, with regard to the extent of the scope of the work, as concluded by the OIG in its 1993 Audit Report, are that the range of Plaintiff's activities extended to virtually every aspect of the WFO construction program including the establishment of program priorities and work requirements, establishment of estimated budgets, and the generation of yearly work plans upon which its own task orders were ultimately based. See Pl.'s App. 18, OIG Audit Report No. NOA-4436-3-001 (1993), pp. 11-14. Also See Plaintiff's Response to No. 5.

11. The Government paid Fluor a total of $42,531,626, of which $5,551,549 represented fees for performing A&E services related to the design of the WFOs. The $5,551,549 Fluor was paid was inclusive of its costs. App. 3, 12.

Plaintiff's Response:

Undisputed to the extent that Plaintiff was paid a total of $42,531,626. However, the proper determination of which services performed by Plaintiff would fall within the statutory limitation, presuming it even applies, and thus the fees for such services, is a question of law and, therefore, should not be included in Defendant's Proposed Findings of Uncontroverted Fact. See e.g., Exxon Research and Eng'g Co. v. United States, 265 F.3d 1371, 1376 (Fed. Cir. 2001).

12. Fluor knew, or should have known, that the six percent statutory limitation imposed by 41 U.S.C. § 254(b) upon fees, inclusive of costs, for A&E services, was applicable to that portion of the contract that required Fluor to provide WFO site specific designs. App. 53-56, 59-73.

Plaintiff's Response:

Disputed. The statutory limitation set forth in 41 U.S.C. § 254(b) is not applicable to level-of-effort program management contracts of the sort at issue here. Furthermore, even were the statute applicable to this type of contract, the statutory limitation is only applicable where the agency head prepares an estimated cost of the project at the time of entering into the contract. Applicability of the statute is purely a question of law and therefore should not be included in Defendant's Proposed Findings of Uncontroverted Fact. See e.g., Exxon Research and Eng'g Co., 265 F.3d at 1376. Indeed, this is the central legal issue before the Court in both Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion. Moreover, to the extent that this proposed finding of fact alleges that Plaintiff agreed that 41 U.S.C. § 254(b) applied to the contract at issue, Plaintiff disputes the proposed finding as it is clear that from the outset of the contract, neither Plaintiff, nor the Defendant, believed that the statute applied. See Pl.'s App. 12, 4/8/87 Letter from Jack Toliver FDI to Jesse Arredondo CO NOAA, G004447-48; Compl. App. 1 at p. 4; Pl.'s App. 31, Decl. of James Wagner. Indeed, even the Contracting Officer's Final Decision plainly shows that neither party believed that the statute applied at the outset of the contract, nor did they modify the contract at a later date to subject Fluor's fees to the statutory limitation. See Compl., App 1, pp. 4.

13. The Government issued task orders that required Fluor to perform work pursuant to the contract. App. 3. Each task order identified

a. The WFO for which site-specific A&E design services were to be performed pursuant to contract Requirement 2.3; and

b. The other A&E tasks to be performed during the task period.

App. 3,62-64.

<u>Plaintiff's Response:</u>

Undisputed for purposes of this motion.

14. During Fluor's performance of the contract, the Government issued a total of eight task orders. App. 3.

Plaintiff's Response:

Undisputed for purposes of this motion.

15. During Fluor's performance of the contract performance, Fluor internally tracked:

a. Site-specific A&E services costs by WFO site; and

b. Whether the fees charged, inclusive of the costs incurred for those A&E services, were no more than six percent of the estimated cost of construction, exclusive of the fee, for those sites.

App. 53-56, 59-73.

Plaintiff's Response:

Disputed except to the extent that Defendant alleges, in subsection (a), that Plaintiff kept track of the costs it was incurring for services rendered with respect to individual WFOs.

The facts are that in the Contracting Officer's Final Decision, Defendant acknowledged that neither party believed that the statutory limit applied to the contract from the outset. See Compl., App 1, p. 4. In 1990, prior to the issuance of Task Order 4, however, Defendant initiated discussions with Plaintiff regarding applicability of the statute. See Pl.'s App. 14; Def.'s App. p. 59; Pl.'s App. 30, 5/24/90 e-mail from Ron Anielak, COTR, to Jack Tolliver, FDI. It is clear from the context in which the 1990 meeting was initiated that Defendant was responding to criticism of its mishandling of the WFO program rendered by the OIG, which resulted in a report from the OIG that same year. See Pl.'s App. 13. As a result, the parties met and discussed whether the contract up to that point would be performed within the statutory limitation, were the statute applicable, and, going forward, decided to monitor performance against the limitation. See Pl.'s App. 31, Decl. of James Wagner; Pl.'s App. 15, 6/25/90 facsimile from FDI illustrating agreement from 6/12/90 meeting between FDI and NOAA. Applicability of the statute remains at issue to the present day. See Pl.'s App. 32, 10/3/90 letter from R.B. Campbell, FDI, to Max Entriken, SEPO; Pl.'s App. 31, Decl. of James Wagner.

