No. 00-207C
(Judge Block)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FLUOR ENTERPRISES, INC.
f/k/a FLUOR DANIEL, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Steven J. Abelson
STEVEN J. ABELSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 514-4325

Attorneys for Defendant

OF COUNSEL:

FRED KOPATICH
Attorney
Office of the General Counsel
Department of Commerce
14th & Constitution Ave, N.W.
Room 5893
Washington, D.C. 20230

July 9, 2004

**TABLE OF CONTENTS**

**PAGE(S)**

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Fluor Has Failed to Demonstrate That The Six Percent Limitation Imposed By 41 U.S.C. § 254(b) Did Not Apply To Fees For Architectural and Engineering Design Services That Fluor Provided The Government Pursuant To The Contract . . . . . . . . . . . . . . . . . . . . . 2

A. Fluor Has Failed To Establish That, Because The Contract Required Fluor To Perform Services That Were Not Subject To The Six Percent Limitation Imposed By 41 U.S.C. § 254(b), The Statutory Limitation Was Not Applicable To Any Of The Services Performed Pursuant To The Contract . . . . . . . 2

B. Fluor Has Failed To Establish That The Contract Requirement To Provide A&E Design Services Constituted A Minor Portion Of The Contract Or, Even If It Was, That Those A&E Design Services Were Not Subject To The Statutory Limitation . . . . . . . . . . . . . . 6

II. Fluor Has Failed To Establish That, Because The Government Did Not Calculate The Estimated Cost Of Construction Of The WFO's, The Six Percent Fee Limitation Imposed By 41 U.S.C. § 254(b) Is Not Applicable To The Contract And That Fluor Did Not Interpret The Contract As Being Subject To the Six Percent Limitation . . . . . . . . . . . . . . . . . . . . . 11

A. The Cost Of Construction Does Not Determine Applicability Of The Statute; However, The Six Percent Fee Limitation Applied To Fluor's Contract Was Calculated Using A Government Estimated Cost Of Construction . . . . . . . . . . . . . . . . . 11

B. Fluor's Contemporaneously Interpreted The Contract As Being Subject To The Six Percent Limitation . . . . . . . . . . . . . . 14

III. This Court Cannot Legislate . . . . . . . . . . . . . . 15

IV. The Ultimate Question of Fluor’s Liability To The Government Is Not Appropriate For Summary Judgment . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 19

**TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

Appeal of O'Neal Engineering, Inc., ASBCA No. 32013,
86-3 B.C.A. ¶ 19,114 . . . . . . . . . . . . . . . . . . . . 5

Babbitt v. Oglala Sioux Tribal Public Safety Department,
194 F.3d 1374 (Fed. Cir. 1999), cert. denied, 120 S. Ct.
2196 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 15

Beacon Construction Co. v. United States,
161 Ct. C 314 F.2d 501 (1963) . . . . . . . . . . . . . . . 13

Big Chief Drilling Company v. United States,
15 Cl. Ct. 295, 300 (1988) . . . . . . . . . . . . . . . . 18

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . 2

Defenders of Wildlife, Earth Island Institute v. Hogart,
330 F.3d 1358 (Fed. Cir. 2003) . . . . . . . . . . . . . . 4

General Engineering and Machine Works v. O'Keefe,
991 F.2d 775 (Fed. Cir. 1993),
citing De Matteo Construction Co. v. United
States, 600 F.2d 1384, 220 Ct. (1979) . . . . . . . . . . 8

George E. Newsom v. United States,
676 F.2d 647, 649 (Ct. Cl. 1982) . . . . . . . . . . . . . 13

Goodman Manufacturing, L.P. v. United States,
69 F.3d 505 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . 2

Iselin v. United States,
270 U.S. 245 (1926) . . . . . . . . . . . . . . . . . . . . 5

J.B. Steel, Inc. v. United States,
810 F.2d 1139 (Fed. Cir. 1987),
quoting, Fortec Constructors v. United
States, 760 F.2d 1288 (Fed. Cir. 1985) . . . . . . . . . . 13

Schaper Manufacturing Co. v.
U.S. International Trade Commission,
717 F.2d 1368 (Fed. Cir. 1983) . . . . . . . . . . . . . . 16

