# In The United States Court of Federal Claims

**No: 00-207C**

October 29, 2004

**FLUOR ENTERPRISES, INC.**
**f/k/a FLUOR DANIEL, INC.,**

***Plaintiff*,**

**v.**

**THE UNITED STATES OF AMERICA,**

***Defendant*.**

## ORDER MEMORIALIZING HEARING AND SETTING DEADLINES FOR SUPPLEMENTAL BRIEFING

A hearing was held on October 28, 2004 regarding the parties' cross-motions for partial summary judgment. Pursuant to discussion, and for reasons given during the hearing (and which will be reflected in the transcript), it is ORDERED that the parties shall file supplemental briefing specifically addressing the issues listed below, with plaintiff filing its supplemental brief by Friday, November 19, 2004, and defendant filing its response thereto by Friday, December 10, 2004. No other responses shall be filed.

**Issues to be addressed by both parties:**

1. Defendant alleges that, pursuant to contract provision 2.1.3 (*see* Compl. Ex. 9 at 10), plaintiff was obligated to "prepare cost estimates for construction contract packages prepared under this contract." Is there any evidence in the record of specific estimates conducted by plaintiff under this contract provision? If so, on what dates were these estimates provided by plaintiff, to which specific facilities were they addressed, and what were the actual estimates? Which individuals at the Department of Commerce and/or the National Oceanic and Atmospheric Administration received, reviewed and approved these estimates? Is there evidence in the record to support these conclusions?

2. The Contracting Officer's final decision was calculated using an estimated cost of construction (ECC) based on the "March 1992 WFO Facilities Budget" (*see* Compl. Ex. 1 at 28). The March 1992 WFO Facilities Budget itself indicates that the report included both estimated costs for some facilities and actual construction costs for others. Explain in detail the figures included in this report, including which individual facility figures were based on actual construction costs. For those figures that represent forward-looking construction estimates (and not actual costs), when were specific estimates conducted, and at what time were those estimates reviewed by the defendant?

3. Defendant contends that the estimates upon which the six-percent limitation was calculated were actually conducted by plaintiff on an ongoing basis and later adopted by defendant. Where in the record do the facts of this case support that contention? Does this contention fit with the law, particularly the provisions in 41 U.S.C. § 254(b) that prohibit cost-plus-percentage-of-cost contracts and require an estimate for A&E contracts to be established "by the agency head"?

4. Both parties have submitted interpretations regarding A/E contracts rendered by federal agencies other than the Department of Commerce and the National Oceanic and Atmospheric Administration. Should the court give deference to these interpretations? *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *United States v. Mead Corp.*, 533 U.S. 218 (2001). If so, to what extent?

5. Assume, for the purposes of this response only, that the court concludes that the plain meaning of § 254(b) requires a project estimate to be in place "at the time of entering into the contract" (*see* 41 U.S.C. § 254(b)), *i.e.*, that a project estimate was required of defendant when this contract was initially entered into in 1986.
   (a) What are the implications for this contract, vis-a-vis the § 254(b) six-percent limitation, of the apparent fact that no such estimate was performed by either party in a timely fashion?
   (b) Is the six-percent limitation therefore not applicable to this particular contract?
   (c) Alternatively, is this contract *ultra vires*?
   (d) Alternatively, should the court overlook this requirement and impose the six-percent limitation based on some other estimate that was established after "the time of entering into the contract"?

6. Assume, for the purpose of this response only, that the court concludes the portion of the contract dealing with A/E services is *ultra vires*. What would be the consequences with respect to this contract? How can the court calculate recovery given that project estimates were not in place "at the time of entering into the contract" (*see* 41 U.S.C. § 254(b))? *See Yosemite Park & Curry Co. v. United States*, 582 F.2d 552 (Ct. Cl. 1978).

7. Are there other federal agencies that employ the level-of-effort cost-plus-fixed-fee procurement for A/E services? Assuming, for the purpose of this response only, that the contract fails in whole or in part under § 254(b) because it is *ultra vires*, what would be the implications for other federal agencies' A/E procurements?

s/ *Lawrence J. Block*

**Lawrence J. Block**
**Judge**