No. 00-207C
JUDGE BLOCK

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FLUOR ENTERPRISES, INC.
f/k/a FLUOR DANIEL, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S SUPPLEMENTAL BRIEF FILED IN RESPONSE TO THE COURT'S OCTOBER 29, 2004 ORDER

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

STEVEN J. ABELSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 514-4325

Attorneys for Defendant

OF COUNSEL:

FRED KOPATICH
Attorney
Office of the General Counsel
Department of Commerce
14th & Constitution Ave, N.W.
Room 5893
Washington, D.C. 20230

January 14, 2005

**TABLE OF CONTENTS**


**PAGE**

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Defendant's Responses To The Court's Questions . . . . . . . 3

A. Question No. 1 And Defendant's Response . . . . . . . . 3

1. Question No. 1 . . . . . . . . . . . . . . . . . . . 3

2. Defendant's Response To Question No. 1 . . . . . . 3

B. Question No. 2 And Defendant's Response . . . . . . . . 6

1. Question No. 2 . . . . . . . . . . . . . . . . . 6

2. Defendant's Response To Question No. 2 . . . . . . 6

C. Question No. 3 And Defendant's Response . . . . . . . . 8

1. Question No. 3 . . . . . . . . . . . . . . . . . . . 8

2. Defendant's Response To Question No. 3 . . . . . . 8

D. Question No. 4 And Defendant's Response . . . . . . . 10

1. Question No. 4 . . . . . . . . . . . . . . . . . . 10

2. Defendant's Response To Question No. 4 . . . . . 11

F. Questions Nos. 5 And 6 And Defendant's Responses . . . . . . . . . . . . . . . . . . . . . 16

1. Question No. 5 . . . . . . . . . . . . . . 16

2. Question No. 6 . . . . . . . . . . . . . . 16

3. Defendant's Responses To Questions Nos. 5 And 6 . . . . . . . . . . . . . . . 17

G. Question No. 7 And Defendant's Response . . . . . . . 22

1. Question No. 7 . . . . . . . . . . . . . . . . . . 22

2. Defendant's Response To Question No. 7 . . . 22

CONCLSUION . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**CASE** **PAGE(S)**

Chevron U.S.A. v. Natural Resources Defense Council, et al.,
467 U.S. 837 (1984) . . . . . . . . . . . . . . 11, 12, 14, 15

De Matteo Construction Co. v. United States,
600 F.2d 1384, 220 Ct. Cl. 579 (1979)) . . . . . . . . . . 14

General Engineering and Machine Works v. O'Keefe,
991 F.2d 775 (Fed. Cir. 1993) . . . . . . . . . . . . . . . 14

Jackson v. United States,
573 F.2d 1189, 216 Ct. Cl. 25 (1978) . . . . . . . . . . . 19

Ralph L. Jones, Co. v. United States,
33 Fed. Cl. 327 (1995) . . . . . . . . . . . . . . . . . . 10

Skidmore v. Swift & Co.,
323 U.S. 134 (1944) . . . . . . . . . . . . . . . . . 11, 12

United States v. Mead Corp.,
533 U.S. 218 (2001) . . . . . . . . . . . . . . 11, 12, 14, 15

Urban Data Systems, Inc. v. United States,
699 F.2d 1147 (Fed. Cir. 1983) . . . . . . . . . . . . . . 10

Yosemite Park & Curry Co. v. United States,
582 F.2d 552 (Ct. Cl. 1978) . . . . . . . . . . . . . PASSIM

## STATUTES AND REGULATIONS

10 U.S.C. § 2306(d) . . . . . . . . . . . . . . . . . . . . . . 13

41 U.S.C. § 254(b) . . . . . . . . . . . . . . . . . . . . PASSIM

41 U.S.C. § 252(a) . . . . . . . . . . . . . . . . . . . . . . 17

48 C.F.R. § 15.404-4(c)(4)(i)(B) . . . . . . . . . . . . . . . 13

48 C.F.R. § 15.903(d)(1)(ii) (1997) . . . . . . . . . . . . . 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FLUOR ENTERPRISES, INC. f/k/a FLUOR DANIEL, INC., | ) | |
| Plaintiff, | ) | No. 00-207C |
| v. | ) | (Judge Block) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF FILED
IN RESPONSE TO THE COURT'S OCTOBER 29, 2004 ORDER

## I. Introduction

Pursuant to the Court's October 29, 2004 order, defendant respectfully submits its supplemental brief. In this brief, the Government responds to the six questions posed by the Court in the October 29, 2004 order.

