Declaration of James Wagner

I, James Wagner, do hereby declare under penalty of perjury under the laws of the United States that:

1. I have personal knowledge of the facts stated herein as a result of (a) having 13 years of experience both on contracts for A&E services and contracts involving performance of some A&E services that were not treated by the government as contracts for A&E services and (b) having acted as Project Controls Manager for Fluor Daniel, Inc. ("the Company" or "FDI") on Contract No. 5OWCNA606099 with NOAA ("the Contract").

2. I previously have submitted a declaration in this case dated May 6, 2004.

3. As FDI's Project Controls Manager, I was personally involved in preparing task orders for the NOAA contract and tracking and reporting costs against the NOAA approved Work Breakdown Structure. In this capacity, I was required to be fully aware of FDI's contractual obligations and deliverables.

4. During the course of the Contract, FDI performed hundreds of construction package estimates, including numerous estimates for each site. These estimates, however, were prepared at the completion of each site's 15%, 35%, 90% and 100% design iterations, i.e., after performance of design work had commenced. The estimates, as well as actual construction costs as these were incurred, were used to populate FDI's estimating database, which was used to produce the 1992 WFO Facilities Budget. In my experience, creation of these iterative estimates is a standard practice/requirement of contractors performing design work (although the percentages of the stages of completion may vary). However, I am aware of no situation in which such estimates, prepared by the contractor after commencement of design work, have been used to limit the contractor's recovery of costs pursuant to the statutory 6% limitation.

5. I am not aware of, and to my knowledge the government never informed FDI of, any instance in which an estimate performed by Fluor was reviewed at any level above the Contracting Officer (CO) and the Contracting Officer's Technical Representative (COTR).

6. The government at no time provided FDI with any estimates of construction.

7. One reason that estimates were not available to FDI prior to the conduct of design work under the Contract is that the government had not fully established its requirement prior to performance by FDI under the Contract. As a result, of necessity, Fluor was required to assist in the development of concepts which would define space usage, facility size, general specifications, and other overall criteria such as construction materials and common equipment relative to design throughout the entire performance period of the Contract and concurrent with the performance of design work itself under the Contract. This development occurred through many iterations of design which went through a plethora of reviews by the government. The ultimate configuration of facilities

bore little resemblance to the generic concept expressed by the government prior to commencement of the contract.

8. I am aware of no contract for A&E services which has been conducted in this fashion. Moreover, I am aware of no contractor that has agreed (or would agree) to incur design costs the recovery of which potentially would be limited by future estimates of construction costs in a contract like this in which no definite and specific articulation of the government's requirement existed prior to commencement of design work on the contract.

9. As noted in my earlier declaration, A&E services were a minor part of the Contract. In my experience, not every contract requiring design work in the course of contract performance is a contract for A&E services. In my experience, contracts of which A&E services are a minor part are not contracts for A&E services. For example, the current contract on which I am working is an Army Corps of Engineers ("ACE") design-build contract. Although design work obviously is a component of this contract as it is every design build contract, the ACE does not consider the contract to be a contract for A&E services because A&E services are a minor part of the contract and therefore does not apply the 6% statutory limitation to this contract. The ACE's characterization of this contract is consistent with ACE EP 715-1-7 (attached) which specifies that no statutory limitation is applied to design-build contracts where design is a minor part of the contract.

I, James Wagner, pursuant to 28 U.S.C. 1746, declare that the above statements are true and correct to the best of my knowledge.

James Wagner 4 Jan 05

James Wagner Date