16. During the discussions that the Government and Fluor conducted concerning the work to be performed during the fourth option period (fiscal year 1991), the Government and Fluor specifically discussed the application of the six percent fee limitation imposed by 41 U.S.C. § 254(b) upon the A&E services for the site specific designs. App. 4, 57, 59-63, 71-72.

Plaintiff's Response:

Undisputed subject to Plaintiff's Response to No. 15. Furthermore, while the proposed finding would be applicable to the question of whether the government would be estopped from denying the agreement reached in the 1990 meeting in a trial on the merits, it is irrelevant here. The sole question set forth in Defendant's Cross Motion for Summary Judgment is whether the statute is applicable to the contract between the parties, and this question is solely one of law.

17. On June 12, 1990, the Government and Fluor had a meeting during which the parties discussed the application of the six percent limitation upon A&E fees imposed by 41 U.S.C. § 254(b). App. 4, 59-63.

Plaintiff's Response:

Undisputed subject to Plaintiff's Response to Nos. 15-16.

18. At the June 12, 1990 meeting, Fluor's project manager distributed a document entitled "Price & Profit Limitations," that included:

a. Fluor's understanding of the applicability of the six percent fee limitation imposed by 41 U.S.C. § 254(b); and

b. The A&E services that Fluor believed were subject to the six percent limitation upon fees for A&E services.

App. 4, 59-63, 67.

Plaintiff's Response:

Disputed except to the extent that Plaintiff's project manager distributed a document entitled "Price & Profit Limitation" at the June 12, 1990 meeting. The referenced document did not address applicability of the statute. Rather, as noted in Plaintiff's Response to Nos. 15-16, the document, and the agreements reached in the June 12, 1990 meeting, initiated by Defendant, merely took the conservative view that if the statute were applicable, Plaintiff's costs up to that point, and its proposed costs going forward, would fall within the limitation. See Pl.'s App. 31, Decl. of James Wagner.

19. At the June 12, 1990 meeting, Fluor and the Government agreed that the six percent limitation upon fees for A&E services imposed by 41 U.S.C. § 254(b) was applicable to the contract. App. 4, 53-56, 59-73.

Plaintiff's Response:

Disputed. See Plaintiff's Response to Nos. 15-18.

20. Fluor and the Government did not execute a contract modification detailing the specific A&E services that were subject to six percent limitation upon A&E fees imposed by 41 U.S.C. § 254(b). App. 4.

Plaintiff's Response:

Disputed to the extent that Defendant is implying any agreement by Plaintiff that the contract was subject to the statutory limitation. See Plaintiff's Response to Nos. 15-18. Undisputed to the extent that the parties did not execute a contract modification whatsoever with regard to the discussions that occurred on, or about, June 12, 1990. Moreover, applicability of the statute is a question of law and should not be included in Defendant's Proposed Findings of Uncontroverted Fact. See e.g., Exxon Research and Eng'g Co., 265 F.3d at 1376.

21. On or about August 15, 1991, Fluor's project manager acknowledged that six percent fee limitation was applicable to the requirement that Fluor provide A&E services "required to produce the detailed site specific design [of the Weather Forecast Offices] within a budget of 6% of facility construction cost." App. 65.

<u>Plaintiff's Response:</u>

Disputed except to the extent that Defendant has accurately reproduced the quoted excerpt. The remainder is merely Defendant's characterization of the document. As explained in Plaintiff's Response to Nos. 15-18, Fluor did not acknowledge that the statute applied to the contract in the agreement reached between the parties preceding this e-mail. <u>See</u> Pl.'s App. 31, Decl. of James Wagner.

22. Throughout the course of contract performance, Fluor submitted invoices that the Government accepted and paid. App. 4.

Plaintiff's Response:

Undisputed for purposes of this motion.

23. The WFO modernization program was a long-term project and was not completed during the contract's period of performance. App. 4-5. To allow Fluor to continue with the construction program, Fluor was awarded an interim, "bridge" contract for the period November 1992 through December 31, 1993. App. 5.