Solar Turbines International v. United States,
3 Cl. Ct. 489 (1983) . . . . . . . . . . . . . . . . . . . 13

**TABLE OF AUTHORITIES (cont'd)**

**CASES** **PAGE(S)**

Tilley Constructors & Engineers, Inc. v. United States,
15 Cl. Ct. 559, 566 (1988) . . . . . . . . . . . . . . . . . 13

West Virginia University Hospitals, Inc. v. Casey,
499 U.S. 83 (1991) . . . . . . . . . . . . . . . . . . . . 4, 5

**STATUTES and REGULATIONS**

41 U.S.C. § 254(b) . . . . . . . . . . . . . . . . . . . . . **Passim**

48 C.F.R. § 15.404-4(c)(4)(i)(B) . . . . . . . . . . . . . . . . 7

48 C.F.R. § 236.606 . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FLUOR ENTERPRISES, INC. f/k/a FLUOR DANIEL, INC., | ) | |
| Plaintiff, | ) | No. 00-207C |
| v. | ) | (Judge Block) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM

Defendant respectfully submits its reply to plaintiff's response to defendant's motion for summary judgment and supporting memorandum. In this reply, we establish that plaintiff's, Fluor Enterprises, Inc. ("Fluor"), response fails to demonstrate that the site-specific architectural and engineering ("A&E") services that Fluor provided the United States, pursuant to contract no. 50WCNA606099 ("the contract") were not subject to the six percent limitation imposed by 41 U.S.C. § 254(b). Thus, because there is no genuine issue of material fact that those A&E services were subject to the statutory fee limitation, the Government is entitled to summary judgment.

We also demonstrate in our reply that Fluor's response fails to establish that no genuine issue of material fact exists concerning the contracting officer's calculation of the six percent statutory fee, which resulted in the Government's demand and subsequent counterclaim. Accordingly, Fluor's motion for summary judgment should be denied in its entirety.

In support of our reply, we rely upon this brief, our cross-motion for summary judgment ("cross-motion") in this matter, defendant's reply to plaintiff's response to defendant's proposed

findings of uncontroverted fact, and the appendices previously filed with the Court.

ARGUMENT

I. Fluor Has Failed to Demonstrate That The Six Percent Limitation Imposed By 41 U.S.C. § 254(b) Did Not Apply To Fees For Architectural and Engineering Design Services That Fluor Provided The Government Pursuant To The Contract

A. Fluor Has Failed To Establish That, Because The Contract Required Fluor To Perform Services That Were Not Subject To The Six Percent Limitation Imposed By 41 U.S.C. § 254(b), The Statutory Limitation Was Not Applicable To Any Of The Services Performed Pursuant To The Contract

In its cross motion for summary judgment, we established that this Court can grant summary judgment upon the issue of whether the six percent limitation imposed by 41 U.S.C. § 254(b) was applicable to the fees paid Fluor for work performed pursuant to contract requirement 2.3, i.e., the site specific A&E design services. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the parties request that the Court interpret a statute and apply it to the agreed-upon facts, summary judgment is particularly appropriate. Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995).

There is no dispute concerning the material facts: (1) that the parties entered into a contract pursuant to which Fluor agreed to perform A&E services in connection with a Government public works project; (2) that Fluor provided site-specific A&E design work that, pursuant to contract requirement 2.1, included

construction cost estimates that were approved by the Government; and (3) that Fluor submitted invoices for the work and was paid pursuant to those invoices. DPFUF 10, 13; PRDPFUF 13; App. 41-53.[1/] However, in its response to the Government's cross-motion, Fluor spends considerable time and effort, as it did in its motion for summary judgment, attempting to narrow the application of 41 U.S.C. § 254(b). Fluor contends that the statute does not apply: (1) if A&E services performed were only a "minor" portion of work to be performed pursuant to the contract; (2) if the contract for A&E services are incrementally funded; (3) if the A&E services contract contains some level-of-effort aspects; and (4) if there are other services included other than A&E design services. Plaintiff's Reply 4-7. Fluor is wrong.

We established in our cross-motion that Congress specifically mandated that

> . . . in the case of a cost-plus-a-fixed-fee contract. . . that a fee inclusive of the contractor's costs and not in excess of 6 percent of the estimated cost, exclusive of fees, as determined by the agency head at the time of entering into the contract, of the project to which such fee is applicable is authorized in contracts for architectural or engineering services relating to any public works or utility project. . . .