In our cross-motion for summary judgment, opposition to plaintiff's motion for summary judgment, and reply brief, the Government clearly established that there are no exceptions to the mandate of 41 U.S.C. § 254(b) that the Government cannot pay an architecture and engineering ("A&E") contractor more than six percent of the estimated construction costs of the project for which the contractor is providing designs. We demonstrated that the site-specific A&E services that plaintiff, Fluor Enterprises, Inc. ("Fluor") provided the Government pursuant to contract no. 50WCNA606099 ("the contract"), thus, were subject to the this six percent fee limitation.

The Government also established that Fluor's attempt to create exceptions to the statute is a recent development. Indeed, Fluor, contemporaneously with the performance of the

contract:(1) knew that 41 U.S.C. § 254(b) was applicable to the site specific design services Fluor provided pursuant to the contract; and (2) specifically monitored its performance of the site specific design services to ensure compliance with the six percent fee limitation.

The Government agrees that, at the time of contract award, there was no estimate of construction. Nonetheless, that is of no consequence upon the question of the applicability of the six percent fee limitation to the site specific design services. We establish below, in our responses to the Court's questions, that the estimated cost of construction merely provides the methodology for calculating the fee to be paid the contractor. There are genuine issues of material fact concerning the amount the Government paid Fluor for the site specific designs. Thus, the only issue upon which this Court can grant summary judgment is whether the six percent fee limitation applied to the site specific design services Fluor provided pursuant to the contract.

We further demonstrate below in response to the Court's questions, as we did in our previous briefs, that there is no genuine issue of material fact that, even if there was no estimated cost of construction at the time of contract award, these site specific A&E design services were subject the six percent fee limitation imposed by 41 U.S.C. § 254(b). Accordingly, the Court should deny Fluor's motion for summary judgment and grant the Government's cross-motion for summary judgment.

II. Defendant's Responses To The Court's Questions

Defendant respectfully submits its responses to the questions posed by the Court in its October 29, 2004 order. Defendant responds as follows:

A. Question No. 1 And Defendant's Response

1. Question No. 1

Defendant alleges that, pursuant to contract provision 2.1.3 (see Compl. Ex. 9 at 10), plaintiff was obligated to "prepare cost estimates for construction contract packages prepared under this contract." Is there any evidence in the record of specific estimates conducted by plaintiff under this contract provision? If so, on what dates were these estimates provided by plaintiff, to which specific facilities were they addressed, and what were the actual estimates? Which individuals at the Department of Commerce and/or the National Oceanic and Atmospheric Administration received, reviewed and approved these estimates? Is there evidence in the record to support these conclusions?

2. Defendant's Response To Question No. 1

It is undisputed that, pursuant to Section 2.1.3 of the contract, Fluor provided the Government with an estimated cost of construction in the construction contract package for each individual Weather Forecast Office ("WFO"). These cost estimates were to be included in management reports and compared to actual

costs throughout the life of the contract. Compl. Ex. 9 at 10.[1/] To the best of the Government's knowledge, the construction cost estimates were submitted to the National Oceanic and Atmospheric Administration ("NOAA") Joint System Program Office as part of individual WFO construction packages. See App. 13.

The evidence of record does not contain the actual cost estimates that Fluor provided in each site-specific construction contract package. However, Fluor specifically alleged that it "successfully performed the contract, providing valuable and necessary services. The agency ordered and accepted all such services." Pl Motion 2. Thus, it is undisputed that Fluor successfully met the contract requirements, which included providing the Government cost estimates of construction pursuant to contract section 2.1.3.