Plaintiff's Response:

Disputed as to the use of the ambiguous term "bridge contract." The facts are that the contract was extended through October 31, 1992. After that, Defendant issued a letter contract to Plaintiff to continue the WFO support services until a new contract could be negotiated. See Pl.'s App. 18, OIG Audit Report No. NOA-4436-3-001 "Weather Forecast Office Construction Support Contract Needed Improved Management and Administration," p. FD000770. Otherwise undisputed for purposes of this motion.

24. Effective January 1, 1994, Fluor was awarded a third contract for the completion of the construction program. App. 5.

Plaintiff's Response:

Undisputed to the extent that Plaintiff was awarded a follow-on contract for the completion of the Weather Service modernization program. Disputed to the extent that it means anything else, as it is ambiguous.

25. As the contract was nearing conclusion, Commerce's Inspector General (IG) commenced an audit of costs that Fluor submitted to the Government for payment. Id.

Plaintiff's Response:

Undisputed to the extent that it refers to the audit that resulted in the OIG's March 1993 Report No. DEN-4613-3-0001.

26. In March 1993, the IG issued an interim audit report covering the period through April 30, 1992, i.e., through the completion of Task Order 7, in which the IG questioned a total $7,171,743 that the Government paid Fluor upon the grounds that:

a. The Government had overpaid Fluor $6,987,219 for A&E design services that were subject to the six percent limitation imposed upon such fees by 41 U.S.C. § 254(b); and

b. The Government had paid Fluor a total of $184,524 in miscellaneous unallowable costs.

App. 5.

Plaintiff's Response:

Undisputed for purposes of this motion.

27. Fluor was provided a copy of the interim audit report shortly after it was issued. Id.

Plaintiff's Response:

Undisputed for purposes of this motion.

28. In June 1993, Fluor responded to the IG's interim audit report, with a document entitled "Position Paper," in which Fluor acknowledged that the six percent limitation upon A&E design fees applied to the Contract. App. 66-73

Plaintiff's Response:

Undisputed that Plaintiff submitted a document entitled "Position Paper" in June 1993 that responded to the OIG's March 1993 Report No. DEN-4613-3-0001. However, Disputed to the extent that Defendant characterizes Plaintiff as having acknowledged applicability of the statute. See Pl.'s Responses to Nos. 15-18. The referenced document is a legal position paper addressing the method by which the OIG calculated whether Plaintiff's fees exceeded six percent of the estimated cost of the project, and not whether the statute applied to the contract.

29. On March 21, 1995, the IG issued a final audit report that covered the entire period of performance, including Task Order 8, in which the IG:

a. Again questioned the payment of A&E fees, inclusive of costs, that exceeded the six percent statutory fee limitation imposed by 41 U.S.C. § 254(b); and

b. Also determined that Fluor had been overpaid for costs relating to salaries, subcontract costs, travel costs, and indirect costs.

App. 6.

<u>Plaintiff's Response:</u>

Undisputed for purposes of this motion.

30. After issuance of the final IG audit, the contracting officer reviewed documentation provided by Fluor concerning its labor costs incurred for A&E services. Id.

Plaintiff's Response:

Undisputed for purposes of this motion.

31. Subsequently, there was a lengthy series of communications between Fluor and the contracting officer concerning issues raised in the IG audit. Id.

Plaintiff's Response:

Undisputed for purposes of this motion.

32. On April 13, 1999, the contracting officer issued her final decision demanding that Fluor repay the Government a total of $2,774,072, as follows:

a. The $2,560,413 in fees that the Government paid Fluor in excess of the six percent limitation imposed by 41 U.S.C. § 254; and

b. The $213,695 in unallowable costs that the Government paid Fluor for:

(1) duplicative labor charges,
(2) excess subcontractor costs,
(3) unallowable overhead, and
(4) unallowable indirect costs.

App. 6-7, 8-40.

<u>Plaintiff's Response:</u>

Undisputed for purposes of this motion.

33. Fluor filed its complaint with the Court on April 11, 2000, almost one year after the final decision was issued.

Plaintiff's Response:

Undisputed for purposes of this motion.

Respectfully submitted,

s/*Frank M. Rapoport*

FRANK M. RAPOPORT
STEPHEN E. RUSCUS
DAVID M. GLYNN
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500
Attorneys for Plaintiff,
Fluor Enterprises, Inc.

May 10, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2004, the foregoing "PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/*Frank M. Rapoport*