[1/] "DPFUF___" refers to defendant's proposed findings of uncontroverted fact. "App.___" refers to defendant's appendix. "Brief___" refers to plaintiff's reply to defendant's response to plaintiff's summary judgment motion. "Pl Motion___" refers to plaintiff's motion for summary judgment. "PRDPFUF___" refers to plaintiff's response to defendant's proposed findings of uncontroverted fact.

41 U.S.C. § 254(b). Thus, Congress, clearly and unequivocally, stated that when the Federal Government awarded a cost-plus-fixed-fee contract for A&E services, it was prohibited from paying the contractor more than six percent of the estimated costs of construction for that project.

Fluor attempts to overcome this clear Congressional mandate by asking this Court to create exceptions to 41 U.S.C. § 254(b) that are completely contrary to its plain meaning and import. In order for Fluor to support this construction of the statute, it is incumbent upon Flour to make a clear showing of contrary intent by Congress. Defenders of Wildlife, Earth Island Institute v. Hogart, 330 F.3d 1358, 1367 (Fed. Cir. 2003). Instead, Fluor relies upon vague assertions, e.g., the application of the statute to the contract would be "unjust," "improper," or "produce an absurd result." Brief 2.

When called upon to interpret a statute, this Court's role, like that of other courts, is not to expand a statute's plain meaning in order to arrive at a "better disposition" of matters addressed in the enactment and cure any alleged "forgetfulness" upon the part of Congress. West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83, 101 (1991). Nonetheless, this is precisely what Fluor is doing in this case. Despite the fact that the statute's language is plain and unambiguous, Fluor asks the Court to exempt from the six percent limitation imposed by 41 U.S.C. § 254(b), any A&E services contract: (1) that are not exclusively, or principally for A&E services, i.e., A&E design

services;[2/] (2) that contain level of effort aspects; or (3) that are incrementally funded. Brief 4-7. Thus, what Fluor "asks is not a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted . . . may be included within its scope. To supply omissions transcends the judicial function." Iselin v. United States, 270 U.S. 245, 250-251 (1926). Consequently, because Congress did not include such exceptions, and the statute is plain and unambiguous, it would "transcend the judicial function," id., for this Court to read such broad exceptions into 41 U.S.C. § 254(b). See also West Virginia University Hospitals, 499 U.S. at 101.

In our cross-motion, we relied upon the Appeal of O'Neal Engineering, Inc., ASBCA No. 32013, 86-3 BCA ¶ 19,114, to demonstrate that the fact an A&E contractor, pursuant to its contract, performed services similar to those of contract requirement 2.3, as well as services that were not subject to the six percent fee limitation, did not exempt the A&E design services from the statutory six percent limitation. In its response, Fluor's attempts to distinguish O'Neal upon the grounds (1) that O'Neal was a constructive change case; and (2) that the application of the six percent limitation was not an issue. Brief 5-6. Nonetheless, the board made the specific finding that "to the extent that the A/E's contract '. . . also covers any

---

[2/] In its motion for summary judgment, Fluor specifically stated that the term "A&E services means "the production of plans, designs, drawings and specifications." Pl Motion 18. The Government agrees.

type services other than the preparation of designs, plans, drawings and specifications, [i.e., the so-called 'direct design services]' that part of the contract price for such other services was not be subject to the six percent limitation." Id. (brackets in original). Consequently, when an A&E contract, like Fluor's contract, provides for both "direct design services," i.e., services similar to those of contract requirement 2.3, and other type of services, O'Neal confirms: (1) that the fee for direct design services are not exempt from the six percent limitation; and (2) that the other services are not subject to the limitation. Accordingly, as far as the limitation imposed by 41 U.S.C. § 254(b) is concerned, the fact that Fluor's contract directed Fluor to perform contract requirement 2.3 in conjunction with other types of services is of no consequence.

B. Fluor Has Failed To Establish That The Contract Requirement To Provide A&E Design Services Constituted A Minor Portion Of The Contract Or, Even If It Was, That Those A&E Design Services Were Not Subject To The Statutory Limitation

Fluor argues that it was the clear intent of Congress to have the six percent limitation apply only to those A&E contracts pursuant to which a contractor only performed, or primarily performed, the services Fluor provided pursuant to contract requirement 2.3. Brief 4-7. Fluor's theory has no basis in fact or law.