Also, there is other evidence of record that Fluor provided construction cost estimates throughout the course of the contract. This evidence includes, but is not necessarily limited to:

a. Contracting Officer's Negotiation Memorandum stating that construction packages for WFOs shall include cost estimates, Pl App. 1, p. 4;

b. Fluor's program review of May, 1988, with fiscal year 1988 WFO construction cost estimates, App. 56;

---

[1/] "Compl Ex___" refers to exhibits to plaintiff's complaint. "Pl Motion___" refers to plaintiff's motion for summary judgment. "Def Cross-Motion___" refers to defendant's cross motion for summary judgment. "App___" refers to defendant's appendix. "Pl App___" refers to plaintiff's appendix.

c. The submission of construction cost estimates for individual WFOs for Task Order 6, App. 63-63;

d. The Statement of Fluor's project manager that application of 41 U.S.C. § 254(b) was not appropriate until 1990; at that point, the parties agreed on what cost estimates applied to the statute, App. 70; and

e. The contracting officer's final decision which establishes how she calculated the estimated cost of construction for purposes of applying the fee limitation imposed by 41 U.S.C. § 254(b). App. 37-40.

Section 254(b), Title 41, United States Code, provides in pertinent part that:

> . . . a fee inclusive of the contractor's costs and not in excess of 6 percent of the estimated cost, exclusive of fees, as determined by the agency head at the time of entering into the contract, of the project to which such fee is applicable is authorized in contracts for architectural or engineering services relating to any public works or utility project.

(emphasis supplied). Thus, pursuant to the statute's plain and unambiguous language, the estimated cost of construction is only material in determining the allowable compensation that an A&E contractor will be paid, not whether the six percent fee limitation is applicable. Therefore, the six percent limitation applies regardless of whether there are estimated costs of construction calculated at the time of contract award.[2/]

---

[2/] We established in our previous briefs that if Fluor believed that those costs were necessary for Fluor to enter into the

Accordingly, the fact there were no cost estimates provided by the head of the agency does not exempt Fluor from the six percent fee limitation.

B. Question No. 2 And Defendant's Response

1. Question No. 2

The Contracting Officer's final decision was calculated using an estimated cost of construction (ECC) based on the "March 1992 WFO Facilities Budget" (see Compl. Ex. 1 at 28). The March 1992 WFO Facilities Budget itself indicates that the report included both estimated costs for some facilities and actual construction costs for others. Explain in detail the figures included in this report, including which individual facility figures were based on actual construction costs. For those figures that represent forward-looking construction estimates (and not actual costs), when were specific estimates conducted, and at what time were those estimates reviewed by the defendant?

2. Defendant's Response To Question No. 2

The Court is respectfully referred to the Government's response to question 1. Moreover, it is undisputed that the contracting officer used the figures in the March 1992 WFO Facilities Budget as the estimated cost of construction for the final decision. Therefore, the evidence of record does not

contract, the lack of the estimated costs created a patent ambiguity imposing upon Fluor a duty to inquire before submitting its offer for the contract. Of course, we also established that Fluor did not inquire because Fluor clearly believed that the six percent limitation was applicable to the contract and that payment would be based upon the estimated costs of construction Fluor provided for each individual WFO.

contain the actual cost estimates that Fluor provided as part of WFO construction packages. Moreover, to the best of defendant's knowledge, Fluor does not dispute the contracting officer's use of the 1992 facilities budget for the estimated cost of construction of WFOs.

The above notwithstanding, there may be genuine issues of material fact as to the amount that Fluor should have been compensated for the site specific design services. However, the issue upon which there is no genuine issue of material fact, and upon which this Court can enter summary judgment, is whether the six percent limitation imposed by 41 U.S.C. § 254(b) was applicable to these services. As we established in our response to question no. 1, and our previous briefs, the statute's language clearly and unequivocally impose the six percent fee limitation upon the site specific design services.