It is undisputed that, of the $42 million the Government paid Fluor, $5.5 million was paid for performing the site-specific A&E design services in accordance with contract

requirement 2.3. DPFUF 11; App. 3, 12. Thus, even if there was some merit to Fluor's argument concerning the proportion of design services to other work, it strains credulity for Fluor to contend that $5.5 million of the taxpayers' money, or 13 percent of the total paid Fluor, is an insignificant, or "minor," portion of the contract.

More importantly, as we established in our cross-motion, the Federal Acquisition Regulations ("FAR") provision implementing 41 U.S.C. § 254(b) provides in pertinent part that:

> For architect-engineer services for public works or utilities, <u>the contract price or the estimated cost and fee for production and delivery of designs, plans, drawings, and specifications shall not exceed 6 percent</u> of the estimated cost of construction of the public work or utility, excluding fees.

48 C.F.R. § 15.404-4(c)(4)(i)(B) (emphasis supplied).[3/] Thus, the FAR explicitly articulates that the portion of an A&E contract requiring the "production and delivery of designs, plans, drawings and specifications," <u>id.</u>, which are services Fluor provided pursuant to contract requirement 2.3, are subject to the six percent limitation. There is absolutely no mention of the proportion of that work to the rest of the contract. "Federal regulations which are based upon a grant of statutory authority 'have the force and effect of law, and, if they are applicable, they must be deemed terms of the contract even if not specifically set out therein, knowledge of which is charged to

---

[3/] There is no dispute that Fluor's contract was subject to the FAR.

the contractor.'" General Engineering and Machine Works v. O'Keefe, 991 F.2d 775, 780 (Fed. Cir. 1993), citing De Matteo Constr. Co. v. United States, 600 F.2d 1384, 1391, 220 Ct. Cl. 579 (1979). Consequently, pursuant to regulation, contract requirement 2.3, whether or not it constituted a majority or minority of the total work Fluor performed, was not exempt from the limitation imposed by 41 U.S.C. § 254(b).

The Department of Defense's FAR supplement ("DFARS") makes it even more apparent that Fluor's theory is totally opposite of what Congress intended. The DFARS provides in pertinent part, that:

> The six percent limit applies only to that portion of the contract (or modification) price attributable to the preparation of designs, plans, drawings, and specifications. If a contract or modification also includes other services, the part of the price attributable to the other services is not subject to the six percent limit.

48 C.F.R. § 236.606 (emphasis supplied); App. 74. This provision unambiguously states that not only can an A&E contractor, pursuant to its contract, be required to perform services that are either subject to the limitation, and services not subject to the limitation, but that there is no exemption from the six percent limitation because the A&E design services may not constitute a majority of the work the contractor will perform.

Rather than discussing the FAR and DFARS provisions, Fluor, relying upon a pamphlet and a declaration, Pl. Appx 21, 25, asserts that the United States Army Corps of Engineers ("Corps")

"does not consider design-build contracts, of which A&E services also constitute a minor portion, to be contracts for A&E services subject to the six percent statutory limitation." Brief 7. However, Fluor (1) has never contended its contract was a design-build contract; and (2) does not define what constitutes a design-build contract. Further, a review of the Corps's pamphlet reveals that the paragraph, which is entitled "Statutory Limitation," does not use the term "minor." To the contrary, the paragraph specifically mandates that: "The 6 percent statutory limitation does not apply to a design-build contract, but does apply to an A-E contract for developing a design-build solicitation." Pl. App. 25 at 4-7 (emphasis supplied). Thus, Fluor's own evidence demonstrates: (1) that no matter what the ratio is for design versus construction, the six percent fee limitation does not apply to a design-build contract, and (2) without making any reference to whether the services provided are major or minor, that if a "portion of the contract price for A-E services [is] for the preparation of design, plans, drawings and specifications," that portion "may not exceed 6 percent of the [estimated construction costs]." Id. (emphasis supplied).