As discussed previously, the estimated costs of construction merely provide the baseline to determine how much Fluor was to be paid for the site specific design. Thus, the estimated costs of construction, or the lack thereof, are immaterial upon the issue of the six percent fee limitation's applicability to the contract. Thus, there is no genuine issue of material fact that the six percent fee limitation was applicable to site specific design services.

C. Question No. 3 And Defendant's Response

1. Question No. 3

Defendant contends that the estimates upon which the six-percent limitation was calculated were actually conducted by plaintiff on an ongoing basis and later adopted by defendant. Where in the record do the facts of this case support that conclusion? Does this contention fit with the law, particularly the provisions in 41 U.S.C. § 254(b) that prohibit cost-plus-percentage-of-cost contracts and require an estimate for A&E contracts to be established "by the agency head."

2. Defendant's Response To Question No. 3

Defendant respectfully refers the Court to its response to question no. 1 above. Further, there is no dispute between the parties concerning the contracting officer's use of the March 1992 WFO Facilities Budget for the purpose of determining the estimated cost of construction. Consequently, the evidence of record does not include the actual cost estimates provided as part of WFO construction packages.

We clearly established in our previous submissions to the Court that, pursuant to contract requirement 2.3, the site-specific design services for the individual WFOs were an integral part of the contract's statement of work. App. 48-51. In accordance with that requirement, the Government issued individual task orders that required, among other things, that Fluor: (1) provide a site-specific WFO design; and (2) identify

the individual WFO sites for which site-specific A&E services were to be provided during the task period. App. 3. Thus, each task order was a separate, self-contained, contracting action. Further, each order required that Fluor, pursuant to contract requirement 2.1.3, provide the Government with construction cost estimates for each individual WFO site. App. 44.

For these reasons, pursuant to the contract's provisions and requirements, an estimate by the "agency head" could not be accomplished prior to contract award. Indeed, there could be no estimated costs of construction until Fluor calculated those costs in accordance with the contract's, and each task order's, requirements.

We previously established that during contract performance Fluor specifically ensured that it was in compliance with 41 U.S.C. § 254(b) and, accordingly, based its fees upon the applicable estimated costs of construction it was preparing. Moreover, during contract performance, Fluor never inquired of the Government as to the estimated costs of construction that provided the baseline for Fluor's compensation for the A&E services Fluor provided pursuant to contract requirement 2.3.

The fact that the "agency head" did not estimate the costs of construction prior to award of the contract does not result in a cost-plus-percentage-of-cost contract. Such a contract, which is specifically prohibited by 41 U.S.C. § 254(b), occurs when a fixed fee is based upon a predetermined percentage rate of actual costs allowing the fee to increase, without a cap, as actual

costs of performance increase. Urban Data Systems, Inc. v. United States, 699 F.2d 1147, 1150 (Fed. Cir. 1983). Thus, if additional, unexpected work is performed, then a cost-plus-percentage-of-cost contract is created if the fee is adjusted on the basis of the cost of the additional work. Ralph L. Jones, Co. v. United States, 33 Fed. Cl 327, 337 (1995).

The above scenario could not occur with Fluor's contract. To the contrary, pursuant to the contract, as interpreted by the Government and Fluor, Fluor's six percent fee was based upon the estimated cost of construction of the individual WFOs and not the the percentage of cost, or level of effort, that Fluor expended. Consequently, regardless of the actual costs or hours expended for A&E services, or any increase in either, the six percent fee did not increase because it was based upon the estimated cost of construction for the site specific design Fluor provided the Government. Thus, even if anticipated site-specific A&E costs were unknown at the execution of the contract, a prohibited cost-plus-percentage-of-cost contract did not result.[3/]

D. Question No. 4 And Defendant's Response

1. Question No. 4

Both parties have submitted interpretations regarding A/E contracts rendered by federal agencies other than the Department of Commerce and the National Oceanic and Atmospheric

---

[3/] If the lack of estimated construction costs could result in the creation of an illegal contract, there was a duty upon Fluor to inquire of the Government concerning this patently obvious conflict with the law and procurement regulations. Fluor never made such an inquiry.