The Corps's FAR supplement, App. 75, which Fluor chooses to ignore, is further evidence that Fluor's contention is totally without merit. This FAR supplement lists fourteen types of services that may be included in an A&E contract that contains work subject to the statute, but which "may be excluded from the A-E fee when determining compliance with [the fee limitation]."

Id. Further, the Corps's regulation does not exempt the preparation of designs, plans and specifications from the statutory limitation even if providing those services is not the primary requirement of the contract. Id.

Based upon all of the above, an A&E contract can require the contractor to provide services that may, or may not, be subject to the six percent limitation. Fluor's contract required Fluor to perform discrete and well-defined tasks relating to the WFO modernization. DPFUF 10, 13; App. 41-53. Pursuant to contract requirement 2.3, those tasks included Fluor providing the Government with plans, designs, specifications, and, pursuant to contract requirement 2.1, construction cost estimates for specific WFO sites. These services (1) were subject to 41 U.S.C. § 254(b), (2) are the services for which the Government overpaid; and (3) are the basis for the Government's counterclaim. Consequently, for all of these reasons discussed in this reply brief, as well as the reasons set out in our cross-motion, contract requirement 2.3 was not exempt from the six percent fee limitation imposed by 41 U.S.C. § 254(b) because Fluor's performance of contract requirement 2.3 (1) was combined with other services; and (2) may not have constituted a majority of the work performed pursuant to the contract. Accordingly, there is no genuine issue of material fact that 41 U.S.C. § 254(b) applied to the A&E design services Fluor performed pursuant to contract requirement 2.3, and the Government is entitled to summary judgment upon that issue.

## II. Fluor Has Failed To Establish That, Because The Government Did Not Calculate The Estimated Cost Of Construction Of The WFO's, The Six Percent Fee Limitation Imposed By 41 U.S.C. § 254(b) Is Not Applicable To The Contract And That Fluor Did Not Interpret The Contract As Being Subject To the Six Percent Limitation

### A. The Cost Of Construction Does Not Determine Applicability Of The Statute; However, The Six Percent Fee Limitation Applied To Fluor's Contract Was Calculated Using A Government Estimated Cost Of Construction

As it did in its motion for summary judgment, Fluor argues that, even if the type of contract awarded Fluor did not exempt Fluor from the limitation imposed by 41 U.S.C. § 254(b), Fluor's contract was still not subject to the statute because (1) the limitation is based upon six percent of "the estimated cost, exclusive of fees, as determined by the agency head at the time of entering into the contract, of the project to which such fee is applicable," id.; and (2) the agency head did not determine the costs of the project prior to awarding the contract." Brief 7-10. This argument is still without merit.

The cost of construction language in the statute is not the grounds upon which it is determined whether the fee limitation applies. To the contrary, the statute clearly states that the fee limitation "is authorized in contracts for architectural or engineering services relating to any public works or utility project." 41 U.S.C. § 254(b). The reference to a Government estimated cost of construction is for the purposes of calculating the fee.

Taken to its logical conclusion, Fluor's contention would prevent an A&E contract from ever being modified. However, the DFARS specifically provides that the fee limitation applies to contract modifications for "work not initially included in the contract. Apply the six percent to the revised total estimated cost of construction. . . ." App. 74. The provision also makes the fee limitation applicable to redesign efforts. Id.

We established in our cross-motion that, pursuant to contract requirement 2.1, a critical requirement of the contract, and each task order, was that Fluor prepare construction cost estimates for the Government, which were then reviewed and accepted by the Government before Fluor commenced design work on individual office sites. App. 3, 44. Thus, once the Government accepted Fluor's cost of construction, that became the Government's estimate. It is undisputed that it was that estimate upon which the six percent limitation was based. Consequently, even if there is some merit to Fluor's contention that the Government could not delegate estimating the cost of construction to Fluor, when the Government reviewed and accepted Fluor's estimated cost of construction for each WFO, that estimate became the Government's estimated cost of construction upon which the six percent fee limitation was computed.

As discussed in greater detail in Section B below, Fluor, at the time it entered the contract, was fully aware that the services performed pursuant to contract requirement 2.3 were subject to the six percent limitation. App. 66-73. Obviously,

at the time Fluor entered the contract, there were no cost estimates. Thus, based upon Fluor's theory, there was a patent ambiguity in the contract.