Administration. Should the court give deference to these interpretations? See Skidmore v. Swift & Co., 323 U.S. 134 (1944); United States v. Mead Corp., 533 U.S. 218 (2001). If so, to what extent?

2. Defendant's Response To Question No. 4

Defendant relied upon the procurement regulations of three other agencies in order to rebut Fluor's contention that the six percent statutory fee limitation only applied to contracts that were solely, or in large part, for the production and delivery of design work. The cited regulations establish that Federal agencies do not interpret the statute in such a narrow fashion. On the contrary, the three Federal Acquisition Regulations ("FAR") supplements conclusively demonstrate that there is uniform understanding within the Government that when design services are included with a wide variety of other A&E services, the six percent fee limitation is applicable to design services and not to the other contract requirements. Thus, this Court should give "controlling weight" to these regulations in interpreting 41 U.S.C. § 254(b). See Chevron U.S.A. v. Natural Resources Defense Council, et al., 467 U.S. 837, 844 (1984).

In Chevron, the United States Supreme Court specifically addressed the deference that Federal courts give to agencies' regulations interpreting statutes they administer. The Supreme Court held that:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has

> directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
>
> Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

Chevron, 467 U.S. at 842-844.

In general, agency regulations are given "decisive weight" in guiding courts in statutory interpretation. Skidmore, 323 U.S. at 140. When an agency regulation fills in a "gap" in a Congressional statute, "any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." Mead Corp., 533 U.S. at 227.

There is no evidence, and Fluor has not contended, that the cited regulations are "arbitrary," "capricious," or "manifestly contrary to the statute." Indeed, the cited regulations reflect a common interpretation, and one wholly consistent with the statute, that, when an A&E contract includes both design and other services, the six percent fee limitation imposed by 41 U.S.C. § 254(b) is applicable to the design service, but not

the other services.

Based upon the above, this Court should give considerable deference to the other agencies' interpretations of the applicability of the six percent fee limitation. However, even if the Court chooses not to give such deference, it is undisputed that the FAR is controlling authority for Government contracts. As we established in our previous briefs, the FAR, specifically provides, in pertinent part, that:

> The contracting officer shall not negotiate a price or fee that exceeds the following statutory limitations, imposed by 10 U.S.C. § 2306(d) and 41 U.S.C. 254(b)
>
> * * * * *
>
> (B) For architect-engineer services for public works or utilities, the contract price or the estimated cost and fee <u>for production and delivery of designs, plans, drawings, and specifications shall not exceed 6 percent</u> of the estimated cost of construction of the public work or utility, excluding fees.

48 C.F.R. § 15.404-4(c)(4)(i)(B) (2003) (emphasis supplied).[4/]

The FAR neither exempts cost reimbursable A&E contracts nor fixed price A&E contracts when: (1) the design services are performed in conjunction with other services; or (2) the contract is an incrementally funded, level of effort contract. On the contrary, the FAR explicitly articulates that the portion of an

---

[4/] Prior to 1998, which would encompass the period of performance of the contract, this exact language was found at FAR § 15.903(d)(1)(ii). <u>See</u>, 48 C.F.R. § 15.903(d)(1)(ii) (1997); Compl. ¶ 56.

A&E contract requiring the "production and delivery of designs, plans, drawings and specifications," id., which are services Fluor provided pursuant to contract requirement 2.3, are subject to the six percent limitation.

The FAR provision makes absolutely no mention of the proportion of design work to the rest of the contract. "Federal regulations which are based upon a grant of statutory authority 'have the force and effect of law, and, if they are applicable, they must be deemed terms of the contract even if not specifically set out therein, knowledge of which is charged to the contractor.'" General Engineering and Machine Works v. O'Keefe, 991 F.2d 775, 780 (Fed. Cir. 1993), citing De Matteo Constr. Co. v. United States, 600 F.2d 1384, 1391, 220 Ct. Cl. 579 (1979). Thus, this Court should find that even though the contract provided for a variety of A&E work, the six percent fee limitation was applicable to the site specific design services that Fluor provided pursuant to the contract.