A patent ambiguity giving rise to a contractor's duty to make an inquiry has been defined as "an obvious omission, inconsistency, or discrepancy of significance." Beacon Construction Co. v. United States, 161 Ct. Cl. 1, 314 F.2d 501, 504 (1963); Tilley Constructors & Engineers, Inc. v. United States, 15 Cl. Ct. 559, 566 (1988). Where such an ambiguity exists, it triggers the contractor's "'duty of inquiry, regardless of the reasonableness of the contractor's interpretation'" of the contract. J.B. Steel, Inc. v. United States, 810 F.2d 1139, 1141 (Fed. Cir. 1987), quoting, Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed. Cir. 1985). Various criteria may be relevant in determining whether a particular alleged ambiguity gives rise to a duty to inquire, but when a contractor's interpretation cannot be reconciled with the clear meaning of other portions of the contract, a duty to inquire arises. Solar Turbines International v. United States, 3 Cl. Ct. 489 (1983); see also George E. Newsom v. United States, 676 F.2d 647, 649 (Ct. Cl. 1982) (when there is patent ambiguity in a contract, the contractor has a duty to inquire of the contracting officer the true meaning of the contract). Of course, Fluor never inquired concerning the fact there was no estimated cost of construction because Fluor was fully aware that, pursuant to contract requirement 2.3, it would submit cost

estimates to the Government for the Government's approval and that the six percent limitation for the design services would be based upon those estimated costs.

For all of these reasons, the fact that there were no estimated costs of construction at the time the contract was awarded does not exempt Fluor from the limitation imposed by 41 U.S.C. § 254(b). Therefore, the Government is entitled to summary judgment.

B. Fluor's Contemporaneously Interpreted The Contract As Being Subject To The Six Percent Limitation

In its response, Fluor attempts to overcome the fact that the position Fluor now takes is the polar opposite of its position during contract performance. Brief 10-12. At that time, Fluor consistently communicated to the Government, and to its own employees, that 41 U.S.C. § 254(b) applied to the contract, and its design costs could be tracked to determine compliance with the statute. App. 65-73. Fluor's statements made when the issue of the six percent fee limitation was raised are especially enlightening. For example, Fluor made it clear that:

> In the Spring of 1990, as part of their negotiations for Option Year Four (FY91), NOAA and <u>FDI elected to formalize their understanding and practice as to how the statutory fee limitation [of 41 U.S.C. § 254(b)] had been and would continue to be applied.</u>

App. 67 (emphasis supplied). Fluor also stated that:

> Project records do not show earlier consideration of the issue of included and excluded services [subject to the six percent statutory limitation] <u>because substantive A/E</u>

> design was not the focus of FDI's work during the first two years of the Contract. In fact, FDI's A/E design effort on this project was not fully under way until Option Year Four (FY91). . . . The fee limitation issue became a focus of attention only when program definition was relatively complete, so that substantive A/E design could start in earnest and become a substantial component of FDI's scope of work. FY91 marked this transition in the Contract. The [statutory] limitation issue was recognized and addressed prior to that time, but was not fully articulated until the Option Four negotiations in 1990 because the work did not require it.

App. 71-72 (emphasis supplied).

Despite these clear and unequivocal statements, Fluor, almost 11 years later, attempts to qualify what it meant by these statements. Nonetheless, Fluor's statements, made contemporaneously with actual contract performance, are a testament to Fluor's understanding that 41 U.S.C. § 254(b) was applicable to certain portions of the contract.

III. This Court Cannot Legislate

By requesting this Court to expand the clear meaning of 41 U.S.C. § 254(b), and, therefore, find that the statute did not apply to Fluor's A&E design services, Fluor is inviting this Court to legislate. However, it is axiomatic that all courts, including this Court, "do not legislate but only interpret the laws that are enacted by the legislature." Babbitt v. Oglala Sioux Tribal Public Safety Dept., 194 F.3d 1374, 1382 (Fed. Cir. 1999), cert. denied 120 S. Ct. 2196 (2000). Indeed, in a case similar to Fluor's request that this Court narrow the applicability of the of 41 U.S.C. § 254(b), the United States Court of Appeals for the Federal Circuit ruled that:

> As the statute now stands, Congress did not mean to protect American importers (like Schaper) who cause the imported item to be produced for them abroad and engage in relatively small nonpromotional and non-financing activities in this country--i.e., they engage in design and a small amount of inspection and packaging in this country. If, as appellants suggest, present-day "economic realities" call for a broader definition to protect American interests (apparently including many of today's importers) it is for Congress, not the courts or the Commission, to legislate that policy.