In contrast to the Government's citations, Fluor cites a United States Corps of Engineers pamphlet, EGP 715-1-7, for the proposition that, in all cases, 41 U.S.C. § 254(b) only applies if an agency has provided a final estimated cost of construction at the time an A&E contract is executed. However, "agency manuals and enforcement guidelines," which are not the product of public notice and comment "are beyond the Chevron pale" and entitled to little, if any, deference by this Court. Mead Corp., 533 U.S. at 233-234.

Even if the Court wishes to accord some deference to this pamphlet, the pamphlet does not support Fluor's contention. In fact, Fluor's citation to the construction estimate section of the pamphlet highlights the contradictions in Fluor's position. Fluor argues that the pamphlet supports its position that 41 U.S.C. § 254(b) would not apply in the absence of an agreement upon site-specific cost estimates at the time of entering the contract. However, the record demonstrates that, at the inception of the contract, Fluor rejected any discussion with the contracting officer to implement the six percent fee limitation. Pl App. 12. Then, during performance of the contract, Fluor agreed that the statutory limitation applied, and was able to determine the estimated cost of construction in order to monitor its compliance with the statute. App. 56-58, 60, 65-73; Pl App. 15.[5/]

Finally, we have demonstrated throughout this supplemental brief that the unambiguous language of the statute establishes that the estimated cost of construction has no effect upon the applicability of the statute. The estimate provides the baseline for computing the amount that Fluor was to be compensated by the Government for providing the site specific design services.

---

[5/] Pursuant to Chevron, the affidavit of Mr. Forsyth should be given no deference by this Court. Mr. Forsyth appears to be a former federal employee who has provided a statement concerning his contracting experience. His affidavit expresses his personal opinion and does not purport to be an agency opinion or interpretation of 41 U.S.C. § 254(b). As such it is not an agency interpretation meriting deference by the courts. Mead Corp., 533 U.S. at 234.

F. Questions Nos. 5 And 6 And Defendant's Responses

Because the issues raised by the Court in questions 5 and 6 are closely related, defendant respectfully submits the following combined response to those questions.

1. Question No. 5

Assume, for the purposes of this response only, that the court concludes that the plain meaning of § 254(b) requires a project estimate to be in place "at the time of entering into the contract" (see 41 U.S.C. § 254(b)), i.e., that a project estimate was required of defendant when this contract was initially entered into in 1986.

a. What are the implications for this contract, vis-a-vis the § 254(b) six-percent limitation, of the apparent fact that no such estimate was performed by either party in a timely fashion?

b. Is the six-percent limitation therefore not applicable to this particular contract?

c. Alternatively, is this contract ultra vires?

d. Alternatively, should the court overlook this requirement and impose the six-percent limitation based on some other estimate that was established after "the time of entering into the contract"?

2. Question No. 6

Assume, for the purpose of this response only, that the court concludes the portion of the contract dealing with A/E services is ultra vires.

a. What would be the consequences with respect to this contract?

b. How can the court calculate recovery given that project estimates were not in place "at the time of entering into the contract" (see 41 U.S.C. § 254(b))? See Yosemite Park & Curry Co. v. United States, 582 F.2d 552 (Ct. Cl. 1978).

3. Defendant's Responses To Questions Nos. 5 And 6

Section 252(a), Title 41, United States Code, provides that: "Executive agencies shall make purchases and contracts for property and services in accordance with the provisions of this subchapter and the implementing regulations of the Administrator [e.g., the Federal Acquisition Regulation] . . . ." The subchapter referred to includes, among other provisions, 41 U.S.C. § 254(b). We have previously established that Congress, through the clear and unambiguous language of 41 U.S.C. § 254(b), specifically mandated that cost reimbursable contracts involving A&E design services have a six percent statutory limitation upon the fee paid the contract. The baseline for calculating the allowable fee is the estimated costs of construction of the project for which the A&E services are being provided.