Schaper Manufacturing Co. v. U.S. International Trade Commission, 717 F.2d 1368, 1373 (Fed. Cir. 1983) (emphasis supplied) (footnote omitted). Accordingly, if there should be exceptions to the six percent limitation, "it is for Congress, not the courts . . ., to legislate that policy." Id.

In order for this Court to exempt Fluor's A&E design services from the six percent limitation imposed by 41 U.S.C. § 254(b), the Court would have to rewrite the statute, i.e., legislate. This the Court cannot do and, as a result, the Government is entitled to summary judgment.

## IV. The Ultimate Question Of Fluor's Liability To The Government Is Not Appropriate for Summary Judgment

Despite the utter lack of evidence before this Court, Fluor argues that, if the Court finds that 41 U.S.C. § 254(b) applies to the contract, the Court should grant it summary judgment upon the issue of quantum. Brief 13-15. Ultimately, the question for this Court may be whether Fluor, in invoices submitted to the Government, correctly calculated the design fees it was owed. However, as discussed in our cross-motion, and below, there are

genuine issues of material fact as to how much Fluor was owed and the Government's overpayment to Fluor.

Fluor notes that the entire Weather Forecast Office modernization project involved the design and construction of over 100 Weather Forecast Offices. Fluor contends that its site-specific design costs for the contract at issue in this case--only the first of three contracts to provide design services--were therefore to be limited to six percent of the construction cost for all 100-plus forecast offices. Brief 13-14. This argument ignores the substance of the contracting officer's final decision and is plainly incorrect.

The contract did not require Fluor to complete design work for all forecast offices. As Fluor concedes, the contracting officer only addressed site-specific design work for the 54 forecast offices that Fluor completed or began pursuant to the contract. Brief 14. Site-specific design work for the remaining offices was performed pursuant to two contracts that were awarded subsequently to Fluor. DPFUP 23-24. Fluor appears to be taking the position that compliance with the six percent limitation should only be measured by considering design work for *all* 100 forecast offices, yet this work spanned all three contracts. Logically, then, site-specific design work performed by Fluor under the subsequent contracts would have to be included in the six percent calculation, in addition to the design costs in the initial contract. Thus, Fluor would like the calculation's denominator to include the cost of construction for all offices that were designed pursuant to all three contracts, but it only

wants the numerator to include design work performed under the first contract. This is clearly an absurd result.

By asserting that it disagrees with the contracting officer's method of determining liability, and her findings concerning quantum, Fluor has raised a genuine issue of material fact–if Fluor was overpaid, how is the amount of its liability to be calculated. Even if the Court could determine that the estimated cost of construction of all forecast offices is the proper baseline for the denominator, genuine issues of material fact still exist concerning the calculation of the numerator. Because there is no evidence before the Court upon this issue, summary judgment is not appropriate.

In sum, outstanding issues of fact include the method for calculating compliance with the statutory limitation, the number and identity of forecast offices that should be included in the six percent calculation, the estimated cost of construction that will comprise the denominator, and the calculation of the numerator. The clear absence of consensus on all material issues of fact prevents entry of summary judgment upon the issue of quantum. Big Chief Drilling Company v. United States, 15 Cl. Ct. 295, 300 (1988). Thus, summary judgment is appropriate only upon the issue of applicability of 41 U.S.C. § 254(b) to the contract.

CONCLUSION

Based upon all of the above, defendant respectfully requests that the Court grant defendant summary judgment upon the issue of the applicability of 41 U.S.C. § 254(b) to the contract between the parties, and deny Fluor's motion for summary judgment in its entirety.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Steven J. Abelson
STEVEN J. ABELSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 514-4325

Attorneys for Defendant

OF COUNSEL:

FRED KOPATICH
Attorney
Office of the General Counsel
Department of Commerce
14th & Constitution Ave, N.W.
Room 5893
Washington, D.C. 20230

July 9, 2004

CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2004, the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT’S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Steven J. Abelson