In Yosemite Park & Curry Co. v. United States., 582 F.2d 552 (Ct. Cl. 1978), the Department of Interior entered into a cost-plus-fixed fee contract for shuttle bus services in Yosemite National Park. The Court of Claims, the predecessor to this Court, and the United States Court of Appeals for the Federal

Circuit, found that the contract violated Federal procurement laws because it illegally provided payment to the contractor through a credit on its income taxes. More importantly, the Court also determined that the compensation due the contractor pursuant to the contract violated the 10 percent fee limitation imposed by 41 U.S.C. § 254(b) upon cost-plus-fixed-fee contracts.[6/]

The Court concluded that a contracting officer does not have authority to enter into a contract that is in contravention of an applicable law and/or regulation and commented that:

> The Government notes that the relevant procurement statute makes it mandatory for executive agencies to follow [relevant] regulations [such as the FAR] in purchasing property or services, except in certain very limited circumstances, and reasons that the provisions which violate procurement statutes and regulations must be held unenforceable as a matter of law . . .

Yosemite Park, 582 F.2d at 555-556 (emphasis supplied). The Court agreed with the Government's position by relying upon "the maxim that the United States is not bound by its agents acting beyond their authority and contrary to regulation." Id. at 556.

Yosemite is relevant to this case in that it holds that a contractor may not be paid in excess of the fee restrictions set out at 41 U.S.C. § 254(b). Nonetheless, the Court went on to

---

[6/] The statute contains a number of limitations upon contract types and fees. In addition to the six percent limitation on A&E fees, the statute also provides that "in the case of a cost-plus-fixed-fee contract the fee shall not exceed 10 per centum of the estimated cost of the contract, exclusive of the fee, as determined by the agency head at the time of entering into such contract . . . ."

rule that, even though the contract violated the statute, because the Government accepted the benefit of the shuttle services provided by the contractor, the contractor was entitled to a quantum meruit recovery for the reasonable value of the services received by defendant.

The Court remanded the case to the trial court for a determination of the value of the services. The Court ruled that:

> In determining the amount which plaintiff is entitled to recover, the Trial Judge is instructed that we do not deem the Government to have assented to payment of more than 10 percent of the total costs of [contractor's] performance....The amount of plaintiff's recovery is to be limited accordingly. . . .
>
> [W]e hold that plaintiff is not entitled to enforcement of the provisions of the express, written contract at issue here since those provisions are invalid as violative of the applicable procurement law.

Yosemite Park, 582 F.2d at 561.[7/]

Like the 10 percent fee limitation discussed in Yosemite Park, the six percent A&E fee limitation imposed by 41 U.S.C. §254(b), is as a matter of law, part of the contract between Fluor and the Government and applicable to the compensation Fluor received for the site specific design services it provided the Government pursuant to the contract. Jackson v. United States, 573 F.2d 1189, 1194, 216 Ct. Cl. 25, 36 (1978). However, the

---

[7/] It is unclear whether the contractor in Yosemite Park received any compensation. It is undisputed that Fluor was compensated for performing the site specific design services. The issue is whether Fluor was overpaid.

Government has also clearly established that the estimated cost of construction referred to in the statute is only the baseline to be used in determining how much Fluor, legally, could be paid for the site specific design services. Moreover, the Government has established that, if the fact there was no estimated cost of construction at the time of contract award prevented Fluor from calculating its costs for the performance of these design services, it was incumbent upon Fluor to inquire of the Government what was the estimated cost of construction, i.e., what was the baseline upon which the six percent fee was to be calculated.

It is undisputed that Fluor never made such an inquiry of the Government. Fluor knew that the six percent fee limitation would be computed using estimated construction costs that Fluor, pursuant to the contract provision 2.1.3, provided the Government.

Nonetheless, if it is assumed for the sake of argument that the lack of the estimated construction cost at the time of contract award violated, in some manner, 41 U.S.C. § 254(b), the Court's decision in Yosemite Park is helpful. It undisputed that the Government received the benefit of Fluor's A&E services. However, like Yosemite Park, the payment for those services is limited to the fee allowable pursuant to 41 U.S.C. § 254(b), i.e., six percent of the estimated constructions costs.

During its performance of the contract, Fluor relied upon estimated costs of construction Fluor provided for each individual WFO site as the baseline for computing the six percent

fee to which Fluor believed it was entitled. Indeed, Fluor's project manager conceded that:

> In the Spring of 1990, as part of their negotiations for Option Year Four (FY91), NOAA and FDI elected to formalize their understanding and practice as to how the statutory fee limitation [of 41 U.S.C. § 254(b)] had been and would continue to be applied.
>
> * * * * *
>
> In fact, FDI's A/E design effort on this project was not fully under way until Option Year Four (FY91). . . . The fee limitation issue became a focus of attention only when program definition was relatively complete, so that substantive A/E design could start in earnest and become a substantial component of FDI's scope of work. FY91 marked this transition in the Contract. The [statutory] limitation issue was recognized and addressed prior to that time, but was not fully articulated until the Option Four negotiations in 1990 because the work did not require it.

App. 67, 71-72 (emphasis supplied).

Should the Court conclude that the site specific design provisions of the contract are ultra vires because the "agency head" did not provide an estimated cost of construction prior to contract award, the Court, as it did in Yosemite Park, should find that A&E fee limitation of 41 U.S.C. § 254(b) applies to the contract and grant the Government's cross-motion for summary judgment. See Yosemite Park, 582 F.2d at 555. The Court should then allow the case to proceed for the purpose of determining whether Fluor's compensation for those services exceeded the six percent fee limitation imposed by 41 U.S.C. § 254(b).

G. Question No. 7 And Defendant's Response

1. Question No. 7

Are there other federal agencies that employ the level-of-effort cost-plus-fixed-fee procurement for A/E services? Assuming, for the purpose of this response only, that the contract fails in whole or in part under § 254(b) because it is ultra vires, what would be the implications for other federal agencies' A/E procurements?

2. Defendant's Response To Question No. 7

Defendant is unaware as to whether other Federal agencies employ level-of-effort cost-plus-fixed-fee procurement for A/E services. However, neither 41 U.S.C. § 254(b), nor the FAR, excepts this type of contract from the six percent fee limitation imposed by 41 U.S.C. § 254(b). Thus, this Court should not create an exemption to the statute for this type of contract.

Finally, the Government is unable to assess the implications for other Federal agencies' A&E procurements if the subject contract is determined to be ultra vires. However, we have established that the contract's provisions for design services were not ultra vires. Consequently, although there are genuine issues of material fact concerning the amount Fluor was paid for performing the site specific design services, there is no genuine issue of material fact that the six percent fee limitation was applicable to Fluor's contract. Accordingly, the Court should grant defendant's cross-motion for summary judgment and deny Fluor's motion for summary judgment.

## CONCLUSION

For all of the reasons set forth in this supplemental brief, as well as those set forth in our previous briefs, the six percent fee limitation imposed by 41 U.S.C. § 254(b) was applicable to the site specific design services Fluor provided the Government pursuant to the contract. Accordingly, defendant respectfully requests that the Court deny Fluor's motion for summary judgment and grant defendant's cross-motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Steven J. Abelson
STEVEN J. ABELSON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 514-4325

Attorneys for Defendant

OF COUNSEL:

FRED KOPATICH
Attorney
Office of the General Counsel
Department of Commerce
14th & Constitution Ave, N.W.
Room 5893
Washington, D.C. 20230

January 14, 2005

CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2005, the foregoing DEFENDANT'S SUPPLEMENTAL BRIEF FILED IN RESPONSE TO THE COURT'S OCTOBER 29, 2004 ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Steven J. Abelson